**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

---

Sa'ud Habib, Beverly Williams, J. Marlene Smith, Kenneth
Sliwinski, and Russ Dixon, individually and as
representatives of a class of similarly situated persons,
and on behalf of the M&T Bank Corporation Retirement
Savings Plan,

*Plaintiffs,*

v.

Case No. 1:16-cv-375-FPG

M&T Bank Corporation, Manufacturers and Traders Trust
Company, M&T Bank Employee Benefit Plans
Committee, Wilmington Trust Investment Advisors,
Wilmington Funds Management Corporation, Wilmington
Trust Corporation, Janet Coletti, Michele Trolli, Mark
Czarnecki, Stephen Braunscheidel, Brian Hickey, Darren
King, Kevin Pearson, Michael Spychala, Brent O. Baird,
C. Angela Bontempo, Robert T. Brady, T. Jefferson
Cunningham III, Gary N. Geisel, John D. Hawks, Jr.,
Patrick W.E. Hodgson, Richard G. King, Melinda R. Rich,
Robert E. Sadler, Jr., Herbert L. Washington,
Robert G. Wilmers, Robert J. Bennett, Michael D.
Buckley, Jorge Pereira, Colin E. Doherty, Denis J.
Salamon, Newton P.S. Merrill, and John Does 1–20,

*Defendants.*

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

Richard C. Pepperman, II
Matthew A. Schwartz
M. David Possick
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Defendants*

July 20, 2016

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 5

    A.    M&T Bank Corporation Retirement Savings Plan ................................. 5

           1.    Overview of the Plan ................................................................... 5

           2.    The Plan's Investment Options .................................................... 6

    B.    The Parties ............................................................................................. 7

    C.    Plaintiffs' Allegations ........................................................................... 8

ARGUMENT ................................................................................................................ 9

I.    PLAINTIFFS' RETAIL SHARES CLAIM AND MUTUAL FUND
    ALTERNATIVES CLAIM FAIL AS A MATTER OF LAW. ......................... 11

    A.    Plaintiffs Fail to Plead Overpayments So Large That They "Could Not
        Have Been the Product of Arm's-Length Bargaining" ......................... 12

    B.    Plaintiffs' Academic Literature and Out-of-Circuit Cases Do Not Save
        Their Claims from Dismissal ................................................................ 14

II.    PLAINTIFFS' PROPRIETARY FUNDS CLAIM IS SUBJECT TO ERISA'S
    THREE-YEAR STATUTE OF LIMITATION ............................................... 19

    A.    Plaintiffs Have Conceded Actual Knowledge of the Proprietary Funds
        Claim Before May 2013 ........................................................................ 20

    B.    The Plan Documents Also Put Plaintiffs on Notice of Their Proprietary
        Funds Claim ......................................................................................... 23

III.    PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW ..................... 26

    A.    Plaintiffs Do Not Adequately Plead a Breach of the Duty to Monitor ................. 26

    B.    Plaintiffs Do Not Adequately Plead an Equitable Disgorgement Claim .............. 27

IV.    SEVERAL OF THE DEFENDANTS NAMED IN THE COMPLAINT ARE
    NOT APPROPRIATE DEFENDANTS UNDER ERISA ................................. 30

    A.    WTIA and WFMC Are Not Fiduciaries .............................................. 30

*Page*

B.      M&T Bank Is Not a Fiduciary ...............................................................................32

CONCLUSION....................................................................................................................35

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Alford* v. *United Cmty. Banks, Inc.*,
   2013 U.S. Dist. LEXIS 187387 (N.D. Ga. Jan. 31, 2013) ...................................................27

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) .........................................................................................................9

*ATSI Commc'ns* v. *Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ...............................................................................................5

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
   756 F. Supp. 2d 330 (S.D.N.Y. 2010) ............................................................................32

*In re Bausch & Lomb Inc. ERISA Litig.*,
   2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008) ...............................................................29

*Bausch & Lomb Inc.* v. *Mimetogen Pharms., Inc.*,
   2016 WL 2622013 (W.D.N.Y. May 5, 2016) .................................................................5

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) ...................................................................................31

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007) .......................................................................................................10

*Bell* v. *Pfizer, Inc.*,
   626 F.3d 66 (2d Cir. 2010) .............................................................................................30

*In re BP P.L.C. Sec. Litig.*,
   2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ................................................................27

*Bigio* v. *Coca-Cola Co.*,
   675 F.3d 163 (2d Cir. 2012) .............................................................................................9

*Braden* v. *Wal-Mart Stores*,
   588 F.3d 585 (8th Cir. 2009) ....................................................................................18, 19

*Caputo* v. *Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001) ....................................................................................... 19-20

*Chao* v. *Merino*,
   452 F.3d 174 (2d Cir. 2006) ...........................................................................................11

*Page(s)*

*CIGNA Corp.* v. *Amara*,
  563 U.S. 421 (2011) ......................................................................................................34

*In re Citigroup ERISA Litig.*,
  104 F. Supp. 3d 599 (S.D.N.Y. 2015),
  *aff'd sub nom. Muehlgay* v. *Citigroup Inc.*,
  2016 WL 2956958 (2d Cir. May 23, 2016) ...............................................................20, 21

*In re Citigroup ERISA Litig.*,
  2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ................................................................33

*Coulter* v. *Morgan Stanley & Co.*,
  753 F.3d 361 (2d Cir. 2014).............................................................................................33

*DiFolco* v. *MSNBC Cable L.L.C.*,
  622 F.3d 104, 111 (2d Cir. 2010).......................................................................................5

*Faber* v. *Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011).................................................................................................9

*Fisher* v. *JP Morgan Chase & Co.*,
  703 F. Supp. 2d 374 (S.D.N.Y. 2010),
  *aff'd*, 469 Fed. Appx. 57 (2d Cir. 2012) .........................................................................26

*Gipson* v. *Wells Fargo & Co.*,
  2009 WL 702004 (D. Minn. Mar. 13, 2009) ..................................................................18

*Hecker* v. *Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ..............................................................................15, 19, 32

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
  661 F. Supp. 2d 861 (S.D. Ohio 2009) .................................................................15-16, 19

*In re JPMorgan Chase & Co. ERISA Litig.*,
  2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ..................................................................5, 32

*Justice* v. *King*,
  2015 WL 1433303 (W.D.N.Y. Mar. 27, 2015) .............................................................9-10

*Krueger* v. *Ameriprise Fin., Inc.*,
  2012 WL 5873825 (D. Minn. Nov. 20, 2012) ................................................................18

*Kruger* v. *Novant Health, Inc.*,
  131 F. Supp. 3d 470 (M.D.N.C. 2015) ...........................................................................19

*Page(s)*

*Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012)
    *aff'd*, 513 F. App'x 78 (2d Cir. 2013) ...................................................................... 10-11, 14

*Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    2012 WL 701397 (S.D.N.Y. Mar. 6, 2012) .......................................................10, 11, 13, 14

*Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    513 F. App'x 78 (2d Cir. 2013) ................................................................................... *passim*

*Leber* v. *Citigroup, Inc.*,
    2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) ...........................................................................28

*Loomis* v. *Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .......................................................................10, 15, 16, 18, 19

*Lynch Ford, Inc.* v. *Ford Motor Co.*,
    957 F. Supp. 142 (N.D. Ill. 1997) ............................................................................................9

*Muehlgay* v. *Citigroup Inc.*,
    2016 WL 2956958 (2d Cir. May 23, 2016) ................................................................ *passim*

*In re Nokia ERISA Litig.*,
    2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) .........................................................................27

*Oechsner* v. *Connell Ltd. P'ship*,
    283 F. Supp. 2d 926 (S.D.N.Y. 2003),
    *aff'd*, 101 F. App'x 849 (2d Cir. 2004) .................................................................................20

*Pedraza* v. *Coca-Cola Co.*,
    456 F. Supp. 2d 1262 (N.D. Ga. 2006) ..................................................................................27

*Pegram* v. *Herdrich*,
    530 U.S. 211 (2000) ...............................................................................................................30

*Pension Benefit Guar. Corp.* v. *Morgan Stanley Inv. Mgmt.*,
    712 F.3d 705 (2d Cir. 2013) .............................................................................. 9, 10, 11, 17-18

*In re Pfizer Inc. ERISA Litig.*,
    2013 U.S. WL 1285175 (S.D.N.Y. Mar. 29, 2013) ...........................................................3, 26

*Renfro* v. *Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ....................................................................................... *passim*

*Page(s)*

*Rinehart* v. *Akers*,
    722 F.3d 137 (2d Cir. 2013),
    *vacated on other grounds*, 134 S. Ct. 2900 (2014)...............................................26

*Rinehart* v. *Lehman Bros. Holdings Inc.*,
    817 F.3d 56 (2d Cir. 2016)........................................................................10

*Taveras* v. *UBS AG*,
    708 F.3d 436 (2d Cir. 2013)........................................................................5

*Tibble* v. *Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013),
    *vacated on other grounds*, 135 S. Ct. 1823 (2015)...............................................19

*Tiblier* v. *Dlabal*,
    743 F.3d 1004 (5th Cir. 2014) ....................................................................32

*Trs. of the Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*,
    131 F. Supp. 3d 103, 131 (S.D.N.Y. 2015).........................................*passim*

*In re WorldCom, Inc. ERISA Litig.*,
    263 F. Supp. 2d 745 (S.D.N.Y. 2003).................................................31

*Young* v. *Gen. Motors Inv. Mgmt. Corp.*,
    325 F. App'x 31 (2d Cir. 2009) ...................................................*passim*

*Young* v. *Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)..........................................12-13, 20, 24, 25

