# Exhibit 14

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK


Case No. 1:16-cv-375-FPG-JJM

Consolidated Action


----------------------------------------------

In re M&T Bank Corporation ERISA Litigation

----------------------------------------------



** CONFIDENTIAL **


    Videotaped deposition of RUSSELL M. DIXON, taken pursuant to the Federal Rules of Civil Procedure, in the offices of JACK W. HUNT & ASSOCIATES, INC., 1120 Liberty Building, Buffalo, New York, on April 12, 2019, commencing at 9:13 a.m., before JOAN M. METZGER-HUBBELL, CRR, RMR, RPR, Notary Public.

1   when you sent them in?

2          A.   Yeah.

3          Q.   Okay.  And did that -- at the time then
4   did you remember what you were invested in?

5          A.   No, because they give the accounts
6   weird names, you know what I mean.

7          Q.   Okay.  So you didn't know --

8          A.   Large whatever and then they -- you
9   know.

10         Q.   So even looking at that, you didn't
11  recall; is that fair to say?

12         A.   Right.

13         Q.   Okay.

14         MR. OSSIP:  Off the record one second.

15         (Discussion off the record.)

16         THE VIDEOGRAPHER:  Going off the record.
17  The time is 9:31.

18         (Discussion off the record.)

19         THE VIDEOGRAPHER:  Going on the record.  The
20  time is 9:32.

21         BY MR. OSSIP:

22         Q.   Great.  So I think before you were
23  saying that just throughout the period of this case
24  you didn't review anything that would have made you
25  recall which funds you were invested in?

Page 24

1      A.   No.

2      Q.   Okay.  And do you recall ever having

3  changed which funds you were invested in within the

4  plan?

5      A.   Yeah, when they -- M&T bought the other

6  bank, what is it, Wilmington or whatever, that

7  they -- they dropped the M&T stocks and they

8  switched everything over to the Wilmington stock

9  fund.  The only thing that stayed the same was the

10 M&T stock, because it's M&T.

11     Q.   Right.  And did you affirmatively

12 choose to make the change, or did that just happen

13 automatically?

14     A.   No.  They just did it on me.  They

15 said, here you are, these are the -- this one's

16 replacing this one, this one's replacing that one,

17 and there you go.

18     Q.   So you got some sort of letter in the

19 mail saying that?

20     A.   Yeah.

21     Q.   All right.  You don't still have that,

22 by any chance, do you?

23     A.   No, no.  In fact, it was -- it was like

24 a memo like, you know, in the office like.

25     Q.   I see.  Inside -- so you got it at

Page 120

1      Q.   Okay.  And -- and that would come out
2  of the funds that you would receive; is that right?
3      A.   Yeah, right, yeah.  It's just like when
4  you have an attorney for -- you're buying a house.
5  They usually get whatever the realtor, 7 percent,
6  so I would imagine they have their certain
7  percentage that they get.
8      Q.   Do you know if there's any cap on the
9  amount of fees that they can receive?
10     A.   I'm not a lawyer.  I have no idea.
11     Q.   Okay.  Did you negotiate your fees with
12 them in any way?
13     A.   No, no.
14     Q.   Did you know that you could?
15     A.   I don't deal with attorneys that much,
16 you know.  And they didn't tell me what their fees
17 are going to be anyway so --
18     Q.   Okay.
19     A.   Because it comes out of -- it doesn't
20 come from me.  It comes out of whatever the
21 settlement is.
22     Q.   And do you know how that amount's
23 determined?
24     A.   I don't know.  I guess the judge
25 determines it.  Somebody's got to be in charge.

1    Q.   Right.  And that's a guess that the
2  judge would determine it?
3    A.   Yeah.  I would assume so, yeah.
4    Q.   Okay.  And do you know who -- so, for
5  example, if your attorneys had to fly here to meet
6  with you, do you know who would pay those costs?
7    A.   That's their own expense.
8    Q.   Okay.  And do you know if that would
9  come out of the settlement, also?
10   A.   All expenses and fees, sure.
11   Q.   So everything that they --
12   A.   Yeah.  Nobody does anything for free.
13   Q.   And who is your main contact at the law
14  firm?
15   A.   Jacob.
16   Q.   Okay.  And you first spoke to Chloe on
17  that phone call either on Friday or Monday?
18   A.   Yeah, that was -- yeah.
19   Q.   Not before then, though?
20   A.   No.  It was a -- she must have been in
21  his room, and he put me on speaker phone, you know,
22  whatever.
23   Q.   And then --
24   A.   To let me know that she's going to be
25  coming in.

```
 1            THE WITNESS:  I walk the line.
 2            BY MR. OSSIP:
 3       Q.   So -- okay.  So if I told you the
 4  phrase class representative, what does that mean to
 5  you?
 6       A.   Well, on this document, it's a class
 7  action suit which means it's not just me.
 8       Q.   Right.  So what is a class
 9  representative?
10       A.   What, the attorney that's representing
11  a class?
12       Q.   Is that -- is that your understanding
13  of that term?
14       A.   Yeah.  You know, that's what they're
15  doing.  They're -- you know, they're -- I'm sure
16  there's other former employees or whatever involved
17  in it.  I mean, I'm not the only one obviously.
18       Q.   All right.  But your understanding of
19  the phrase class representative is that that's the
20  lawyers?
21       A.   Yeah.  They're representing us.  When I
22  say "us," like I said, I'm sure it's more than just
23  me.
24       Q.   So you and other employees?
25       A.   Employees, yeah.
```