UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re M&T Bank Corporation ERISA Litigation* | Civil Action No.: 1:16-cv-375-FPG-JJM <br><br> Consolidated Action |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM GORDON FEINBLATT LLC**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.    THE PLAN AND ITS INVESTMENTS...................................................................2

    II.    THE PLAN'S COUNSEL (GORDON FEINBLATT) ...............................................3

    III.    THE GORDON FEINBLATT SUBPOENA AND EFFORTS TO MEET AND CONFER ........3

    IV.    THE DISPUTED DOCUMENTS .........................................................................5

ARGUMENT..........................................................................................................................7

    I.    LEGAL STANDARDS REGARDING SUBPOENAS AND THE ATTORNEY-CLIENT PRIVILEGE ......7

    II.    A "FIDUCIARY EXCEPTION" TO PRIVILEGE APPLIES TO DOCUMENTS BEARING ON FIDUCIARY FUNCTIONS, INCLUDING ASSET MANAGEMENT AND CONFLICT AVOIDANCE ....8

    III.    THE DOCUMENTS AT ISSUE CONCERN CORE FIDUCIARY FUNCTIONS ................10

        A.  Decisions Whether to Invest In Wilmington Funds.............................10

        B.  Communications with Committee Regarding Plan Administration ..................11

    IV.    GENERAL LIABILITY CONCERNS DO NOT SHIELD DOCUMENTS OTHERWISE FALLING UNDER THE FIDUCIARY EXCEPTION ........................................................13

CONCLUSION......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716 (S.D.N.Y. 2007) ..............................8, 9, 14

*Black v. Bowes*, 2006 WL 3771097 (S.D.N.Y. Dec. 21, 2006) ......................................................14

*Cavanaugh v. Saul*, 2007 WL 1601743 (D.D.C. June 4, 2007)................................................10, 11

*E. Point Sys., Inc. v. Maxim*, 2015 WL 1971453 (D. Conn. Apr. 30, 2015) ...................................7

*Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18 (2d Cir. 2002)..............9

*Hill v. State Street Corp.*, 2013 WL 6909524 (D. Mass. Dec. 30, 2013) ............................9, 11, 13

*Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011)..................................................................9

*Leber v. Citigroup 401(K) Plan Inv. Comm.*, 2015 WL 6437475
    (S.D.N.Y. Oct. 16, 2015) ..................................................................................8, 9, 10, 11

*Odfjell ASA v. Celanese AG*, 380 F. Supp. 2d 297 (S.D.N.Y. 2005).................................................8

*Smith v. Jefferson Pilot Financial Ins. Co.*, 245 F.R.D. 45 (D. Mass. 2007) ................................14

*Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221 (4th Cir. 2011) .......................12, 13

*Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488 (M.D.N.C. 2008)........................................9

*United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) .....................................................................8

*United States v. Construction Products Research, Inc.,* 73 F.3d 464 (2d Cir.1996).......................8

*Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3d Cir. 2007) ............................................................14

**Rules and Statutes**

Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404 Plans) 57 Fed. Reg. 46906, 46924 n. 27 (Oct. 13, 1992)..........................................................9

Fed. R. Civ. P. 45(d)(2)(B)(i) ...........................................................................................................7

## INTRODUCTION

Plaintiffs bring this motion to enforce a subpoena issued to Gordon Feinblatt LLC, served by Plaintiffs in connection with this class action lawsuit against the M&T Bank Employee Benefit Plans Committee ("Committee") and other fiduciaries and parties-in-interest of the M&T Bank Corporation Retirement Savings Plan (the "Plan"). Plaintiffs, Defendants, and Gordon Feinblatt previously submitted pre-motion letters regarding the subpoena, and participated in a telephone conference with the Court on August 27, 2019. *See ECF No. 138.*

