# EXHIBIT 6

**Jacob Schutz**      4600 IDS Center
Direct: (612) 256-3288      80 South Eighth Street
Fax: (612) 338-4878      Minneapolis, MN 55402
jschutz@nka.com      (877) 448-0492

August 13, 2019

**VIA EMAIL**

The Honorable Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

      Re:    *In re M&T Bank Corporation ERISA Litigation*
               **Court File No. 1:16-cv-00375 (FPG/JJM)**

Dear Judge McCarthy,

    Plaintiffs write pursuant to Your Honor's Individual Rules and Procedures to request a pre-motion conference concerning a discovery dispute that has arisen with respect to a subpoena served by Plaintiffs on Gordon Feinblatt LLC, which served as outside counsel to M&T Bank and the M&T Bank Corporation Retirement Savings Plan ("Plan") during the relevant period. Gordon Feinblatt is located in Baltimore, Maryland, but has consented to submitting the parties' dispute to Your Honor for resolution.

## BACKGROUND

    As Your Honor will recall, Plaintiffs allege that the fiduciaries of the Plan breached their fiduciary duties and engaged in prohibited self-dealing in violation of the Employee Retirement Income Security Act ("ERISA"). Specifically, Plaintiffs allege that the Plan's fiduciaries imprudently selected and retained investment options for the Plan that were affiliated with M&T Bank, even though those proprietary investments were excessively expensive, performed poorly in the marketplace, and were not utilized by fiduciaries of other plans.

    Gordon Feinblatt has served as the Plan's outside ERISA counsel since 2011, and attorney Matthew Mellin of Gordon Feinblatt regularly attended meetings of the M&T Bank Employee Benefit Plans Committee ("Committee"). In light of Gordon Feinblatt's role with respect to the Plan, Plaintiffs served a subpoena for documents on Gordon Feinblatt on December 4, 2018. *Ex. 1*. On December 17, 2018, Gordon Feinblatt lodged certain objections, including "to producing any documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege." *Ex. 2*. However, Gordon Feinblatt did not produce any privilege logs until April 11, 2019.[1] After receiving these privilege logs, Plaintiffs met and conferred with Gordon Feinblatt on April 24, 2019, and Gordon Feinblatt subsequently produced updated logs on June 18, 2019. *See Ex. 3.* However, several deficiencies remained.

---

[1] In the meantime, Gordon Feinblatt produced certain documents in response to Plaintiffs' subpoena on February 15, 2019.

In a follow-up letter to Gordon Feinblatt on June 21, 2019, Plaintiffs noted these deficiencies, including the fact that (1) Gordon Feinblatt continued to assert privilege with respect to communications (including communications with the Committee Secretary, Ann Marie Odrobina) that were subject to the fiduciary exception to the attorney-client privilege; (2) Gordon Feinblatt improperly invoked a "litigation exception" to the fiduciary exception for documents that were not tied to any specific litigation (*i.e.*, documents that merely expressed generalized concerns about liability); and (3) Gordon Feinblatt had redacted some documents on relevance grounds rather than privilege grounds. In addition, Plaintiffs sought to clarify the scope of Gordon Feinblatt's representation (*i.e.,* whether it served a dual role as counsel to both the Plan and M&T Bank).

Gordon Feinblatt responded to Plaintiffs letter on July 12, 2019. In its response, Gordon Feinblatt declined to acknowledge any of the itemized deficiencies, and maintained that: (1) Gordon Feinblatt's communications with Ms. Odrobina were privileged; (2) communications regarding generalized "liability concerns" were privileged; and (3) the redactions for non-responsiveness were reasonable. In the same letter, Gordon Feinblatt also indicated that "GF represented M & T Bank in addition to the RSP [Retirement Savings Plan]."

Plaintiffs and Gordon Feinblatt then met and conferred again on July 16, 2019.[2] However, they were unable to resolve their differences. Following this conference, Gordon Feinblatt rejected Plaintiffs' compromise proposal, and also declined to remove redactions for non-responsiveness unless Plaintiffs surrendered on the privilege issues. Further, in response to a direct question from Plaintiffs' counsel at the meet and confer, Gordon Feinblatt confirmed that "[t]here are not any conflict waivers" between M&T Bank and the Plan.[3] This is startling, to say the least, given the adversity between M&T Bank and the Plan (as evidenced by this case).

## DISPUTED ISSUES

**I.      Applicable Standards.**

With respect to the attorney-client privilege, a party seeking to invoke it "must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996). The party asserting the privilege has the burden of establishing its existence. *Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 720 (S.D.N.Y. 2007); *see also Am. Home Assur. Co. v. KBE Bldg. Corp.*, 2015 WL 348292, at *13 (D. Md. Jan. 13, 2015) (same). The party asserting such protection must carry this burden "with particularity for each document, or category of documents, for which privilege/protection is claimed." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D.Md. 2008).