## STATUTES, RULES AND REGULATIONS

15 U.S.C. § 80a-8.......................................................................................16

15 U.S.C. § 80a-18......................................................................................16

15 U.S.C. § 80a-30......................................................................................16

15 U.S.C. § 7241(a).....................................................................................16

26 U.S.C. § 851(b)......................................................................................16

29 § U.S.C. 1002(21)...................................................................................30

29 U.S.C. § 1104(a).....................................................................................11

29 U.S.C. § 1113.........................................................................................19

*Page(s)*

Fed. R. Civ. P. 8(a) ...................................................................................................9

17 C.F.R. § 270.0-1(a)(7)........................................................................................16

17 C.F.R. § 270.38a-1 .............................................................................................16

29 C.F.R. § 2509.75-8.....................................................................................3-4, 26-27

29 C.F.R. § 2510.3-21(c)(1)(i)-(ii)(A)-(B) ......................................................30, 31

29 C.F.R. § 2550.404a-1(b)(2)(i)............................................................................18

### OTHER AUTHORITIES

DOL, ABC Plan 401(k) Plan Fee Disclosure Form for Services Provided by XYZ
Company, *available at* http://www.dol.gov/ebsa/pdf/401kfefm.pdf .......................................16

SEC Form N-1A, *available at* https://www.sec.gov/about/forms/formn-1a.pdf.........................16

Defendants[1] respectfully submit this memorandum in support of their motion to dismiss the Class Action Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This putative class action is one of numerous copycat lawsuits filed in federal courts across the country alleging that a company and certain of its employees breached fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by offering supposedly imprudent mutual funds as investment options from which the company's retirement plan participants could choose. After placing advertisements in local newspapers specifically searching for a Plan member to file this lawsuit,[2] Plaintiffs' counsel filed a 62-page complaint against five corporate entities and 46 individuals (including 20 John Does) alleging ERISA violations concerning 29 different mutual fund options offered by the Plan over a period of six years—from May 11, 2010 through May 11, 2016.

---

[1]    The Complaint names as defendants (i) the M&T Bank Employee Benefit Plans Committee ("Committee") and eight of its members, who had fiduciary authority over the investment options offered under the M&T Bank Corporation Retirement Savings Plan ("Plan"), (ii) Manufacturers and Traders Trust Company ("M&T Bank") and the Board of M&T Bank and its members, either or both of which are alleged to have monitoring responsibility over the Committee, and (iii) M&T Bank Corporation ("M&T," the parent corporation of M&T Bank), Wilmington Trust Investment Advisors, Inc. ("WTIA"), Wilmington Funds Management Corporation ("WFMC") and Wilmington Trust Corporation ("Wilmington Trust"), which along with M&T Bank are collectively referred to in the Complaint as the "Employer Defendants."

[2]    In a newspaper advertisement published on January 27, 2016, the law firm that later filed this action asked "M&T Bank Employees and Retirees" to "Please Call" if they were "[s]hortchanged due to excessive fees or poor investment offerings in your 401(k) plan." (Exhibit 1 to the Declaration of M. David Possick, dated July 20, 2016, submitted herewith.) Plaintiffs' counsel also sent numerous letters to former employees, explaining that "[w]e are contacting you because we found your LinkedIn profile which indicates that you have worked for M&T and[,] therefore, may have invested funds in the plan" and asking for "any information you may be able to share." (Ex. 2 (letters to former employees, each dated November 24, 2015).)

The Complaint broadly alleges that each of the 29 mutual funds offered as Plan options was imprudent on one of the following three grounds:  (i) the Plan included several mutual funds managed by Defendants M&T Bank and M&T's subsidiary, Wilmington Trust, that allegedly charged excessive fees and provided poor return (Compl. ¶¶ 69-92) ("Proprietary Funds Claim"); (ii) the Plan offered retail shares for "several" mutual funds that supposedly were more expensive than the alternative of institutional shares (*id*. ¶¶ 93-101) ("Retail Shares Claim"); and (iii) the Plan offered traditional mutual funds instead of "separate accounts" and "collective trusts," which supposedly would have been cheaper for Plan participants (*id*. ¶¶ 102-117) ("Mutual Fund Alternatives Claim").  The Complaint should be dismissed in significant part with prejudice for the following reasons.

*First*, Plaintiffs' Retail Shares Claim and Mutual Fund Alternatives Claim rest on the routinely dismissed theory that Plan fiduciaries breach their duties of prudence by offering traditional mutual fund investments instead of allegedly less expensive alternatives.  Both claims—based solely on alleged "reasonable inferences" from marginal cost differentials of between 14 and 37 basis points (*i.e.*, .14% to .37%)—fall far short of the Second Circuit's pleading standard for an excessive fee claim.  To state such a claim, a plaintiff must allege that the fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."  *Young* v. *Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009); *see also Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 80 n.4 (2d Cir. 2013).  Because Plaintiffs make no attempt to meet that pleading standard, their Retail Shares Claim and Mutual Fund Alternatives Claim should be dismissed.  (*See*, *infra*, Section I.)

*Second*, Plaintiffs' Proprietary Funds Claim is subject to ERISA's three-year limitation period under *Muehlgay* v. *Citigroup Inc.*, 2016 WL 2956958 (2d Cir. May 23, 2016), because Plaintiffs concede that they were aware of the factual basis for that alleged claim before May 2013.   In fact, Plaintiffs specifically allege that, throughout the putative six-year class period, there was "ample evidence that these funds had become imprudent and were likely to perform poorly in the future" (Compl. ¶ 77) and that, "as of the end of 2012, all but one of the twelve Wilmington mutual funds in the Plan were significantly more expensive" than market averages based on "listed expense figures [that] [were] taken from the most recent summary prospectus as of January 2013" (*id.* ¶ 83 & n.9).   ERISA's three-year statute of limitation also applies because Plan communications fully disclosed all information necessary for Plaintiffs to plead their Proprietary Funds Claim long before May 2013.   Plaintiffs' Proprietary Funds Claim thus should be dismissed to the extent it is based on alleged conduct that occurred more than three years before they filed the Complaint—*i.e.*, before May 11, 2013.   (*See*, *infra*, Section II.)

*Third*, this Court should dismiss Plaintiffs' secondary ERISA claims for failure to monitor other fiduciaries (Count II) and equitable disgorgement (Count III).   As an initial matter, because these claims are unquestionably derivative of Plaintiffs' primary claim in Count I, they should be dismissed to the extent that Count I is dismissed for the above reasons.   *See*, *e.g.*, *In re Pfizer Inc. ERISA Litig.*, 2013 U.S. WL 1285175, at *10 (S.D.N.Y. Mar. 29, 2013).   Both secondary claims also fail to state a claim for independent reasons.

To plead a viable duty to monitor claim, a plaintiff must allege that the monitoring defendant failed to review the performance of the fiduciary committee "[a]t reasonable intervals . . . in such manner as may be reasonably expected to ensure that [its] performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the

plan." 29 C.F.R. § 2509.75-8 at FR-17.  Plaintiffs allege no such facts here; instead, they simply assume that because the Committee allegedly breached the duty of prudence, the monitoring defendants must have "[f]ailed to monitor and evaluate the performance of the other Fiduciary Defendants or have a system in place for doing so."  (Compl. ¶ 140(a).)  Such conclusory allegations are insufficient to state a claim.  (*See*, *infra*, Section III.A.)

Plaintiffs' equitable disgorgement claim fares no better.  The Complaint includes no factual allegations showing that each of the five corporations named as Employer Defendants in Count III supposedly had the required "knowledge that the primary's conduct contravenes a fiduciary duty."  *Trs. of the Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 131 (S.D.N.Y. 2015).  The Complaint instead simply lumps all of them together by generally alleging that the "Employer Defendants were aware that the Fiduciary Defendants were breaching their fiduciary duties."  (Compl. ¶ 147.)  Furthermore, instead of alleging that each Employer Defendant actually "participate[d] in a fiduciary's breach" by "affirmatively assist[ing], help[ing] conceal, or by virtue of failing to act when required to do so," *Trs. of the Upstate N.Y.*, 131 F. Supp. 3d at 131-32, the Complaint simply asserts that "the Employer Defendants had actual or constructive knowledge that the monies they were receiving from or in connection with Plan assets were being received as a result of the Fiduciary Defendants' fiduciary breaches."  (Compl. ¶ 148.)  This allegation is insufficient to plead "knowing participation."  *See Trs. of the Upstate N.Y.*, 131 F. Supp. 3d at 132.  (*See*, *infra*, Section III.B.)[3]

---

[3]     Defendants WTIA, WFMC and M&T Bank should be dismissed on the independent ground that those Defendants were not fiduciaries of the Plan.  (*See*, *infra*, Section IV.)

## STATEMENT OF FACTS[4]

**A.     M&T Bank Corporation Retirement Savings Plan**

**1.     Overview of the Plan**

The Plan[5] is a type of defined contribution retirement savings called an eligible individual account plan ("EIAP"), which provides each eligible employee of M&T and its subsidiaries with an individual account, the value of which is based on the participant's contribution (and employer matching funds), as adjusted for Plan expenses and any increase or decrease in the value of the investment options chosen by the participant.  (Compl. ¶¶ 24-27; Ex. 3 (2016 Plan) §§ 4.1, 4.2; Ex. 6 (2016 Prospectus and Summary Plan Description ("SPD")) at 1-3.)