Following the telephone conference with the Court, Plaintiffs requested that Defendants and Gordon Feinblatt meet and confer regarding nine documents listed on Gordon Feinblatt's privilege logs—substantially fewer documents than were the subject of Plaintiffs' pre-motion letter. Specifically, Plaintiffs requested to meet and confer regarding: (1) documents relating to the Plan's investments in Wilmington funds (the proprietary investments at the heart of this lawsuit); (2) redactions to two sets of handwritten notes taken by the Plan's outside counsel during Committee meetings; and, (3) a redacted list of action items for the Plan sent to the Committee's secretary. Defendants declined to drop their privilege objections with respect to any of the documents in question, or to provide basic information about the documents that would allow Plaintiffs to better assess Defendants' privilege objections and whether the fiduciary exception to the attorney-client privilege applied (such as whether the documents concerned how the Plan's investment lineup should be managed going forward, or whether the documents discussed specific lawsuits against M&T or involved specific threats of litigation against M&T).

Plaintiffs now move to compel production of these nine documents. Because all nine documents concern fiduciary matters on their face, and were generated well in advance of any potential lawsuit, they are subject to the fiduciary exception to the attorney-client privilege and should be produced. At a minimum, they should be reviewed *in camera*.

1

# BACKGROUND

**I.     THE PLAN AND ITS INVESTMENTS**

The Plan is a 401(k) plan that covers eligible employees of M&T Bank and its affiliates. M&T Bank is the Plan Sponsor, *ECF No. 135 ¶ 29; ECF No. 141 ¶ 29*, and its hand-picked Committee has responsibility for the investment decisions and administration of the Plan. *ECF No. 135-1 §§ 9.1, 9.10.*[1] Per the Plan Document, the Committee selects "the Investment Options among which Participants may direct the investment of their Accounts . . . ." *Id. § 9.10.*

As of the beginning of the statutory period in 2010, the Plan offered participants 23 designated investment alternatives, 8 of which were mutual funds from M&T Bank's proprietary MTB group of funds. *ECF No. 95-6*. At that time, more that 30% of the Plan's assets were invested in proprietary MTB funds (excluding M&T Bank stock). *ECF No. 95-10, at 1961*. These proprietary funds were the exclusive option in many of the most typical categories of investments. *See ECF No. 95-11, at 48:7-49:1; ECF No. 95-12 at HABIB0000699*.

In May 2011, M&T Bank finalized its purchase of Wilmington Trust, a failing Delaware bank that had its own family of proprietary mutual funds, the Wilmington Funds. *See ECF No. 71 ¶ 9*. After the acquisition, M&T Investment Advisors was renamed Wilmington Trust Investment Advisors, and the MTB funds were re-branded as Wilmington funds. *Id.* As part of the acquisition, the Wilmington Trust 401(k) plan was merged into the M&T Plan.

Documents created by the project team tasked with identifying which funds to maintain in the merged Plan confirm that one of their goals was to "Maintain WT and MTB funds" in the merged Plan. *ECF No. 95-17, at 2627*. Consistent with this objective, Defendants discarded every single non-proprietary fund held in the former Wilmington plan and only superficially

---

[1] The Committee consists of high-ranking company officials appointed by the shared Board of Directors of M&T Bank and its parent. *ECF No. 95-2 at 2-3*.

evaluated the eight proprietary Wilmington funds for potential inclusion in the Plan. *ECF No. 95-18, at 1053-54, 57*. As a result, the amount of "[p]roprietary offerings" in the M&T Plan—which Defendants were tracking—increased "by number (8 to 14)" and "by assets (31% to 40%)." *Id.* at 55. In dollars, the Plan went from $255 million in proprietary holdings to more than $417 million. *Id.*

II. THE PLAN'S COUNSEL (GORDON FEINBLATT)

Gordon Feinblatt has served as the Plan's outside counsel since 2011. *See Schutz Decl. Ex. 9* ("Amendment 5 being reviewed by Matt Mellin, our ERISA counsel . . . ."). Gordon Feinblatt is paid by the Plan, and its compensation is reflected in the Plan's Form 5500 filed with the Department of Labor each year. *See, e.g.*, *Schutz Decl., Ex. 10, at HABIB0000869* (reflecting payments of $64,243 to Gordon Feinblatt in 2015). Matthew Mellin of Gordon Feinblatt regularly attended meetings of the Committee. *See, e.g.*, *ECF Nos. 95-19, 95-20, 95-21* (Committee minutes reflecting Mr. Mellin's attendance at meetings held August 13, 2012, March 11, 2013, and March 10, 2014). Mr. Mellin also emailed with Committee members and its secretary. *See, e,g.*, *Schutz Decl., Ex. 11* (email from Matthew Mellin to the Committee's Secretary, Ann Marie Odrobina, and Committee members Janet Coletti and Steve Braunscheidel).