---

[2] M&T Bank's counsel of record (Jonathan Ossip of Sullivan & Cromwell LLP) also attended this meet and confer, even though he did not attend the prior meet and confer.

[3] Consistent with the Western District of New York Civility Principles and Guidelines, Plaintiffs have not included as exhibits to this letter their correspondence with counsel for Gordon Feinblatt. *See* Lawyers' Duties to Other Counsel, No. 31. Plaintiffs are happy to provide copies of all correspondence referenced or quoted in this letter at the Court's request.

Fiduciary relationships create a general exception to the attorney-client privilege: "An ERISA fiduciary is obligated to provide a plan beneficiary with all information related to plan administration, including 'any communications with an attorney that are intended to assist in the administration of the plan.'" *Asuncion*, 493 F. Supp. 2d at 720. This fiduciary exception is subject to a narrow litigation exception, whereby an "employer or administrator is permitted to seek legal advice for its own protection, and the attorney-client privilege applies to advice rendered for the benefit of an entity seeking to protect itself from potential liability in connection with non-fiduciary matters." *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 2015 WL 6437475, at *2 (S.D.N.Y. Oct. 16, 2015). However, "[t]he 'mere prospect of litigation' is not enough to 'render communications between fiduciaries and counsel privileged ....'" *Asuncion*, 493 F. Supp. 2d at 722.

## II. COMMUNICATIONS BETWEEN GORDON FEINBLATT AND M&T BANK ARE NOT PRIVILEGED IN THE ABSENCE OF A CONFLICT WAIVER FROM THE PLAN

As an initial matter, Gordon Feinblatt has waived its right to assert privilege against the Plan (on whose behalf Plaintiffs derivatively bring their claims in this case) by simultaneously representing M&T Bank – an adverse party – without obtaining a conflict waiver. "An attorney who represents two parties with respect to a single matter may not assert the privilege in a later dispute between the clients." *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 2006 WL 2883255, at *3 (S.D.N.Y. Oct. 6, 2006) (quoting *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F. Supp. 1357, 1364 (S.D.N.Y. 1983)). The comments to Maryland Attorneys' Rules of Professional Conduct[4] similarly state:

> A particularly important factor in determining the appropriateness of common representation is the effect on client-attorney confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

Maryland Rule of Professional Conduct 19-301.7, cmt. 30; *see also* Restatement (Third) of the Law Governing Lawyers § 75 (2000) ("[I]n a subsequent proceeding in which former co-clients are adverse, one of them may not invoke the attorney-client privilege against the other with respect to communications involving either of them during the co-client relationship.")

In one case, a lawyer represented both an insurance company and a medical practice covered by the insurance company. *MAG Mut. Ins. Co. v. Brown*, 2015 WL 13648556, at *2 (D.S.C. July 24, 2015). The insurance company then filed a lawsuit arguing it had no duty to defend certain cases brought against the medical practice. *Id.* at *1. During his deposition, the lawyer who had represented both the insurance company and the medical practice declined to answer certain questions as allegedly privileged between himself and either the insurance company or the medical practice. *Id.* at *10. The court ruled that because the "lawsuit is between [attorney] Snyder's two clients, the attorney-client privilege does not protect any communication

---

[4] As noted above, Gordon Feinblatt is located in Baltimore, Maryland. This comment is also included for the analogous New York Rule of Professional Conduct.

between those parties, and, therefore, the court finds that the assertions of Brown's and MAG Mutual's attorney-client privileges by Snyder are without merit." *Id.* at 12.

Gordon Feinblatt has confirmed that no conflict waivers exist for its representation of M&T Bank and the Plan. Thus, Gordon Feinblatt's dual representation of both the Plan and M&T Bank on matters relating to the Plan and Plan investments waives any attorney-client privilege those parties could otherwise claim as to each other. This is especially so given that M&T Bank's interests were not aligned with the Plan in the course of Gordon Feinblatt's representation.

The communications with employees of M&T Bank that Gordon Feinblatt seeks to shield from Plaintiffs (as participants of the Plan) are highly relevant to this action on behalf of the Plan. For example, the privilege log states that an October 21, 2013 email from Matthew Mellin of Gordon Feinblatt to Ralph Partlow III in M&T Bank's general counsel's office, relates to "Investments in Wilmington Trust Mutual Funds"—the very funds at the heart of this case. *Ex. 3* at REV0000385. Likewise, emails dated January 2, 2015 and February 16, 2015 from Matthew Mellin to Brian Yoshida, Deputy General Counsel at M&T Bank, also list on the subject line: "Investments in Wilmington Trust Mutual Funds." *Id.* at REV0000409 and REV0000444. The same subject is listed for a Memorandum from Matthew Mellin to Brian Yoshida, also dated February 16, 2015. *Id.* at REV0000445. In addition, two emails from August 11 and 12, 2014 between Ann Marie Odrobina (the Committee's secretary) and Matthew Mellin, with Mr. Yoshida copied, list as the subject, "Wilmington Risk."[5] *Id.* at REV0000866.