---

[4]     On a motion to dismiss, this Court may consider (i) governing Plan documents upon which the Complaint relies, such as the Plan, the M&T Bank Employee Benefit Plans Committee Charter ("Committee Charter") and the M&T Bank Corporation Retirement Savings Plan Investment Policy Statement ("IPS") (*e.g.*, Compl. ¶¶ 28, 75), and (ii) documents provided to Plan participants, such as the Summary Plan Description ("SPD") and appendices thereto and the Plan and Investment Disclosure ("Investment Disclosure").  *See*, *e.g.*, *In re JPMorgan Chase & Co. ERISA Litig.*, 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016) ("In deciding a motion to dismiss, a court is not limited to the face of the complaint . . . [but] 'may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'") (quoting *ATSI Commc'ns* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)); *see also Taveras* v. *UBS AG*, 708 F.3d 436, 442-43 (2d Cir. 2013) (citing plan documents because on motions to dismiss courts "consider documents [that complaint] incorporates by reference, as well as documents upon which it 'relies heavily') (quoting *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)); *Bausch & Lomb Inc.* v. *Mimetogen Pharms., Inc.*, 2016 WL 2622013, at *6 (W.D.N.Y. May 5, 2016) (taking judicial notice of relevant agreement and meeting minutes because "where plaintiff . . . has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated") (Geraci, C.J.).

[5]     The Plan was adopted by M&T Bank on December 17, 1985, effective April 1, 1986, for the benefit of employees (and their beneficiaries) of M&T and its participating subsidiaries, and was amended and/or restated on various dates, including, for purposes of this action, on January 1, 2006, 2011 and 2016.  (*See* Ex. 3 (2016 Plan) at 1; Ex. 4 (2011 Plan) at 1; Ex. 5 (2006 Plan) at 1; *see also* Compl. ¶ 23.)  The relevant Plan provisions did not change during the May 2010 through May 2016 class period.

### 2.      The Plan's Investment Options

Under the Plan, each participant has the sole discretion to choose the investments for his own individual account from among the Plan's many investment options.  (*E.g.*, Ex. 7 (2011 SPD) at 10.)  As the SPD explained to participants, "[your] contributions are invested in one or more of the Plan's investment options . . . in accordance with your instructions.  You alone are responsible for determining whether a particular investment option is appropriate in light of your circumstances and retirement needs."  (*Id*.)  The SPD further stated that "[i]f you are not comfortable making your own investment decisions based on the information provided to you, you should consult your own financial advisor."  (*Id*.)

The Plan offered participants a menu of between 23 and 29 investment options throughout the putative class period (Ex. 8 (2006 SPD) at A-1 to A-2; Ex. 9 (Appendix to the Plan's 2011 Prospectus and Summary Plan Description, dated January 1, 2012 ("2012 SPD Appendix") at A-2 to A-3; Ex. 6 (2016 SPD) at 39-40) "that [were] intended to have materially different risk and return characteristics" (Ex. 7 (2011 SPD) at 11).  These options ranged from domestic and international equity funds, to index funds, to bond funds with varying risk profiles.  (Ex. 8 (2006 SPD) at A-4 to A-8; Ex. 9 (2012 SPD Appendix) at A-4 to A-11; Ex. 6 (2016 SPD) at 40-45.)  All of these investment options were mutual funds with varying degrees of risk, except for the company stock fund and a money market trust (Ex. 8 (2006 SPD) at A-1; Ex. 9 (2012 SPD Appendix) at A-2; Ex. 6 (2016 SPD) at 39), which were required investment options under the Plan.  (*See* Ex. 5 (2006 Plan) § 9.10; Ex. 4 (2011 Plan) § 9.10; Ex. 3 (2016 Plan) § 9.10.)  In communications with participants, the Plan's options were "grouped in order of relative investment risk (highest relative risk to lowest relative risk)," progressing from the company stock fund, to growth equity funds, to fixed-income funds, to a

conservative "stability" trust.  (Ex. 8 (2006 SPD) at A-3; Ex. 9 (2012 SPD Appendix) at A-4; Ex. 6 (2016 SPD) at 40.)

Plan communications also provided detailed information to participants on each investment option "that [was] intended to help [participants] understand the investments offered by the [P]lan . . . and the fees and expenses [each recipient] may pay as a participant in the Plan." (Ex. 10 (2015 Investment Disclosure) at 1; *see also* Ex. 11 (2013 Investment Disclosure) at 1; Ex. 12 (2012 Investment Disclosure) at 1.)   Plan participants were provided with (i) "performance information indicating how well the investments have performed in the past" and (ii) "the fees and expenses applicable to each investment," which "can substantially reduce the growth of [their] retirement savings."  (Ex. 10 (2015 Investment Disclosure) at 3; *see also* Ex. 11 (2013 Investment Disclosure) at 3; Ex. 12 (2012 Investment Disclosure) at 7; Ex. 9 (2012 SPD Appendix) at A-11 to A-13.)

## B.    The Parties

Plaintiffs are five individuals who allegedly invested in one or more of the investment options claimed to be imprudent for retirement savings.  Plaintiffs Habib, Smith, Sliwinski, and Dixon are former Plan participants who divested their entire Plan accounts of all assets between December 2010 and October 2013 (Compl. ¶¶ 18, 20-22), and Plaintiff Williams is a current Plan participant (*id.* ¶ 19).

Defendant M&T Bank is the sponsor of the Plan.  (*Id.* ¶ 30.)  Defendant M&T, the parent of M&T Bank, is not alleged to have any fiduciary role with respect to the Plan.  (*Id.* ¶ 127.)  It is named as a defendant only in Count III's equitable disgorgement claim.  (*Id.* ¶ 43.)

The Committee is the named Plan fiduciary "within the meaning of ERISA Section 3(21)" with respect to, among other things, "the administration of the Plans [and] the investment of their assets" and "is responsible for adopting, maintaining and implementing

investment management policies and guidelines that specify the permissible classes of investments for each Plan, the target percentage level of investment in each class and the desired percentage range around the target." (Ex. 13 (Committee Charter) at 1-2; *see also* Compl. ¶ 33 ("[P]ursuant to the Plan Document, the Committee appoints investment managers, hires the Plan's trustee, selects the Plan's recordkeeper, and is responsible for selecting and removing designated investment alternatives within the Plan." (citing Plan §§ 9.1, 9.10).)

The Board of M&T Bank throughout the putative class period had sole authority to appoint the members of the Committee. (*See*, *e.g.*, Ex. 4 (2011 Plan) § 9.1(a) ("The Board of Directors of the Corporation will appoint the Committee . . . ."); Ex. 13 (Committee Charter) at 2 ("The members of the Committee will be appointed and replaced by the Board of Directors of M&T Bank, to serve for such term as the Board may determine . . . .").)

WTIA and WFMC are named as defendants because (i) "WTIA acts as an investment consultant to the Plan" (Compl. ¶ 35), and (ii) "WFMC has served as the investment advisor for all Wilmington mutual funds held within the Plan" (*id.* ¶ 39). Wilmington Trust, the parent of WFMC, is not alleged to have any fiduciary role with respect to the Plan. (*Id.* ¶ 127.) Like M&T Bank, it is named as a defendant only in Count III. (*Id.* ¶ 44.)

## C.    Plaintiffs' Allegations

Plaintiffs contend that Defendants breached their fiduciary duties of loyalty and prudence under ERISA throughout the six-year putative class period (*id.* ¶ 119) under three distinct theories.

- Plaintiffs' Proprietary Funds Claim alleges that Plan fiduciaries should not have added seven proprietary Wilmington Trust mutual funds to the Plan in 2011, and should have removed all M&T/Wilmington Trust proprietary funds from the Plan in 2010 or 2011, because of those funds' allegedly excessive fees and poor performance. (*Id.* ¶¶ 69-92.)

- Plaintiffs' Retail Shares Claim argues that Plan fiduciaries should have negotiated with non-proprietary mutual funds to obtain lower-cost share classes for Plan participants. (*Id.* ¶¶ 93-101.)

- Plaintiffs' Mutual Fund Alternatives Claim contends that Plan fiduciaries should have filled the Plan with alternative investment vehicles—"separate accounts" and "collective trusts"—instead of standard mutual funds.  (*Id.* ¶¶ 102-117.)[6]

Based on these allegations, the Complaint contains three counts:  (i) breach of the duty of loyalty and prudence against all Fiduciary Defendants (Count I), (ii) breach of the duty to monitor against the M&T Board and M&T Bank (Count II), and (iii) equitable disgorgement against the five Employer Defendants (Count III).

## ARGUMENT

To "'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Bigio* v. *Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)).  The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Pension Benefit Guar. Corp.* v. *Morgan Stanley Inv. Mgmt.* ("*PBGC*"), 712 F.3d 705, 718 (2d Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)).  "If a plaintiff 'ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed.'"

---

[6]      Although Count I is styled as a single claim for "Breach of Duties of Loyalty and Prudence," it contains three distinct theories.  Because Plaintiffs plead a "[single] claim [that] is really three counts in one," the court should "analyze each legal theory in turn," and permit Plaintiffs to pursue—and take discovery on—only those claims, if any, that satisfy the applicable pleading standards.  *Lynch Ford, Inc.* v. *Ford Motor Co.*, 957 F. Supp. 142, 145 (N.D. Ill. 1997).