III. THE GORDON FEINBLATT SUBPOENA AND EFFORTS TO MEET AND CONFER

Given Gordon Feinblatt's role with respect to the Plan, Plaintiffs served a subpoena for documents on Gordon Feinblatt on December 5, 2018. *Schutz Decl. Ex. 1*. On December 17, 2018, Gordon Feinblatt lodged certain objections, including "to producing any documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege." *Schutz Decl. Ex. 2*. But Gordon Feinblatt did not provide Plaintiffs with any privilege

logs until April 11, 2019. *Schutz Decl. ¶ 5.*[2] On April 24, 2019, Plaintiffs and Gordon Feinblatt met and conferred regarding Gordon Feinblatt's privilege logs, and on June 18, 2019, Gordon Feinblatt provided updated privilege logs. *Schutz Decl. ¶ 6, Exs. 3-4.*

On June 21, 2019, Plaintiffs wrote to Gordon Feinblatt and noted several continuing deficiencies with respect to their privilege logs. *Schutz Decl. Ex. 5.* Among other things, Plaintiffs noted that several documents appeared to be subject to the fiduciary exception to the attorney-client privilege, and that this privilege exception applies to all matters relating to Plan administration—including the investments to be included in the Plan. *Id.* On July 12, 2019, Gordon Feinblatt responded to Plaintiffs letter and declined to unredact or produce any documents that are the subject of this Motion. *Schutz Decl., ¶ 9.*

On August 13, 2019, Plaintiffs sent a letter to the Court requesting a pre-motion conference with respect to Gordon Feinblatt's claims of privilege. Gordon Feinblatt and Defendants responded by letters on August 21, 2019. The parties then held a telephone conference with the Court on August 27, 2019. *See ECF No. 138.*

Following the telephone conference with the Court, Plaintiffs requested that Defendants and Gordon Feinblatt meet and confer regarding nine documents listed on Gordon Feinblatt's privilege logs (substantially fewer documents than were the subject of Plaintiffs' pre-motion letter). *Schutz Decl. Ex. 8.* Specifically, Plaintiffs requested to meet and confer regarding: (1) documents withheld where the subject in Gordon Feinblatt's privilege log was either "Investments in Wilmington Trust Mutual Funds" or "Wilmington Risk";[3] (2) redactions to two sets of Mr. Mellin's handwritten notes taken during Committee meetings; and, (3) a redacted list

---

[2] In the meantime, Gordon Feinblatt produced certain documents in response to Plaintiffs' subpoena on February 15, 2019. *Schutz Decl. ¶ 4.*

[3] The "Wilmington Risk" document was sent to the Committee's secretary, Ann Marie Odrobina.

4

of action items for the Plan sent to the Committee's secretary. *Schutz Decl.* ¶ 12. Defendants declined to drop their privilege objections with respect to any of these documents. *Id.* ¶ 13. Further, Defendants declined to provide any additional information regarding the content of the disputed documents or whether the fiduciary exception applied, including whether the disputed documents concerned (1) whether proprietary Wilmington investments should be included in the Plan, (2) whether such investments should be removed, (3) whether such investments were appropriate for the Plan, or (4) how the Plan's investment lineup should be managed going forward. *Id.* Similarly, Defendants refused to state whether the documents discussed specific lawsuits against M&T or involved specific threats of litigation. *Id.* Accordingly, Plaintiffs indicated that they intended to bring the present motion and would ask the Court to review the documents *in camera*.[4]