A number of these privilege log entries state: "Also, advice relates to potential liability and is within the exception to the lack of privilege if advice is deemed given to fiduciaries." This only serves to manifest the conflict, as Gordon Feinblatt was advising M&T Bank regarding "potential liability" in the event of a lawsuit brought on behalf of the Plan by Plan participants. Regardless, as discussed below, generalized concerns about liability cannot overcome the fiduciary exception where no action was pending or even threatened at the time. Accordingly, Gordon Feinblatt should produce **_all_** responsive communications with M&T Bank that it has withheld on privilege grounds.

### III. Gordon Feinblatt's Communications Regarding the Plan and Its Investments are Discoverable Under the Fiduciary Exception.

Even setting aside the conflicts of interest that affected Gordon Feinblatt's representation of the Plan, Plaintiffs would still be entitled to most of the documents withheld by Gordon Feinblatt given the fiduciary exception within the context of ERISA-governed retirement plans. As noted above, "An ERISA fiduciary is obligated to provide a plan beneficiary with all information related to plan administration, including 'any communications with an attorney that are intended to assist in the administration of the plan.'" *Asuncion*, 493 F. Supp. 2d at 720; *see also Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 228 (4th Cir. 2011) ("[T]he fiduciary exception to attorney-client privilege extends to communications between an ERISA

---

[5] The reference to "Wilmington" is presumably to the Wilmington funds managed by Wilmington Trust Investment Advisors ("WTIA"), which were incorporated into the Plan after M&T Bank's acquisition of WTIA.

trustee and a plan attorney regarding plan administration."). It is not necessary to show "good cause" to obtain documents falling within the fiduciary exception in ERISA cases. *Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 85 (N.D.N.Y. 2003).

The only documents that may be categorically privileged notwithstanding the fiduciary exception are "non-fiduciary communications and a trustee's personal legal advice . . . ." *Solis*, 644 F.3d at 229. However, "[t]he 'mere prospect of litigation' is not enough to 'render communications between fiduciaries and counsel privileged ....'" *Asuncion*, 493 F. Supp. 2d at 722; *see also Black v. Bowes*, 2006 WL 3771097, at *3 (S.D.N.Y. Dec. 21, 2006) ("What emerges from these cases is an inquiry that centers on whether the purpose of the communications was legal advice regarding the legal liability of plan administrators in imminent or pending litigation, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself."). Thus, communications concerning fiduciaries' potential personal liability will justify withholding documents only when there are threatened or pending adversarial proceedings against the fiduciaries. *See Wachtel v. Health Net, Inc.*, 482 F.3d 225, 232 (3d Cir. 2007) ("[N]o adversarial proceeding against the trustees was pending, meaning that the trustees had no need to seek personal legal advice.").

Plaintiffs do not challenge Gordon Feinblatt's assertion of privilege for documents dated after January 12, 2016, when the Committee became aware of this potential action after receiving a letter from one of the named Plaintiffs requesting certain documents. However, Plaintiffs do challenge any claims of privilege before that date based on generalized concerns about potential liability. As noted above, the central issue is whether "the purpose of the communications was legal advice regarding the legal liability of plan administrators in imminent or pending litigation, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself." *Black,* 2006 WL 3771097, at *3. Thus, no document should be redacted or withheld because it discusses liability concerns before the Committee became aware of this potential lawsuit in or about January 2016.[6] For example, Gordon Feinblatt has redacted Committee meeting notes from August 2014 that reflect an "Outline of presentation by counsel re legal risks related to RSP [i.e., the Plan]." *Ex. 3* at GF0002860. This highly relevant discussion to the Plan's fiduciary committee should be provided to Plaintiffs unredacted.

Although Gordon Feinblatt contends that some of the at-issue communications were not with fiduciaries of the Plan, the "argument that the fiduciary exception only applies to advice actually given to the fiduciary is not supported in the case law." *Cavanaugh v. Saul*, 2007 WL 1601743, at *3 (D.D.C. June 4, 2007). "[T]he rationale for the fiduciary exception, that the attorney's work was done on behalf of, and with payment from, the fiduciary on behalf of the beneficiaries, has no relation to the question of whether or not the information was ever actually communicated to the fiduciary." *Id.* Thus, Gordon Feinblatt cannot justify withholding documents otherwise coming within the fiduciary exception merely because the documents reflect "legal advice given to persons other than fiduciaries." Indeed, any such argument by Gordon Feinblatt is particularly absurd with respect to communications with Ms. Odrobina, who

---

[6] All of the following documents address generalized liability concerns and predate January 2016, when the Committee became aware of this possible action: GF0002788, GF0002860, GF0002863, and the documents with the internal document IDs REV0000385, REV0000409, REV0000444, REV0000445, REV0000733, REV0000735, REV0000738, REV0000739, REV0000744, and REV0000866.