*Justice* v. *King*, 2015 WL 1433303, at *9 (W.D.N.Y. Mar. 27, 2015) (Geraci, C.J.) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

Given that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and sometimes used "to force a settlement advantageous to the plaintiff," *PBGC*, 712 F.3d at 719, courts carefully examine—and routinely grant—motions to dismiss claims based on allegations of imprudence by plan fiduciaries in the selection of investment options offered to plan participants.  *See, e.g.*, *id.* at 724; *Rinehart* v. *Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (affirming dismissal of imprudence claims based on fiduciaries' offering of company stock as investment option); *Young*, 325 F. App'x at 33 (affirming dismissal of imprudence claims based on allegations that fiduciaries imprudently offered standard mutual funds instead of less expensive institutional investment products); *Renfro* v. *Unisys Corp.*, 671 F.3d 314, 319, 328 (3d Cir. 2011) (affirming dismissal of imprudence claims based on allegations that fiduciaries "could have selected investments having lower fees than mutual funds and/or used the size of its plan as leverage to bargain for lower fee rates on mutual funds"); *Loomis* v. *Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011) (affirming dismissal of imprudence claims based on allegations that plan was required to offer "'wholesale' or 'institutional' investment vehicles" instead of traditional mutual funds); *Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 2012 WL 701397, at *2-3 (S.D.N.Y. Mar. 6, 2012) ("*Laboy I*") (dismissing imprudence claims based on allegations that fiduciaries imprudently offered investment options with excessive fees and administrative expenses); *Laboy* v. *Bd. of Trs. of Bldg. Serv. 32 BJ*

*SRSP*, 2012 WL 3191961, at \*1-2 (S.D.N.Y. Aug. 7, 2012) ("*Laboy II*") (same), *aff'd*, 513 F. App'x 78 (2d Cir. 2013) ("*Laboy III*").[7]

## I.   PLAINTIFFS' RETAIL SHARES CLAIM AND MUTUAL FUND ALTERNATIVES CLAIM FAIL AS A MATTER OF LAW.

To plead an imprudence claim under ERISA, a plaintiff must allege that the fiduciary did not "act in a prudent manner 'under the circumstances then prevailing.'" *PBGC*, 712 F.3d at 716 (quoting 29 U.S.C. § 1104(a)(1)(B)). Allegations that "another approach" to plan investments "seems preferable" are insufficient to state a claim. *Chao* v. *Merino*, 452 F.3d 174, 182 (2d Cir. 2006). Where, as here, a complaint contains *no* allegations addressing the fiduciaries' decision-making process and rests entirely on "inference" from the selection of investments,[8] the complaint must allege facts "showing that a prudent fiduciary in like circumstances would have acted differently." *PBGC*, 712 F.3d at 720.

Courts are particularly "wary" of imprudence claims based on alleged overpayment of administrative fees and expenses—the crux of Plaintiffs' Retail Shares and Mutual Fund Alternatives Claims. Such claims are generally "allowed . . . to go forward" only if they are based on "allegations of self-dealing." *Laboy I*, 2012 WL 701397, at \*2-3. Indeed, the Second Circuit has held that imprudence claims based on the selection of investments with allegedly

---

[7]    In light of the Complaint's allegations of supposed proprietary bias in the selection of the M&T and Wilmington Trust funds offered under the Plan (*see* Compl. ¶¶ 76, 84), which Defendants do not concede have any merit, Defendants do not move to dismiss the Proprietary Funds Claim in its entirety. Rather, they move to dismiss that claim under ERISA's three-year statute of limitation to the extent it is based on alleged conduct that occurred more than three years before the Complaint was filed. (*See*, *infra*, Section II.)

[8]    *See* Compl. ¶ 117 ("Plaintiffs still do not have actual knowledge of Defendants' decision-making processes with respect to the Plan, including the Fiduciary Defendants' processes for selecting, monitoring, and removing Plan investments, and M&T Bank's and the Board's processes for monitoring the Plan's fiduciaries").

excessive fees must allege "a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Young*, 325 F. App'x at 33.

### A. Plaintiffs Fail to Plead Overpayments So Large That They "Could Not Have Been the Product of Arm's-Length Bargaining."

Plaintiffs allege that Plan fiduciaries could have saved participants between 25 and 37 basis points (*i.e.*, between .25% and .37%) per year by offering institutional shares for certain investment options (Compl. ¶ 96) and between 14 and 30 basis points (*i.e.*, between .14% and .30%) per year by using "separate accounts" or "collective trusts" to invest in certain funds (*id.* ¶¶ 106-108). Plaintiffs then assert, in conclusory terms, that these alternative investment options would have saved participants "millions of dollars per year in unnecessary fees." (*Id.* ¶ 116.) Plaintiffs do not allege any facts suggesting preferential treatment by any Plan fiduciary in connection with their Retail Shares and Mutual Fund Alternatives Claims, but rather rely on academic literature to contend that marginal discrepancies in fees between options chosen by the Plan and options available to the Plan demonstrate imprudence as a matter of law.[9] (*See id.* ¶¶ 93-117.)

Two recent Second Circuit decisions demonstrate why these claims fail as a matter of law. *See Young*, 325 F. App'x at 33; *Laboy III*, 513 F. App'x at 80. In *Young*, participants in an ERISA retirement savings plan claimed that plan fiduciaries breached their duty of prudence by offering certain Fidelity investments as traditional mutual funds that "carried fees in excess of similar investment products available to large, institutional investors like the [plan] and that permitting

---

[9]     Numerous valid reasons exist why a prudent fiduciary might offer investment options to Plan participants in the form of retail mutual fund shares instead of institutional alternatives, including greater liquidity and stricter regulatory requirements. (*See*, *infra*, pp. 16-17 & n.11.)

investments in these funds caused the plan[] to pay 'millions of dollars' that could have been avoided by selecting cheaper, alternative investments." *Young* v. *Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 418 (S.D.N.Y. 2008). The *Young* plaintiffs alleged that (i) "pooled separate accounts [and] collective trusts . . . offer the same investment products as the mutual fund industry at lower cost" (Compl. ¶ 41, *Young*, No. 1:07-cv-1994 (S.D.N.Y.), ECF No. 1 (attached as Exhibit 14 to the Possick Decl.)), (ii) plan fiduciaries "failed to take advantage of the economies of scale [and] the Plans' bargaining power" to obtain such lower cost products (*id.* ¶ 73), and (iii) the plan consequently overpaid between 5 and 31 basis points (between .05% and .31%) per year in mutual fund administrative fees that could have been avoided by investing in institutional products instead of traditional mutual funds (*id.* ¶¶ 74-76). Following the district court's dismissal of the complaint under ERISA's three-year statute of limitation (discussed *infra*), the Second Circuit held that the alleged overpayments—*i.e.*, the plan's alleged overpayment of mutual fund expenses ranging from 5 to 31 basis points per year—were not "so disproportionately large . . . [that they] could not have been the product of arm's-length bargaining," and therefore "do not provide a basis upon which to infer that defendants' offering of the [challenged funds] was a breach of their fiduciary duties." 325 F. App'x at 33.

In *Laboy*, participants in an ERISA retirement savings plan similarly claimed that plan fiduciaries breached their duty of prudence by offering investment options with "excessive fees and administrative expenses." *Laboy I*, 2012 WL 701397, at *2. The *Laboy* plaintiffs pointed to six alternative investment options with lower fees and expenses than the investment options at issue in that case, including investment options with fees between 5 and 61 basis points lower than the challenged investment options. *See* First Am. Compl. ¶¶ 62-67, *Laboy*, No. 1:11-cv-5127 (S.D.N.Y.), ECF No. 18 (attached as Exhibit 15 to the Possick Decl.). Applying the Second

- 13 -

Circuit's pleading standard in *Young*, 325 F. App'x at 33, the district court dismissed the imprudence claims, holding that the magnitude of the alleged overpayments—which ranged from 5 to 61 basis points—did not give rise to an inference that the challenged investment "could not have been the product of arm's-length bargaining." *Laboy I*, 2012 WL 701397, at *2-3. After the *Laboy* plaintiffs unsuccessfully attempted to amend their complaint, *see Laboy II*, 2012 WL 3191961, at *2-3, the Second Circuit affirmed the dismissal of the excessive fee claims, expressly noting that the alleged overpayments—between 5 and 61 basis points, *see* Second Am. Compl. ¶ 68, *Laboy*, No. 1:11-cv-5127 (S.D.N.Y.), ECF No. 27 (attached as Exhibit 16 to the Possick Decl.)—"do not appear disproportionate to the services rendered," and thus did not give rise to an inference of imprudence. *Laboy III*, 513 F. App'x at 80 n.4 (citing *Young*, 325 F. App'x at 33).

Under *Young* and *Laboy*, Plaintiffs' allegations of marginal savings—ranging from 14 to 37 basis points—that the Plan fiduciaries supposedly could have obtained by offering non-retail shares or alternative investment vehicles (Compl. ¶¶ 96, 106-108) do not constitute overpayments so large that the arrangement "could not have been the product of arm's-length bargaining." *Young*, 325 F. App'x at 33; *see also Laboy III*, 513 F. App'x at 80. Those claims therefore should be dismissed.

**B.     Plaintiffs' Academic Literature and Out-of-Circuit Cases Do Not Save Their Claims from Dismissal.**

Although the Complaint cites court decisions (*see, e.g.*, Compl. ¶¶ 37, 38, 46, 47, 50-52), notably absent is any reference to the Second Circuit's decisions in *Young* and *Laboy*, which require dismissal of Plaintiffs' excessive fee claims (*see, supra*, pp. 12-14). Instead, Plaintiffs seek to support their Retail Shares and Mutual Fund Alternatives Claims by relying on academic literature and out-of-circuit cases that supposedly establish bright-line rules that (i) "the failure to use the least expensive class of shares available is a breach of fiduciary duty" (Compl. ¶ 12), and

(ii) plan fiduciaries "have no excuse for failing to use . . . collective trusts or separate accounts [instead of traditional mutual funds]" (*id.* ¶ 11).