## IV.   THE DISPUTED DOCUMENTS

The documents which Plaintiffs seek to compel, and which were the subject of the parties' most recent meet and confer efforts, are listed below:[5]

| Document ID | Doc. Type | Date | From | To (and CC) | Subject | Responsiveness | Additional Info. |
|---|---|---|---|---|---|---|---|
| REV0000385 | Email | 10/21/2013 | Mellin, Matthew P. | Partlow III, Ralph | Investments in Wilmington Trust Mutual Funds | Privileged. Legal advice given to persons other than fiduciaries. | Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |

---

[4] Gordon Feinblatt agreed to furnish the documents for *in* camera review with their response brief. The parties met and conferred regarding a briefing schedule, but Defendants indicated they would need to review Plaintiffs' memorandum before committing to a schedule.

[5] The chart reflects the headings and information provided in Gordon Feinblatt's privilege logs, with minor nonsubstantive edits for sizing purposes.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REV0000409 | Email | 1/2/2015 | Mellin, Matthew P. | Yoshida, Brian | Investments in Wilmington Trust Mutual Funds | Privileged. Legal advice given to persons other than fiduciaries. | Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |
| REV0000444 | Email | 2/16/2015 | Mellin, Matthew P. | Yoshida, Brian | Investments in Wilmington Trust Mutual Funds | Privileged. Legal advice given to persons other than fiduciaries. | Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |
| REV0000445 | Memo | 2/16/2015 | Mellin, Matthew P. | Yoshida, Brian | Investments in Wilmington Trust Mutual Funds | Privileged. Legal advice given to persons other than fiduciaries. | Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |
| REV0000744 | Memo | 2/16/2015 | | | Investments in Wilmington Trust Mutual Funds | Privileged. Legal advice given to persons other than fiduciaries. | Advice relates to analysis of potential claims against M&T and affiliated entities. Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| REV0000866 | Email string | 8/12/2014 | Odrobina, Ann Marie | Mellin, Matthew P.; Rizzuto Sr, Joseph; (Yoshida, Brian) | Wilmington Risk | Advice relates to analysis of potential claims against M&T and affiliated entities. | Advice relates to analysis of potential claims against M&T and affiliated entities. Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries. |
| GF0002788 | Email | 2/20/2015 | Mellin, Matthew P. | Ann Marie Odrobina | List of Action Items | Privileged/Non-Responsive | RSP Paragraph 6 reference to legal advice re WT Mutual funds |
| GF0002860 | Hand-written Notes | 8/11/2014 | Mellin, Matthew P. | | Committee Meeting Notes | Privileged/Non-Responsive | Outline of presentation by counsel re legal risks related to RSP |
| GF0002863 | Hand-written Notes | 11/3/2014 | Mellin, Matthew P. | | Committee Meeting Notes | Privileged/Non-Responsive | Counsel's notes regarding legal analysis |

## ARGUMENT

I. **LEGAL STANDARDS REGARDING SUBPOENAS AND THE ATTORNEY-CLIENT PRIVILEGE**

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that, "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."[6] "The scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *E. Point Sys., Inc. v. Maxim*, 2015 WL 1971453, at *2 (D. Conn. Apr. 30, 2015). Rule 26(b)(1) states:

---

[6] Gordon Feinblatt LLC is located in Baltimore, Maryland, but has consented to this Court's jurisdiction for purposes of this motion.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

With respect to the attorney-client privilege, a party seeking to invoke it "must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996). "The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof." *Odfjell ASA v. Celanese AG*, 380 F. Supp. 2d 297, 302 (S.D.N.Y. 2005). Courts "apply the [attorney-client] privilege only where necessary to achieve its purpose" and "construe the privilege narrowly because it renders relevant information undiscoverable." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citations omitted).