5

served as the Committee's secretary during the relevant period. As noted above, these communications include (among others) communications regarding "Wilmington Risk." *Ex. 3* at REV0000866. Gordon Feinblatt should be ordered to produce all documents it withheld that concern the Plan or its investments, including Wilmington mutual funds, regardless of whether they were directly sent to the Plan's fiduciaries, including but not limited to its communications with Ms. Odrobina.[7]

## IV. Gordon Feinblatt Cannot Unilaterally Redact Portions of Documents it Unilaterally Considers Irrelevant.

Gordon Feinblatt also impermissibly redacted a number of documents as "non-responsive." As an initial matter, Gordon Feinblatt took a more aggressive approach on this issue than Defendants. For example, Gordon Feinblatt generally redacted any discussion of the M&T Bank pension (defined benefit) plan, whereas Defendants produced Committee minutes with discussions of the pension plan unredacted. *Compare ECF No. 95-19* (unredacted Committee minutes produced by Defendants with first topic concerning "Pension Plan – Investment Review" and second topic concerning "Retirement Savings Plan – Review of Investment Performance") *with Ex. 4* (handwritten notes from same Committee meeting starting with a large redaction and then, "RSP perf review").

Courts have regularly rejected redactions for non-responsiveness. *See, e.g.*, *David v. Alphin*, 2010 WL 1404722, at *8 (W.D.N.C. Mar. 30, 2010) ("The Federal Rules sanction only very limited unilateral redaction, *see* Fed.R.Civ.P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.") (quoting *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, n.1 (E.D.Cal. Feb. 3, 2010)); *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015) (citation omitted) ("[T]o the extent [a party] has made redactions from documents it produced on the grounds that the redacted information was not, in its view, relevant, those documents will be produced without redactions except to the extent that those documents contain privileged material."); *Krueger v. Ameriprise Fin., Inc.*, 2013 WL 12139425, at *32 (D. Minn. Aug. 15, 2013) (ordering defendant to produce "the unredacted meeting minutes and materials considered by the committees responsible for administering [defendant's defined benefit plan]").

Moreover, evidence reflecting how the Committee managed another retirement plan is directly relevant to this ERISA action alleging breach of fiduciary duty, which turns on whether the Plan's fiduciaries exercised "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see also Krueger*, 2013 WL 12139425, at *32 (ordering the production of

---

[7] Documents with the following "Internal Document IDs" all discuss "Investments in Wilmington Trust Mutual Funds," "Wilmington Risk," "Mutual Fund Fee Disclosure," or the Plan's "Investment Policy Statement," according to Gordon Feinblatt's privilege log: REV0000385, REV0000409, REV0000444, REV0000445, REV0000454, REV0000676, REV0000677, REV0000744, REV0000866. The last entry is an email string with emails to and from Ms. Odrobina.

6

unredacted minutes related to pension plan in lawsuit concerning 401(k) plan). As such, Plaintiffs' respectfully request that Gordon Feinblatt be ordered to remove any redactions for which the provided basis is "non-responsive."[8]

## CONCLUSION

For the above reasons, this Court should reject Gordon Feinblatt's assertions of privilege as outlined herein.

Respectfully submitted,

**NICHOLS KASTER, PLLP**

Jacob Schutz

Encl.

Cc: Richard C. Pepperman, II (via email)
Matthew A. Schwartz (via email)
Tyler Dato (via email)
Maya Krugman (via email)
Mark K. Gyandoh (via email)
Lucinda Lapoff (via email)
Jerrold Thrope, Gordon Feinblatt LLC (via email)

---

[8] Gordon Feinblatt asserted that its "non-responsive" redactions fell into two groups: (1) communications from counsel listing action items for plans other than the 401(k) Plan at issue (consisting of documents bates labeled GF 2755-56, GF 2764-67, GF 2768-71, GF 2772-2774, GF 2778-80, GF 2788-90, GF 2791-94, GF 2799-2802, GF 2806-09, and GF 2817-2820); and, (2) counsel's handwritten notes of Committee meetings "which include issues relating to plans other than the RSP" (consisting of documents bates labeled GF 2860-62, GF 2863-65, GF 2878-81, GF 2882-84, GF 2885-88, GF2898-2901, GF 2902-2905, GF 2908-09, and GF 2910-12). Gordon Feinblatt declined to produce any of the foregoing documents.