Even setting aside their failure to address *Young* and *Laboy*, which dismissed claims involving far higher cost differentials than alleged here, Plaintiffs also do not mention that their broadside challenge to retail-share mutual funds also has been rejected by courts outside the Second Circuit in cases that challenged expense ratios similar to, and higher than, the absolute expense ratios of between 66 and 96 basis points alleged here (Compl. ¶¶ 106-108).[10]  *See, e.g.*, *Renfro*, 671 F.3d at 319, 327 (affirming dismissal of claims based on allegations that defendants "breached their duties of loyalty and prudence by selecting and retaining retail mutual funds . . . [when defendants] could have selected investments having lower fees than mutual funds and/or used the size of its plan as leverage to bargain for lower fee rates on mutual funds" than "the expense ratios on the funds included in the Unisys plan [which] ranged from 0.1% to 1.21%"); *Loomis*, 658 F.3d at 669-70 (affirming dismissal of imprudence claims based on theory that plan was required to offer "'wholesale' or 'institutional' investment vehicles" rather than funds with "expense ratios ranging from 0.03% to 0.96%"); *Hecker* v. *Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming dismissal of imprudence claims based on theory that fiduciaries "select[ed] investment options with excessive fees" from .07% to just over 1% and holding that plans "offered a sufficient mix of investments for their participants" with "a wide range of expense ratios" because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)"); *In re*

---

[10]    Although Plaintiffs' Retail Shares and Mutual Fund Alternatives Claims focus on the cost differentials between the challenged mutual funds and other potential investments (*see* Compl. ¶ 96), which fails to state a claim under *Young* and *Laboy*, the Complaint also tries to allege imprudence based on the absolute expense ratios of the challenged options.  As shown above, that theory also fails to state a claim.

*Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867-68 (S.D. Ohio 2009) (dismissing imprudence claims based on allegations that fiduciaries imprudently "select[ed] investment options that included retail share mutual funds, the same shares that are available to investors in the retail market, instead of using the Plan's size and market leverage to negotiate lower than retail share charges for Plan members").

Contrary to Plaintiffs' assertion that Plan fiduciaries have "no excuse" for offering retail mutual fund shares (Compl. ¶¶ 11-12), these courts all recognized that mutual funds offer advantages that institutional products generally do not.   As Judge Easterbrook explained in *Loomis*, numerous valid reasons exist why an ERISA plan would include investment options in the form of retail mutual fund shares instead of other alternatives, including greater liquidity features and "the mark-to-market benchmark provided by a retail mutual fund."   658 F.3d at 671-72.   The Third Circuit similarly observed in *Renfro* that retail mutual fund shares also have the advantage of being "subject to a variety of reporting, governance, and transparency requirements that do not apply to other investment vehicles."   671 F.3d at 318; *see also* DOL, ABC Plan 401(k) Plan Fee Disclosure Form for Services Provided by XYZ Company, *available at* http://www.dol.gov/ebsa/pdf/401kfefm.pdf ("The service provider offering the lowest cost services is not necessarily the best choice for [a] plan.").[11]

---

[11]     Mutual funds provide (i) information transparency, with standardized disclosure of investment risk, performance and fees and periodic reports of fund holdings, 15 U.S.C. §§ 80a-8, 80a-30; SEC Form N-1A, *available at* https://www.sec.gov/about/forms/formn-1a.pdf; (ii) governance by a board, the majority of whose members must be independent of the adviser, 17 C.F.R. § 270.0-1(a)(7); (iii) substantive investment regulation, such as limits on leverage and diversification requirements, 15 U.S.C. § 80a-18(a)(1)-(f); 26 U.S.C. § 851(b)(3); and (iv) a compliance regime dictated by the SEC, including written procedures under the direction of the chief compliance officer and regulation by Sarbanes-Oxley, 15 U.S.C. § 7241(a); 17 C.F.R. § 270.38a-1.

In a footnote, Plaintiffs assert that "[t]he criticisms that have been launched against collective trust vehicles in the past no longer apply." (Compl. ¶ 111 n.13.)   But this bald assertion cannot save Plaintiffs' claims from dismissal.  Indeed, Plaintiffs concede that the only reason collective trusts and separate accounts can be offered at lower costs than traditional mutual funds is precisely "*because they are not subject to a number of regulations governing mutual funds*."  (*Id*. ¶ 11 (emphasis added).)  Although Plaintiffs later try to rehabilitate their claims by alleging that "[c]ollective trusts use a unitized structure . . . [so that] participants [can] track the daily performance of their investments online" (*id*. ¶ 111 n.13), Plaintiffs do not address the "number of regulations governing mutual funds"—such as additional reporting, governance, and transparency requirements—that Plan fiduciaries would be sacrificing by exchanging retail-share mutual funds for institutional investments.

Plaintiffs' Retail Shares Claim predicated on the theory that Plan fiduciaries "should have known of the existence of institutional shares and therefore also should have immediately known of the prudence of transferring the Plan into institutional shares" (Compl. ¶ 97) separately fails because the Complaint ignores that many of the approximately 30 investments offered to Plan participants (nearly a majority, in fact) are in the form of institutional shares.  (*See* Ex. 8 (2006 SPD) at A-2; Ex. 9 (2012 SPD Appendix) at A-2 to A-3; Ex. 6 (2016 SPD) at 39-40.)  The Plan documents make clear that, throughout the class period, Plan participants were offered a diverse mix of institutional, retail and administrative shares, from which to choose the options that suited them best.  (*See* Ex. 8 (2006 SPD) at A-2; Ex. 9 (2012 SPD Appendix) at A-2; Ex. 6 (2016 SPD) at A-2 to A-3.)  Although Plaintiffs may disagree with the Plan's determination of which types of shares to offer for which Plan options, the ERISA statute requires only that fiduciaries act prudently in the method by which they make that determination.  *See PBGC*, 712 F.3d at 716-

17, 718 ("nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund" and affirming dismissal because "the prudence of each investment is not assessed in isolation but, rather, as the investment relates to the portfolio as a whole," giving "'appropriate consideration' to whether an investment 'is reasonably designed, as part of the portfolio . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment'") (quoting 29 C.F.R. § 2550.404a-1(b)(2)(i)); *Renfro*, 671 F.3d at 327-28 (affirming dismissal because "ERISA defined contribution 401(k) plan [should have] a reasonable range of investment options with a variety of risk profiles and fee rates").

Finally, Plaintiffs also cannot save their excessive fee claims by citing inapposite decisions by courts outside the Second Circuit.  (*See* Compl. ¶ 12.)  Each of these decisions either is predicated on a finding of self-dealing in connection with the selection of retail mutual fund shares (which Plaintiffs do not allege here with respect to their Retail Shares and Mutual Fund Alternatives Claims)[12] or applies an entirely different legal standard than the Second Circuit has

---

[12]      In *Krueger* v. *Ameriprise Financial, Inc.*, 2012 WL 5873825, at *13 (D. Minn. Nov. 20, 2012), the court expressly clarified that "Plaintiffs' claims do not rest on an allegation that Defendants chose retail funds and did not negotiate for lower wholesale fees.  Rather, Plaintiffs here plausibly allege that Defendants selected Ameriprise affiliated funds to benefit themselves at the expense of plan participants."  Similarly, in *Braden* v. *Wal-Mart Stores*, 588 F.3d 585, 595-96 (8th Cir. 2009), the court sustained excessive fee claims because the complaint alleged that the investment options in question "were chosen to benefit the trustee at the expense of the participants."  Likewise, in *Gipson* v. *Wells Fargo & Co.*, 2009 WL 702004, at *4-5 (D. Minn. Mar. 13, 2009), the court sustained excessive fee claims because "Defendants invested in a category of stock"—*i.e.*, retail shares—"that generated higher fees for [Defendants' proprietary mutual fund], rather than in the 'institutional' category that charged lower management fees."  By contrast, Plaintiffs here have not alleged facts giving rise to an inference that Defendants "chose [retail shares or conventional mutual funds] to enrich [them]selves at participants' expense."  *Loomis*, 658 F.3d at 671 (affirming dismissal of imprudence claims).

adopted.[13]  Moreover, none of these decisions addresses the Second Circuit's decisions in *Young*

or *Laboy*, which are directly on point and require dismissal of Plaintiffs' Retail Shares and

Mutual Fund Alternatives Claims for failure to state a claim.  *See Young*, 325 F. App'x at 33.

*Laboy III*, 513 F. App'x at 80 & n.4; *see also Renfro*, 671 F.3d at 327; *Loomis*, 658 F.3d at 671-

72; *Hecker*, 556 F.3d at 586; *In re Honda of Am.*, 661 F. Supp. 2d at 867-68.[14]

## II.   PLAINTIFFS' PROPRIETARY FUNDS CLAIM IS SUBJECT TO ERISA'S THREE-YEAR STATUTE OF LIMITATION.

Plaintiffs assert their Proprietary Funds Claim on behalf of a putative class of six years of

Plan participants.  (Compl. ¶ 119.)  The statute of limitation period for an ERISA breach-of-

fiduciary-duty claim, however, is the shorter of "(1) six years after (A) the date of the last action

which constituted a part of the breach or violation, or (B) in the case of an omission the latest

date on which the fiduciary could have cured the breach or violation, or (2) three years after the

earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C.

§ 1113.  A plaintiff has "actual knowledge of the breach or violation"—thus triggering the three-

---

[13]     *See Tibble* v. *Edison Int'l*, 729 F.3d 1110, 1138 (9th Cir. 2013) (reviewing summary judgment ruling that plan fiduciaries had not carried burden to establish affirmative defense of "reasonable reliance" on outside consultant's advice), *vacated on other grounds*, 135 S. Ct. 1823 (2015); *Kruger* v. *Novant Health, Inc.*, 131 F. Supp. 3d 470, 475-78 (M.D.N.C. 2015) (denying motion to dismiss excessive fee claims based on decision by Eighth Circuit in *Braden*, 588 F.3d at 595-96, and rejecting contrary Third and Seventh Circuit decisions dismissing similar claims, without consideration of Second Circuit's standard).

[14]     Plaintiffs allege, in conclusory fashion, that the Plan fiduciaries selected T. Rowe Price mutual funds instead of "separate accounts" or "collective trusts" for the "impermissible purpose" of obtaining greater "revenue sharing" payments from T. Rowe Price.  (Compl. ¶ 11.) That conclusory allegation does not save Plaintiffs' Mutual Fund Alternatives Claim from dismissal.  First, Plaintiffs allege no facts supporting their speculation about the Plan fiduciaries' motives.  (*See id.*)   Second, Plaintiffs concede later in their Complaint that they have no knowledge of the Plan fiduciaries' reasons for selecting T. Rowe Price mutual funds instead of institutional investments, admitting that they "still do not have actual knowledge of [the Plan fiduciaries'] decision-making processes with respect to the Plan."  (*Id.* ¶ 117.)

year limitation period—when he or she has "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo* v. *Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).