## II.  A "FIDUCIARY EXCEPTION" TO PRIVILEGE APPLIES TO DOCUMENTS BEARING ON FIDUCIARY FUNCTIONS, INCLUDING ASSET MANAGEMENT AND CONFLICT AVOIDANCE

The attorney-client privilege is subject to a fiduciary exception, which applies to "all information related to plan administration, including 'any communications with an attorney that are intended to assist in the administration of the plan.'" *Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007). "This exception arises from an ERISA fiduciary's duty to provide full and accurate information to plan beneficiaries regarding the administration of the plan." *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 2015 WL 6437475, at *1 (S.D.N.Y. Oct. 16, 2015). Determining whether a particular communication concerns a fiduciary or non-fiduciary

8

matter requires the Court to engage in a "fact-specific inquiry" that focuses on "both the content and context of the specific communication." *Asuncion*, 493 F. Supp. 2d at 720.

A "core fiduciary function" of fiduciaries is "asset management and avoidance of conflicts of interest . . . ." *Leber*, 2015 WL 6437475, at *5. This includes "decisions regarding investment[s]" in a retirement plan, which are considered quintessential "fiduciary functions" subject to the fiduciary exception. *Hill v. State Street Corp.*, 2013 WL 6909524, *2 (D. Mass. Dec. 30, 2013); *see also Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) (fiduciary responsibility attaches to "transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on") (citation and internal quotation marks omitted); *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) ("[T]he selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach."); *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 493 (M.D.N.C. 2008) (noting that fiduciary functions of plan administration include "discretionary decisions regarding investment or liquidation of plan assets"); *Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404 Plans)*, 57 Fed. Reg. 46906, 46924 n.27 (Oct. 13, 1992) ("[T]he act of . . . designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function.").

For purposes of the fiduciary exception, it is the nature of the communication—not the recipient of the communication—that matters. "[T]he rationale for the fiduciary exception, that the attorney's work was done on behalf of, and with payment from, the fiduciary on behalf of the beneficiaries, has no relation to the question of whether or not the information was ever actually communicated to the fiduciary." *Cavanaugh v. Saul*, 2007 WL 1601743, at *3 (D.D.C. June 4,

2007). Thus, any "argument that the fiduciary exception only applies to advice actually given to the fiduciary is not supported in the case law." *Id.*; *accord Leber*, 2015 WL 6437475, at *5.

III. **THE DOCUMENTS AT ISSUE CONCERN CORE FIDUCIARY FUNCTIONS**

   A. **Decisions Whether to Invest in Wilmington Funds**

Plaintiffs move to compel the production of three emails and two memoranda with the provided subject, "Investments in Wilmington Trust Mutual Funds," and one email with the subject, "Wilmington Risk." All six were drafted between October 21, 2013 and February 16, 2015, well before Defendants became aware of any potential action brought by Plaintiffs.[7] The subjects of these documents reflect discussions of core fiduciary issues related to the Plan—the investments that are available to Plan participants.

In a similar case, defendants in an ERISA action in the Southern District of New York sought to shield from discovery a law firm's memorandum and underlying documents "containing legal advice concerning the structure and management of Citigroup's Benefit Plan Investment Committee." *Leber*, 2015 WL 6437475, at *4. After reviewing the documents in camera, the court found that they related to "core fiduciary functions," including "the investment of retirement plan assets," and ordered their production. *Id.* at *5.

Like Defendants and Gordon Feinblatt here, the Defendants in *Leber* argued "they are entitled to withhold the privileged portions of the documents in question because the legal advice reflected therein was provided to Citigroup [the plan sponsor], as distinct from the named fiduciaries of the 401(k) . . . ." *Id.* The court found that this "argument is unpersuasive." *Id.* The court noted that much of the information in the memorandum "would have been functionally useless, had it not been shared with fiduciaries who had the responsibility to administer Citigroup's benefits plans." *Id.* The court specifically noted that while the memorandum was

---

[7] The present lawsuit was not filed until May 11, **2016**. *See ECF No. 1*.

addressed to Citigroup's general counsel, "copies were apparently sent to several Citigroup attorneys who advised" the committee that managed the plan in question, and to the committee's secretary. *Id.*; *see also Cavanaugh*, 2007 WL 1601743, at *3.