In determining what facts an ERISA plaintiff is deemed to know as a matter of law, courts in this Circuit consider (i) allegations in the complaint, *see In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 609-12 (S.D.N.Y. 2015) (dismissing imprudence claims under ERISA's three-year statute of limitation based on allegations in complaint), *aff'd sub nom. Muehlgay*, 2016 WL 2956958 (2d Cir. May 23, 2016), and (ii) "whether the documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary duty," irrespective of "whether individual plaintiffs actually saw or read the documents." *Young*, 550 F. Supp. 2d at 419 n.3 (dismissing imprudence claims under ERISA's three-year statute of limitation based on disclosures in plan documents), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009); *see also Oechsner* v. *Connell Ltd. P'ship*, 283 F. Supp. 2d 926, 932-33 (S.D.N.Y. 2003) (dismissing ERISA claims under ERISA's three-year statute of limitation because plan documents "placed plaintiffs on specific notice of all of the facts underlying their [claims]"), *aff'd*, 101 F. App'x 849 (2d Cir. 2004).  Here, both the Complaint and documents provided to Plan participants make clear Plaintiffs had actual knowledge of their claims more than three years before this action was filed.

### A.    Plaintiffs Have Conceded Actual Knowledge of the Proprietary Funds Claim Before May 2013.

The reasoning of a recent Second Circuit decision requires dismissal of Plaintiffs' Proprietary Funds Claim to the extent it is based on alleged breaches of ERISA's fiduciary duties that occurred more than three years before they filed this action.  In *Muehlgay*, former Citigroup employees alleged that managers of the Citigroup retirement plan breached their fiduciary duties

of prudence and loyalty by failing to remove company stock from the plan when it supposedly became clear that Citigroup stock would perform poorly in the future. *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d at 603. The district court dismissed the claims as untimely, holding that ERISA's three-year statute applied to plaintiffs' claims because the complaint alleged widespread public knowledge of Citigroup's financial decline over the relevant timeframe, which was sufficient to establish that plaintiffs had "actual knowledge" of the likely underperformance of Citigroup stock, and therefore of their imprudence and disloyalty claims. *Id.* at 610-12.

On appeal, the *Muehlgay* plaintiffs argued—as Plaintiffs allege here (Compl. ¶ 117)—that they did not have "actual knowledge" of their claims within the meaning of ERISA's statute of limitation because (i) "unlike the fiduciary defendants, [plaintiffs] were 'ordinary employees' who were unable to understand" the risks of continuing to hold company stock, and (ii) without discovery concerning the plan fiduciaries' decisionmaking process, plaintiffs could not have "actual knowledge" of defendants' process for monitoring and evaluating plan investments. 2016 WL 2956958, at *1. The Second Circuit rejected both arguments, holding that plaintiffs' own allegations conceded "actual knowledge" of their claims. 2016 WL 2956958, at *1-2.

The Second Circuit's decision in *Muehlgay* applies with equal force to Plaintiffs' Proprietary Funds Claim. Like plaintiffs in *Muehlgay*, Plaintiffs here seek to assert their Proprietary Funds Claim based on "reasonable inferences regarding [fiduciaries' decision-making] processes" that led to their continued offering of the Proprietary Funds over the relevant timeframe. (Compl. ¶¶ 91, 117.) As in *Muehlgay*, Plaintiffs admit that, "as of the end of 2012, all but one of the twelve Wilmington mutual funds in the Plan were significantly more expensive" than market averages (Compl. ¶ 83 & n.9), and that there was "ample evidence that these funds had become imprudent and were likely to perform poorly in the future" (*id.* ¶ 77).

Indeed, they specifically base their Proprietary Funds Claim on documents provided to Plan participants in January 2013 by alleging that their "listed expense figures [were] taken from the most recent summary prospectus as of January 2013." (*Id.* ¶ 83 & n.9 (emphasis added).)[15]

Despite their concession of having "ample evidence" of the basis for their Proprietary Funds Claim no later than "the end of 2012" or "January 2013," Plaintiffs argue (without any supporting factual allegations) that the three-year statute should not apply because they "did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties . . . until shortly before this action was filed," and that they "*still* do not have actual knowledge of Defendants' decision-making process" because they have not yet taken discovery.  (Compl. ¶ 117.)  But the Second Circuit rejected those same arguments in *Muehlgay* in charging plaintiffs with actual knowledge and affirming the dismissal of the complaint. 2016 WL 2956958, at *1-2.   This Court should do the same and apply ERISA's three-year statute of limitation, thus limiting Plaintiffs' Proprietary Funds Claim to the three years before the Complaint was filed.

---

[15]   Plaintiffs may argue that the information on which the *Muehlgay* plaintiffs based their imprudence claim (public reports about Citigroup's financial position and business prospects) is distinguishable from the information on which Plaintiffs base their Proprietary Funds Claim (public information suggesting, according to Plaintiffs, that the proprietary funds were overpriced and likely to perform poorly in the future).   But that is a distinction without a difference.  Just like plaintiffs in *Muehlgay*, Plaintiffs here allege that information in the public domain made clear that the M&T and Wilmington Trust funds were imprudent investment options.   Plaintiffs do not point to any information solely in Defendants' possession that Plaintiffs required to plead their claims.  Indeed, Plaintiffs readily admit that they crafted their Proprietary Funds Claim based on expense figures from a summary prospectus "*as of January 2013*" (Compl. ¶ 83 n.9 (emphasis added)), and Plaintiffs do not point to any information from after January 2013 that they needed to craft their Complaint, which is fatal under *Muehlgay*.  *See* 2016 WL 2956958, at *1-2.

**B.**     **The Plan Documents Also Put Plaintiffs on Notice**
**of Their Proprietary Funds Claim.**

ERISA's three-year statute of limitation also applies to Plaintiffs' Proprietary Funds Claim because Plan communications put them on notice of the facts underlying that claim throughout the putative class period, and in no event later than May 11, 2013.  In fact, documents sent to all Plan participants provided Plaintiffs with all of the information needed to draw the inferences on which they base their Proprietary Funds Claim:

- The January 1, 2012 SPD Appendix disclosed in detail the historical performance of each of the Plan's investment options (over multiple time periods), along with each investment option's fee and expense information.  (Ex. 9 (2012 SPD Appendix) at A-11 to A-13.) This includes the very same expense ratios that serve as the basis of Plaintiffs' Proprietary Funds Claim.  (*Compare id.*, *with* Compl. ¶ 83 n.9 (acknowledging that alleged performance and expense information "are taken from [Defendants'] summary prospectus as of January 2013").)

- The 2012 SPD Appendix also disclosed that corporate affiliates of M&T Bank served as the investment advisor to the M&T Bank funds and could receive advisory, administrative and other fees for services rendered to those funds (Ex. 9 (2012 SPD Appendix) at A-3), which is the essence of Plaintiffs' self-dealing allegation underlying their Proprietary Fund Claim (*see* Compl. ¶ 84).

- The Plan's 2012 Investment Disclosure disclosed in detail the historical performance of each of the Plan's investment options compared to benchmark indices, and showed exactly which of the Plan's investment options had underperformed which indices. (Ex. 12 (2012 Investment Disclosure) at 3-5.)

- The 2012 Investment Disclosure also displayed the fees and expenses associated with each investment option, showing that the Proprietary Funds had higher absolute expenses and higher expense ratios than any of the other investment options, including the exact

same Vanguard and TIAA-CREF funds that Plaintiffs use as "benchmarks" in the Complaint.[16]  (*Id.* at 6-7.)

- The 2012 Investment Disclosure grouped the Plan's investment options into separate categories by investment type—*e.g.*, Retirement Funds, Stocks, Bonds, Money Market—which highlighted the differences in administrative expenses and fees between proprietary and non-proprietary investment options of the same investment type.  (*Id.* at 6-7.)

- The 2012 Investment Disclosure further notified Plan participants that "[t]he cumulative effect of fees and expenses can substantially reduce growth of your retirement savings." (*Id.* at 7.)

In short, well before May 2013, the Plan documents gave Plaintiffs all of the information they needed to allege—and all of the information they now use to allege—their Proprietary Funds Claim.

A recent decision by the Southern District of New York makes clear that the three-year limitation period applies to Plaintiffs' Proprietary Funds Claim.  In *Young*, participants in a General Motors retirement plan contended that plan fiduciaries breached their fiduciary duties by failing to remove certain Fidelity funds from the plan.  Plaintiffs alleged that the Fidelity funds "carried fees in excess of similar investment products available to large, institutional investors like the Plans and that permitting investments in these funds caused the plans to pay 'millions of dollars' that could have been avoided by selecting cheaper, alternative investments."  550 F. Supp. 2d at 417-18.  The court held, based on plan documents attached to the fiduciaries' motion to dismiss, that plaintiffs were charged with knowledge of the allegedly excessive Fidelity fees

---

[16]    Defendants assume for purposes of this motion, but do not concede, that the Vanguard funds or TIAA-CREF funds are reasonable benchmarks against which to evaluate the Plan's offering of the Proprietary Funds.

as of the date on which they received their quarterly performance summaries (which was more than three years before they filed the complaint) because "the quarterly performance summaries provided to [p]lan participants clearly disclosed the fees and expenses associated with the Fidelity Funds, including the fact that the expense ratios for some of the Fidelity Funds were higher than those for alternative investment options."  *Id*. at 420.