As in *Leber*, the documents that Plaintiffs seek were sent to, or in the files of, the Plan's outside counsel, Mr. Mellin. Moreover, one of the emails was sent to the Plan's secretary, Ms. Odrobina. On the face of Gordon Feinblatt's privilege log, these documents reflect decisions as to which investments should or should not be in the Plan. Indeed, Gordon Feinblatt expressly admitted in its earlier letter:

> In this case, … issues about potential personal liability of a fiduciary arose significantly before litigation was imminent as **decisions were made as to what investment funds should or should not be included in the RSP**."

*Schutz Decl. Ex. 7 at p.5* (emphasis added). Accordingly, the documents are subject to the fiduciary exception and should be produced. *See also Hill*, 2013 WL 6909524, at *5 (ordering production of documents reflecting "discretionary decisions regarding investments").[8]

**B.  Communications with Committee Regarding Plan Administration**

Plaintiffs also seek to compel the production of an unredacted version of the document produced as GF0002788. The document is an email from Mr. Mellin to Ms. Odrobina, the Committee's secretary, that begins as follows:

```
From:     Mellin, Matthew P.
Sent:     Friday, February 20, 2015 3:44 PM
To:       ANN MARIE ODROBINA
Subject:  It's Do List time
```

Ann Marie – here are the pending benefits matters I am involved with:

**Retirement Savings Plan**

[redacted]

---

[8] Like this case, both *Hill* and *Leber* involved plan sponsors that offered their own line of funds.

*Schutz Decl. Ex. 12*. Only one item under the "Retirement Savings Plan" heading is unredacted:

> 7. Retirement Savings Plan Investment Policy Statement amendment for M&T Bank stock investment – my 2/12/15 email to you included a recommended First Amendment to the IPS to reflect the <u>Dudenhoeffer</u> decision. I am ready to explain to the Committee at the meeting.

The rest of the email, except for the signature block, is redacted. It is obvious that a to-do list with the heading "Retirement Savings Plan," sent to the Committee's secretary before any litigation was threatened, concerns fiduciary functions related to the management and administration of the Plan. Indeed, Gordon Feinblatt's own privilege log refers to the document as a "List of Action Items" for the Plan.

Finally, Plaintiffs seek unredacted copies of two sets of Mr. Mellin's handwritten notes taken during Committee meetings. *See Schutz Decl. Exs. 13-14*. The first set of notes relates to a meeting held on August 11, 2014. *Id. Ex. 13*. Two large redactions appear before, and after, the following:

> Valarie G – 401(k) performance
> – if Comm wants to remove SVF, do it now while book to market is above 100
>
> Watch list – add WT Strategic Allocation – quantitative trip

Given that the notes immediately above and below the redactions transcribe a discussion regarding "401(k) performance" and the Plan's "Watch list," it is evident that the redacted material concerns the Plan's investments. Therefore, it should be produced. *See*
*Solis v. Food Employers Labor Relations Ass'n,* 644 F.3d 221, 131 (4th Cir. 2011)

12

(ordering production of "handwritten notes distributed and taken during [] meetings"); *Hill*, 2013 WL 6909524, at *4-6 (ordering production of unredacted meeting minutes).

The second set of meeting notes relates to a November 3, 2014 Committee meeting. *Schutz Decl. Ex. 14*. As with the first set of Mr. Mellin's notes, these notes mostly record statements made by the Committee's members or by its investment advisor, Wilmington Trust Investment Advisors. For example, the following statements about the Plan's investments are recorded directly above a large redaction:

> Jon R - we have good participation + avg balance compared to benchmark
> Q - why was MidWest not added earlier?
> Tom B - we were monitoring MidWest + TCM merger - needed to be sure it worked before recommending

Again, Plaintiffs expect that the redacted portions of these handwritten notes taken at a meeting of the Plan's fiduciaries concern the administration or management of the Plan, including which investments should be included in the Plan. Accordingly, they should be produced in unredacted form. *See, e.g., Solis*, 644 F.3d at 231; *Hill*, 2013 WL 6909524, at *4-6.