As in *Young*, the documents provided to Plan participants here indisputably disclosed the performance histories, fees and expenses, and proprietary nature of the Wilmington Trust and M&T Bank funds, including that the expense ratios for some of those funds were higher than other options.  (*See*, *supra*, pp. 23-24.)  Under *Young*, this Court therefore should dismiss the Proprietary Funds Claim under ERISA's three-year limitation period to the extent that it is based on alleged acts or omissions that occurred before May 11, 2013.

In an effort to avoid ERISA's three-year statute of limitation, Plaintiffs contend that they "*still* do not have actual knowledge of Defendants' decision-making process . . . [but for] purposes of [their] Complaint, Plaintiffs have drawn reasonable inferences regarding these processes based upon (among other things) the facts set forth throughout the Complaint." (Compl. ¶ 117 (emphasis added).)  But the Second Circuit in *Muehlgay* rejected those same arguments, confirming that a plaintiff has "actual knowledge" when she has the information needed to plead "a sustainable breach claim as a matter of law," even if the claim is based on inferences and circumstantial evidence.  *See* 2016 WL 2956958, at *2.  Plaintiffs thus concede that they had actual knowledge of their claims when they obtained the circumstantial information on which their claim is based today—*i.e*., when they received Plan documents showing the performance history, expense ratios, and related-party character of the proprietary funds.  *See id*.

In sum, under *Muehlgay* and *Young*, ERISA's three-year statute of limitation applies to Plaintiffs' Proprietary Funds Claim. This Court thus should dismiss that claim to the extent that it is based on conduct before May 11, 2013, and shorten the putative class period accordingly.

## III. PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW.

Because Plaintiffs' claim of primary liability in Count I fails as a matter of law with respect to their Retail Shares and Mutual Fund Alternatives Claims—with only a truncated three-year class period on their remaining Proprietary Funds Claim—their other counts alleging secondary claims for failure to monitor other fiduciaries (Count II) and equitable disgorgement (Count III) likewise should be dismissed to the same extent because those secondary claims are unquestionably derivative of Plaintiffs' primary claim. *See*, *e.g.*, *Rinehart* v. *Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA by the Benefit Committee Defendants."), *vacated on other grounds*, 134 S. Ct. 2900 (2014); *In re Pfizer*, 2013 WL 1285175, at *10 ("Plaintiffs' remaining claims—for failure to monitor [Count II] . . . and knowing participation in breaches of duty [Count III]—are similarly derivative of their claims that Defendants breached their fiduciary duty of prudence."); *Fisher* v. *JP Morgan Chase & Co.*, 703 F. Supp. 2d 374, 389 (S.D.N.Y. 2010) ("plaintiffs have failed to plead a breach of the duty to monitor because plaintiffs have failed to allege an instance of misconduct that the [monitoring defendants] failed to detect") (collecting cases), *aff'd*, 469 Fed. Appx. 57, 60 (2d Cir. 2012). These secondary claims also fail for additional reasons discussed below.

### A. Plaintiffs Do Not Adequately Plead a Breach of the Duty to Monitor.

Plaintiffs' claim (Count II) that M&T Bank and the Board breached their alleged duty to monitor the Committee (Compl. ¶¶ 136-142) fails because Plaintiffs allege no facts suggesting that any Monitoring Defendant failed to review the performance of the Committee "[a]t

reasonable intervals," which is all that ERISA requires.  29 C.F.R. § 2509.75-8 at FR-17 ("At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."); *see also Pedraza* v. *Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1277-78 (N.D. Ga. 2006) (collecting cases holding that duty to monitor under ERISA is congruent with 29 C.F.R. § 2509.75-8).

Instead, the Complaint conclusorily asserts, without any supporting factual allegations, that M&T Bank and the Board "[f]ail[ed] to monitor and evaluate the performance of the other Fiduciary Defendants or have a system in place for doing so."  (Compl. ¶ 140(a).)  Such a bald assertion, unsupported by any facts, fails to allege a breach of the duty to monitor.  *See, e.g.*, *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011) ("Furthermore, the Complaint does not allege any specific factual basis to support Plaintiffs' conclusory allegation of a lack of legally sufficient monitoring by Defendants."); *In re BP P.L.C. Sec. Litig.*, 2015 WL 6674576, at *10-11 (S.D. Tex. Oct. 30, 2015) ("Plaintiffs have [not] sufficiently alleged that the Appointing Officers failed to adequately monitor the members of the [committee]" under the DOL's "reasonable interval" standard.); *Alford* v. *United Cmty. Banks, Inc.*, 2013 U.S. Dist. LEXIS 187387, at *41-42 (N.D. Ga. Jan. 31, 2013) ("duty to monitor does not require appointees to review all business decisions of Plan administrators" under DOL's reasonable interval standard).

### B.    Plaintiffs Do Not Adequately Plead an Equitable Disgorgement Claim.

"The well-settled elements of a cause of action for participation [by a non-fiduciary] in a breach of fiduciary duty are (1) breach by a fiduciary of a duty owed to plaintiff, (2) defendant's knowing participation in the breach, and (3) damages." *Trs. of the Upstate N.Y.*, 131 F. Supp. at

131.   Plaintiffs' claim (Count III) that the Employer Defendants are "non-fiduciary [defendants that] had actual or constructive knowledge of" the alleged fiduciary breaches and are therefore liable under an equitable disgorgement theory (Compl. ¶¶ 143-149) falls short of that standard for two reasons.

*First*, Plaintiffs' equitable disgorgement claim against five different Employer Defendants—M&T Bank, M&T, WFMC, WTIA and Wilmington Trust (Compl. ¶ 144 & ¶ 1 n.2)—is based on nothing more than the generalized assertion that all of those "Defendants had actual or constructive knowledge of circumstances rendering the selection and retention of these proprietary funds" (*id*. ¶ 146).   "The knowledge element of this cause of action can be broken down into two elements, namely (1) knowledge of the primary violator's status as a fiduciary; and (2) knowledge that the primary's conduct contravenes a fiduciary duty." *Trs. of the Upstate N.Y.*, 131 F. Supp. 3d at 131.   Plaintiffs here fail to allege each Employer Defendant's purported knowledge of a primary violator's breach because they do not plead *any* facts concerning what each of those five Defendants supposedly knew.   Rather, Plaintiffs simply lump all five Employer Defendants together in a classic example of impermissible "group pleading" and ask this Court to accept as true the conclusory allegation that all five "Defendants were aware that the Fiduciary Defendants were breaching their fiduciary duties by selecting and retaining proprietary mutual funds in the Plan." (Compl. ¶ 148.)  This attempt fails as a matter of law.  *See*, *e.g.*, *Leber* v. *Citigroup, Inc.*, 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010) ("Plaintiffs fail to plead with any specificity how or why Citigroup knew or should have known of the alleged breaches, or who at Citigroup would have had such knowledge," which fails to satisfy the "critical element of a 'knowing participation' claim—that [each named non-fiduciary defendant] knew that the primary violator's conduct violated a fiduciary duty.").

*Second*, the Complaint also does not allege each "defendant's knowing participation in the breach," with the requisite plausible factual allegations showing that each non-fiduciary defendant actually "participate[d] in a fiduciary's breach [by] affirmatively assist[ing], help[ing] conceal, or by virtue of failing to act when required to do so." *Trs. of the Upstate N.Y.*, 131 F. Supp. 3d at 131. Here, the Complaint includes no allegation that any Employer Defendant participated in any alleged fiduciary breach, instead alleging only that "the Employer Defendants had actual or constructive knowledge that the monies they were receiving from or in connection with Plan assets were being received as a result of the Fiduciary Defendants' fiduciary breaches." (Compl. ¶ 148.)

This attempt to satisfy the "knowing participation" element fails as a matter of law because "knowledge combined with receipt of advisory fees is [not] sufficient to state a claim for knowing participation in the fiduciary breach of another." *Trs. of the Upstate N.Y.*, 131 F. Supp. 3d at 132. "To the contrary, case law indicates that Plaintiff must plead facts demonstrating that the [non-fiduciary defendant] 'acted to cause the prohibited investment,' or that it 'affirmatively assisted, helped conceal, or by virtue of failing to act when required to do so enabled the fiduciary breach to proceed.'" *Id.* (rejecting allegation that "by virtue of its acquiescence and its receipt of the investment advisory fees paid by the Plan, Defendant BONY became a knowing participant in its co-defendants' fiduciary breach"); *see also In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *12 (W.D.N.Y. Dec. 12, 2008) (dismissing equitable disgorgement claim because "Complaint does not allege how B&L or anyone working for B&L other than defendants who are already sued for fiduciary breach, 'knowingly participated' as a non-fiduciary in the alleged fiduciary breaches, as the law requires").

IV.     **SEVERAL OF THE DEFENDANTS NAMED IN THE COMPLAINT ARE NOT APPROPRIATE DEFENDANTS UNDER ERISA.**

A defendant must have been "'acting as a fiduciary (that is, was performing a fiduciary function)'" to be subject to an ERISA fiduciary duty claim. *Bell* v. *Pfizer, Inc.*, 626 F.3d 66, 73 (2d Cir. 2010) (quoting *Pegram* v. *Herdrich*, 530 U.S. 211, 226 (2000)). Here, WTIA, WFMC and M&T Bank should be dismissed because they are not fiduciaries of the Plan.[17]

A.     **WTIA and WFMC Are Not Fiduciaries.**

Plaintiffs allege that WTIA and WFMC are fiduciaries because (i) "WTIA acts as an investment consultant to the Plan" (Compl. ¶ 35), and (ii) "WFMC has served as the investment advisor for all Wilmington mutual funds held within the Plan" (*id.* ¶ 39). Investment advisors, however, are ERISA fiduciaries under only very limited circumstances not alleged here.