### IV. GENERAL LIABILITY CONCERNS DO NOT SHIELD DOCUMENTS OTHERWISE FALLING UNDER THE FIDUCIARY EXCEPTION.

Many of Gordon Feinblatt's privilege entries state that the documents contain advice regarding "potential liability" or "potential claims."[9] "The 'mere prospect of litigation' is not enough to 'render communications between fiduciaries and counsel privileged . . . .'" *Asuncion*,

---

[9] The language of these entries is revealing, as they do not refer to "pending" lawsuits or claims.

13

493 F. Supp. 2d at 722. "What emerges from these cases is an inquiry that centers on whether the purpose of the communications was legal advice regarding the legal liability of plan administrators in ***imminent or pending litigation***, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself." *Black v. Bowes*, 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006) (emphasis added). Thus, communications concerning fiduciaries' potential personal liability will justify withholding documents only when there are threatened or pending adversarial proceedings against the fiduciaries. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 232 (3d Cir. 2007) ("[N]o adversarial proceeding against the trustees was pending, meaning that the trustees had no need to seek personal legal advice."); *Smith v. Jefferson Pilot Financial Ins. Co.*, 245 F.R.D. 45, 48 (D. Mass. 2007) (liability exception to the fiduciary exception is meant for situations where a fiduciary "retains counsel in order to defend herself against plan beneficiaries.").

Plaintiffs do not challenge Gordon Feinblatt's assertion of privilege for documents dated after December 2015, when Gordon Feinblatt and the Committee learned of this potential action after becoming aware of letters sent by Plaintiffs' counsel regarding a potential action. However, Plaintiffs do challenge any claims of privilege before that date based on generalized concerns about potential liability. For example, Gordon Feinblatt has redacted Committee meeting notes from August 2014 that reflect an "Outline of presentation by counsel re legal risks related to RSP [i.e., the Plan]." *GF0002860*. This highly relevant discussion involving the Plan's fiduciary Committee should be provided to Plaintiffs unredacted.

Allowing Gordon Feinblatt and Defendants to shield documents due to general liability concerns would allow the litigation exception to swallow the fiduciary exception whole. Fiduciary decisions about what investments to include in a 401(k) plan are always subject to

14

potential future lawsuits. Fiduciaries could completely shield their decision-making process with respect to investments by simply couching every decision about the merits of an investment in terms of whether including (or excluding) the investment could lead to liability. Indeed, although Defendants and Gordon Feinblatt may complain that some of the cases Plaintiffs rely upon concern denial of benefits, these cases are highly analogous. Decisions regarding both whether to approve or deny benefits to a plan beneficiary, and what investments to include in a retirement plan, are inherently subject to future lawsuits alleging breach of fiduciary duty. As to both types of decisions, fiduciaries might have a legitimate interest in communicating with attorneys to avoid breaching their fiduciary duties. As to both types of decisions, courts have held that the interest of beneficiaries in overseeing their fiduciaries' decision-making outweighs the fiduciaries' interest in shielding such communications from disclosure. So too, here, Plaintiffs' motion to compel the production of documents addressing core fiduciary concerns should be granted.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court order the subject documents to be produced. Alternatively, Plaintiffs request that the documents be reviewed *in camera* to determine whether production is appropriate.

Dated:  September 13, 2019

                                            Respectfully submitted,

                                            By: /s/ Jacob Schutz
                                            **NICHOLS KASTER, PLLP**
                                            Paul J. Lukas, MN Bar No. 022084X*
                                            Kai Richter, MN Bar No. 0296545*
                                            Carl F. Engstrom, MN Bar No. 0396298*
                                            Jacob Schutz, MN Bar No. 0395648*
                                              *admitted in W.D.N.Y.
                                            4600 IDS Center

80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
Email: krichter@nka.com
  cengstrom@nka.com
  jschutz@nka.com

**KESSLER TOPAZ MELTZER**
  **& CHECK, LLP**
Mark K. Gyandoh (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: mgyandoh@ktmc.com

*Interim Co-Lead Counsel*

**TREVETT CRISTO**
Lucinda Lapoff, Esq.
2 State Street, Suite 1000
Rochester, NY 14614
Tel: (585) 454-2181
Fax: (585) 454-4026

16