The DOL's regulations provide that a person is a fiduciary as a result of rendering investment advice under 29 § U.S.C. 1002(21)(A)(ii) only if he or she (i) "makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property" to an ERISA plan, and (ii) either "[h]as *discretionary authority or control* . . . with respect to purchasing or selling securities or other property for the plan," or "[r]enders any advice . . . on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, . . . that such services will serve as a *primary basis for investment decisions* with respect to plan assets, and that such person will render individualized

---

[17]     Although the Complaint names M&T and Wilmington Trust as defendants, Plaintiffs tacitly concede that neither entity had a fiduciary role with respect to the Plan. (Compl. ¶ 127 (excluding these entities from list of "fiduciaries of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1)").) Accordingly, the Complaint asserts only Count III's equitable disgorgement claim against those Defendants predicated on the theory that "[a] non-fiduciary transferee of ill-gotten proceeds is subject to equitable disgorgement of those assets." (Compl. ¶ 143.) Because Count III fails as a matter of law (*see*, *supra*, pp. 27-29), M&T and Wilmington Trust also should be dismissed from this action.

investment advice to the plan based on the particular needs of the plan."  29 C.F.R. § 2510.3-21(c)(1)(i)-(ii)(A)-(B) (emphasis added).[18]  Plaintiffs' allegations against WTIA and WFMC fail to meet that standard.   The Complaint does not allege that either entity had "*discretionary authority or control*" over the Plan's investment decisions or that their advisory role "served as a *primary basis* for investment decisions."  *Id*.

*First*, Plaintiffs fail to allege that either entity's supposed investment advice was the "primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan." *Id*.; *see also In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 763 (S.D.N.Y. 2003) ("plaintiffs have failed to allege that Merrill Lynch was a fiduciary because it acted as an investment advisor" due to no allegations that it "provided investment advice on a regular basis pursuant to an agreement that such advice would serve as a primary basis for investment decisions with respect to plan assets and that the advice would be individualized").   To the contrary, Plaintiffs concede that, "[p]ursuant to the Plan Document, *the Committee . . .* is responsible for selecting and removing designated investment alternatives."  (Compl. ¶ 33 (citing Plan §§ 9.1, 9.10) (emphasis added).)

*Second*, Plaintiffs allege only in conclusory fashion, without any supporting facts, that WTIA and WFMC each "exercises authority or control respecting management or disposition of Plan assets."  (Compl. ¶¶ 35, 39.)  This conclusory assertion falls far short of pleading the

---

[18]     *See also In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 335 (S.D.N.Y. 2012) ("investment advisors who do not possess discretionary authority over the assets of ERISA-covered plans qualify as fiduciaries only when they (1) provide advice to the plan on a regular basis, pursuant to an agreement with the plan or with a fiduciary to the plan that such advice will be (2) a primary basis for the investment of plan assets and (3) individualized to the particular needs of the plan").

necessary *facts* establishing that WTIA and WFMC had "*discretionary* authority or control . . . with respect to" the Plan's investment decisions, particularly because the Complaint concedes that "the Committee possesses discretionary authority and responsibility with respect to" all aspects of the Plan, including the menu of investment options offered to Plan participants (*id.* ¶ 33).   The Complaint's bare-bones attempt to parrot the language of the statute—"exercises authority or control respecting management or disposition of Plan assets" (*id.* ¶¶ 35, 39)—fails to plead fiduciary status under settled law.  *See*, *e.g.*, *Tiblier* v. *Dlabal*, 743 F.3d 1004, 1008-09 (5th Cir. 2014) ("Mere influence over the trustee's investment decisions is not effective control over plan assets" because "'[d]iscretionary authority' and 'discretionary control' refer to actual decision-making power, not the influence a professional may have over the decisions made by the plan trustees."); *Hecker*, 556 F.3d at 583-84 (holding that investment advisor did not exercise "the necessary control to confer fiduciary status" because "[m]erely 'playing a role' or furnishing professional advice is not enough to transform a company into a fiduciary" and it did not have "ultimate authority over the selection of funds").

### B.      M&T Bank Is Not a Fiduciary.

Plaintiffs' allegation that M&T Bank is the Plan sponsor (Compl. ¶ 30) also is insufficient to plead fiduciary status.  It is well established that actions taken "as plan sponsor, such as the acts of creating the Plans and the selection of their terms, [are] not taken in a fiduciary capacity."  *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 756 F. Supp. 2d 330, 346 (S.D.N.Y. 2010); *see also In re JPMorgan*, 2016 WL 110521, at *2 ("The allegation that JPMC Bank is the Plan's sponsor is insufficient to support the claim that JPMC acted as a de facto fiduciary because actions taken as a sponsor, such as establishing a plan, are not fiduciary functions that trigger liability under ERISA.").

With respect to Count I, the Complaint's allegation that "M&T Bank selects the Plan's trustee, hires the Plan's recordkeeper, hires any investment advisory consultants to the Plan, and appoints members of the Committee" (Compl. ¶ 30), even if true, fails to implicate any fiduciary duties because M&T Bank "had no discretion . . . [over] the investment options offered to Plan participants." *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *14 (S.D.N.Y. Aug. 31, 2009). The Complaint also acknowledges, as it must, that M&T Bank did *not* actually "select the Plan's trustee, hire[] the Plan's recordkeeper, [or] hire[] any investment advisory consultants to the Plan." (Compl. ¶ 30.) "[P]ursuant to the Plan Document, the Committee appoints investment managers, hires the Plan's trustee, selects the Plan's recordkeeper, and is responsible for selecting and removing designated investment alternatives within the Plan" and thus "possesses discretionary authority and responsibility with respect to the administration of the Plan." (*Id.* ¶ 33 (citing Plan §§ 9.1, 9.10); *see also* Ex. 13 (Committee Charter) at 1-2.) M&T Bank therefore should be dismissed from Count I.[19] *See, e.g.*, *Coulter* v. *Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014) ("[A] person may be an ERISA fiduciary with respect to certain matters but not others; fiduciary status exists only to the extent that the person has or exercises the described authority . . . over a plan.") (internal quotation marks omitted).

With respect to the duty to monitor claim in Count II, Plaintiffs concede that the Board, rather than M&T Bank, "had the authority, prior to January 1, 2016, to appoint and remove persons from the Committee." (Compl. ¶ 37 (citing Plan § 9.1(c).) They nevertheless try to create some uncertainty as to whether M&T Bank may have had appointing authority over the Committee at some point during the putative class period based on Section IV.1 of the

---

[19]     For the same reason, the Board, which had appointing authority over the Committee but no other fiduciary role, also should be dismissed from Count I.

Investment Policy Statement.  (Compl. ¶¶ 30, 137.)  But no ambiguity exists under the Plan: throughout the class period, the Plan expressly placed responsibility for appointing the members of the Committee on the Board.[20]  Because M&T Bank had no authority to replace Committee members, M&T Bank had no fiduciary role under the Plan and also should be dismissed from Count II (and thus from this action entirely).[21]

---

[20]   *See* Ex. 5 (2006 Plan) § 9.1(a) ("The Board of Directors of the Corporation will appoint the Committee, consisting at all times of at least three individuals, which will administer this Plan in accordance with its terms."); Ex. 4 (2011 Plan) § 9.1(a) (same); Ex. 3 (2016 Plan) § 9.1(a) ("The Committee will be constituted in accordance with the Employee Benefit Plans Committee Charter.") & Ex. 13 (Committee Charter) at 2 ("The members of the Committee will be appointed and replaced by the Board of Directors of M&T Bank, to serve for such term as the Board may determine and until their successors are duly qualified and appointed.").

[21]   Plaintiffs' assertion that M&T Bank was a fiduciary hinges on the Investment Policy Statement ("IPS"), dated March 10, 2008, which summarizes certain of the Plan's terms, and states that "[t]he Company, which is responsible for selecting the Trustee, hiring the record keeper and/or investment advisory consultants, and appointing members of the Committee." (Ex. 17 (IPS) Part IV.1; *see also* Compl. ¶¶ 30, 137 (citing this provision).)  This document fails to create any factual uncertainty—even at the motion to dismiss stage—concerning whether M&T Bank had appointing authority over the Committee.  The March 2008 IPS pre-dates the start of the putative class period by two years and thus was superseded, for purposes of this action and otherwise, by the governing Plan document that was restated in January of 2006, 2011 and 2016, and that has always stated that the Board (not M&T Bank) had appointing authority over the Committee.  Under well-settled law, discrepancies between an SPD and a governing Plan document are interpreted in favor of the Plan.  *CIGNA Corp.* v. *Amara*, 563 U.S. 421, 438 (2011) ("conclud[ing] that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan," and therefore the terms of the Plan take precedence).

**CONCLUSION**

For the foregoing reasons, this Court should dismiss with prejudice Plaintiffs' Retail Shares and Mutual Fund Alternatives Claims in Count I and also dismiss Plaintiffs' Proprietary Funds Claim in Count I to the extent it is based on alleged conduct that occurred more than three years before the Complaint was filed—*i.e.*, before May 11, 2013.  In addition, the Court should dismiss in their entirety Plaintiffs' secondary claims in Counts II and III and also should dismiss WTIA, WFMC, M&T Bank, M&T and Wilmington Trust as defendants.

Dated:  July 20, 2016                                    Respectfully Submitted,


**SULLIVAN & CROMWELL LLP**

/s/Richard C. Pepperman, II
Richard C. Pepperman, II
(peppermanr@sullcrom.com)
 *admitted in W.D.N.Y.
Matthew A. Schwartz
(matthewschwartz@sullcrom.com)
 * admitted in W.D.N.Y.
M. David Possick
(possickmd@sullcrom.com)
 * admitted in W.D.N.Y.
125 Broad Street
New York, NY  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588

*Attorneys for Defendants*