# EXHIBIT 7

# GORDON·FEINBLATT LLC

## ATTORNEYS AT LAW

**JERROLD A. THROPE**
410.576.4295
Fax 410.576.4269
jthrope@gfrlaw.com

233 EAST REDWOOD STREET
BALTIMORE, MARYLAND 21202-3332
410.576.4000
www.gfrlaw.com

August 21, 2019

**VIA E-MAIL (mccarthy@nywd.uscourts.gov)**
The Honorable Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

<div style="text-align:center">

Re:  *In re M&T Bank Corporation ERISA Litigation*
Case No.: 1:16-cv-00375 (FPG/JJM)

</div>

Dear Judge McCarthy:

This letter is written on behalf of Gordon Feinblatt LLC ("GF"), a Baltimore, Maryland based law firm, in response to the August 13, 2019 letter submitted by the Nichols Kaster firm concerning documents withheld in whole or part by GF in responding to a subpoena (the "Letter").[1]

GF is counsel to M&T Bank concerning its ERISA plans. GF was engaged by the M&T Bank General Counsel's Office to provide legal advice to M&T Bank concerning the employee benefit plans sponsored by M&T Bank, including the M&T Bank Corporation Retirement Savings Plan (the "RSP") – the only plan involved in this litigation – M&T Bank's pension plan, and M&T Bank's welfare benefit plans (collectively the "M&T Benefit Plans"). The Employee Benefit Plans Committee (the "Committee") acts as a fiduciary for each of the M&T Benefit Plans.

GF provided advice to employees of M&T Bank, the sponsor of the M&T Benefit Plans. Matthew P. Mellin is GF's ERISA attorney who was primarily responsible for providing the legal advice to M&T Bank. GF rarely gave advice to the Committee members. Mr. Mellin

---

[1]     Jerrold A. Thrope, a member of GF and counsel for GF on this matter, is filing concurrently herewith a motion for admission *pro hac vice* and a motion for leave to appear without local counsel. The Plaintiffs' counsel has agreed not to oppose the motion.

7191387.4 38730/131669 08/21/2019



attends quarterly Committee meetings, and may be asked questions at those meetings. He otherwise has no direct contact with Committee members. GF's advice was provided to employees in M&T Bank's Human Resources Department (Ann Marie Odrobina and Joseph Rizzuto, Sr.) and M&T's legal department. Contrary to Plaintiffs' repeated assertions, Ms. Odrobina was not a member of the Committee and was not a fiduciary (but she did attend Committee meetings and was the secretary for those meetings).

M&T Bank is the sponsor of the M&T Benefit Plans. M&T Bank indemnifies the members of the Committee, and therefore has the same interest as the members of the Committee in avoiding liability.

In this case, Plaintiffs took the unusual step of issuing a subpoena to GF as M&T Bank's outside counsel for matters regarding the M&T Benefit Plans. Plaintiffs could (and likely did) seek to obtain directly from M&T, as the defendant in the litigation, documents provided to the RSP Committee. Hence, the additional documents sought by Plaintiffs in their subpoena to GF go to the heart of the attorney's representation, the law firm's communications with M&T Bank and the law firm's file.

GF produced numerous documents and generated two privilege logs -- one which identifies documents withheld from production in their entirety as privileged (which have a "REV" prefix) and the other which identifies documents produced with privileged material redacted (which have a "GF" prefix).

The documents identified in the Letter fall into one of two categories on the privilege logs: (1) communications between GF and M&T Bank employees (Odrobina, Rizzuto and/or Hoestermann) or its in-house counsel; or (2) Mr. Mellin's notes of Committee meetings and Lists of Action Items.

Plaintiffs argue that (1) the documents are discoverable under the "fiduciary exception;" (2) the attorney-client privilege cannot be asserted because GF represented M&T Bank without a conflict waiver; and (3) information regarding plans other than the RSP should not be redacted from documents that also reference the RSP. For the reasons below, this Court should uphold GF's assertions of attorney-client privilege and redactions of material addressing plans other than the RSP.



I.   **GF's Withheld And Redacted Documents Are Attorney-Client Privileged And/Or Fall Within The Liability Limitation To The Fiduciary Exception, Should It Be Deemed Applicable.**

Plaintiffs argue they are entitled to the documents withheld or redacted as privileged by GF under the fiduciary exception to the attorney-client privilege. Letter at 4. Plaintiffs challenge GF's assertion of privilege for documents dated on or before January 12, 2016 (the date by which M&T had become aware of a request for plan documents by a participant) because "generalized concerns about potential liability" fail to satisfy the liability exception. *Id.* at 5.

A.   The Documents At Issue Are Not Communications With A Fiduciary And Are Attorney Client Privileged

GF's communications with employees in M&T Bank's Human Resource Department and Legal Department are not communications with fiduciaries. The communications are attorney-client privileged. The Plaintiffs have not contended otherwise. The fiduciary exception does not come into play because the documents do not reflect communications with fiduciaries. Accordingly, GF properly withheld the documents from production. Likewise, Mr. Mellin's Committee Notes and Lists of Action Items are not communications with fiduciaries. The Plaintiffs reliance on the fiduciary exception is misplaced.

B.   Even if the Documents Withheld Are Deemed Communications With A Fiduciary, They Come Within The Liability Limitation To The Fiduciary Exception

As an alternative ground, GF has asserted that even if, *arguendo,* the documents are deemed communications with fiduciaries, the liability limitation to the fiduciary exception applies.

GF does not dispute the existence of a fiduciary exception to the attorney-client privilege when a communication with a fiduciary relates to an administrative (as opposed to a settlor) function. The issue in this matter (assuming the documents are deemed communications with a fiduciary) is whether the documents withheld as privileged fall within a limitation to the fiduciary exception because the subject of the communication is the liability of the fiduciary. The burden of showing that the withheld documents come within the fiduciary exception is on Plaintiffs. *Leber v. Citigroup 401(K) Plan Inv. Comm.*, No. 07-CV-09329 (SHS)(DF), 2015 WL 6437475, at *6 (S.D.N.Y. Oct. 16, 2015).

Plaintiffs recognize in their letter that the fiduciary exception to the attorney-client privilege is not absolute and that one of those exceptions relates to advice concerning the fiduciaries' liability. Letter at 5 (citing *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 229 (4th Cir. 2011)). Contrary to the implication in Plaintiffs' letter, this limitation to the fiduciary exception is not a "litigation exception" that can only spring into being after litigation is overtly threatened by the plaintiff.



Instead, the "liability limitation" or "liability exception" applies, and a fiduciary's attorney-client privilege remains intact, "where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries." *U.S. v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999).[2] Such a determination relies upon the individual context and content of the legal advice on a document by document basis. *Id.* at 1065–66.

For example, legal advice regarding litigation to which the fiduciaries are not parties is privileged under the liability exception where that advice is used to determine the extent of the fiduciaries' "own potential liability given the threat of litigation against [them]." *Romero v. Allstate Ins. Co.*, 2016 WL 6568078, at *2 (E.D. Pa. Nov. 4, 2016) (citation omitted). Moreover, "[c]ommunications relating to advice concerning potential liability that may arise . . . are privileged." *Id.* (citations omitted). "[H]ard cases should be resolved in favor of the privilege, not in favor of disclosure." *Mett*, 178 F.3d at 1065.

There are two primary kinds of ERISA causes of action: (1) claims against a plan for benefits due under the terms of the plan (*e.g.*, the health plan failed to pay an employee's medical bill) and (2) claims against a fiduciary for fiduciary breach (*e.g.*, the fiduciaries made bad investments with plan assets). Most of the law in this area arises in the claims for benefits litigation. The fiduciary who makes the benefit claim decision gets legal advice regarding how to decide the claim. Plaintiffs want to see that legal advice. The legal advice did not involve the fiduciary's own personal liability, because the claim was against the plan, not the fiduciary. It is true, as Plaintiffs assert, that many cases, particularly those where the plan participant has sought a benefit from the ERISA plan, refer to actual or imminent litigation as the trigger for application of the liability limitation.[3] If the benefit is denied, and the beneficiary threatens or brings legal action to hold the fiduciary liable for breaching its duties, the liability limitation to the fiduciary exception generally kicks in, and post denial attorney-fiduciary communications are privileged vis-a-vis the beneficiary. In the benefit context, the litigation exception generally does not arise until the final benefit determination has been made by the fiduciary, only after which the

---

[2]     The *Mett* decision sets forth four policy reasons against an expansive interpretation of the fiduciary exception: (1) an expansive definition threatens to swallow the attorney-client privilege for ERISA fiduciaries; (2) an expansive interpretation "unmoors the fiduciary exception from its justifying rationales;" (3) "most importantly, where attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure;" and (4) as a matter of policy, fiduciaries would be discouraged from seeking legal advice which ultimately hurts beneficiaries. 178 F.3d at 1065.

[3]     In fact, many of the cases cited by Plaintiffs in support of their argument that the liability exception does not apply to GF's documents are benefits denial cases. *See Wachtel*, 482 F.3d at 227; *Asuncion v. Metro. Life Ins. Co.*, 493 F. Supp. 2d 716, 718–19 (S.D.N.Y. 2007); *Black v. Bowes*, No. 05 Civ. 108(GEL), 2006 WL 3771097, at *1 (S.D.N.Y. Dec. 21, 2006).



participant may seek relief in court. A bright line makes sense in those cases. *See, e.g., Gill v. Bausch & Lomb Supplemental Income Plan I*, 284 F.R.D. 84, 88 (W.D.N.Y. 2012).

By contrast, in the fiduciary breach litigation, the claim is not against the plan, but against the fiduciary personally. The inquiry as to whether the liability limitation to the fiduciary exception has been triggered in a true fiduciary breach claim (*i.e.*, a claim outside the claim for benefits context) is more nuanced. There is no participant claim or exhaustion requirement. A court addressing a discovery dispute should review the context and content of each communication in determining whether the liability exception applies. *See Mett*, 178 F.3d at 1065–66. In this case, the potential liability arising out of the selection of investment funds for the RSP did not depend on the beneficiary submitting a claim for benefits, losing, and then seeking to hold the fiduciaries liable. Rather, issues about potential personal liability of a fiduciary arose significantly before litigation was imminent as decisions were made as to what investment funds should or should not be included in the RSP. Discussions and advice regarding liability concerns began at the latest by August 2014.[4]

In looking at the context and content of each document to determine whether the liability exception applies, it is evident that the fiduciary Committee members were concerned about their personal liability. *See Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 86 (N.D.N.Y. 2003) (stating that "[a] more reliable yardstick, when considering th[e fiduciary] exception to the attorney-client privilege, would be to look at the purpose from which the legal advice is sought" and where the purpose falls outside of the fiduciary obligations, the attorney-client privilege remains intact).

M&T's assertion of the attorney-client privilege is well founded either because the documents do not reflect communications with fiduciaries, or because the liability limitation to the fiduciary exception applies if the documents are deemed communications with fiduciaries.

---

[4] If, *arguendo*, as Plaintiffs posit, the liability limitation cannot apply absent "imminent litigation," Plaintiffs agree the liability limitation applies as of January 12, 2016, Letter at 4. However, the documents show that M&T Bank and Mr. Mellin were aware by December 11, 2015 at the latest of letters sent by Nichols Kaster to M&T Bank employees as well as knowing about litigation Nichols Kaster had filed against other plan fiduciaries raising allegations involving proprietary mutual funds offered as investment options. M&T Bank was aware on or before that date that it was a direct target of a Nicholas Kaster lawsuit. For that reason, documents dated on or after December 11, 2015 at the latest should remain privileged under the liability limitation even if, contrary to GF's contention, "imminent litigation" is required before the liability limitation could apply.





## II. Communications Between GF And M&T Bank Are Privileged.

Plaintiffs contend that this Court should compel GF to produce all responsive communications between GF and M&T Bank because GF waived its right to assert privilege against the RSP by also representing M&T Bank without obtaining a conflict waiver. Letter at 3–4. Plaintiffs' asserted conflict, however, does not in fact exist. GF represented and communicated with its client M&T Bank, the plan sponsor. M&T Bank and the RSP fiduciaries had the same interest – to offer suitable investments to participants and avoid liability. Further, M&T Bank's interest was totally aligned with that of the Committee members given its indemnity obligation.

Plaintiffs point out that some of the redacted communications were to Ms. Odrobina. Ms. Odrobina was both the secretary of the Committee meetings and an employee in M&T Bank's human resources department. Ms. Odrobina was not a fiduciary and her interest in her roles were aligned in the same way as M&T Bank's in-house counsel.

Finally, Plaintiffs do not rely on any ERISA authority. They rely solely on *MAG Mutual Insurance Co. v. Brown*, No. 6:14-cv-353, 2015 WL 13648556 (D.S.C. July 24, 2015), for their assertion there was a conflict. The case is inapposite. The Plaintiffs have not cited to any authority for the proposition that advice and assessment of risk from an outside lawyer to an in-house lawyer for the plan sponsor is not privileged.

Accordingly, GF's communications with and representation of M&T Bank on matters relating to the RSP are privileged, and do not waive M&T Bank's attorney-client privilege. *See In re Long Island Lighting Co.*, 129 F.3d 268, 272–73 (2d Cir. 1997) (holding that there is no joint representation precluding a party from asserting the attorney-client privilege where the same attorney represents an employer in both fiduciary and non-fiduciary capacities under ERISA).

## III. GF May Redact Irrelevant Portions Of Documents Addressing Plans Other Than The RSP.

Plaintiffs assert that GF impermissibly redacted documents as "non-responsive" where the content of the documents did not relate to the RSP. Letter at 6. The documents at issue are Mr. Mellin's notes from Committee meetings and his Lists of Action Items.

While some courts have rejected redactions for non-responsiveness (as identified by Plaintiffs), other courts have found redaction appropriate where the information redacted was not relevant to the issues in the case. *See Abbott v. Lockhead Martin Corp.*, No. 06-cv-0701 MJR, 2009 WL 511866, at *2–3 (S.D. Ill. Feb. 27, 2009) (holding that the redaction of information regarding benefit plans was acceptable because that information was not relevant to the contribution plans at issue in the case and was not reasonably calculated to lead to the discovery of admissible evidence); *Bell v. Pension Comm. of ATH Holding Co.*, No. 1:15-cv-02062-TWP-MPB, 2018 WL 7350951, at *5 (S.D. Ind. Aug. 16, 2018) (determining that information

regarding other plans was not relevant to evaluate the alleged fiduciary obligations of the sole plan at issue in the case because the case turned on the behavior regarding the challenged plan and not any other plan); *Schiller v. City of New York*, 2006 WL 3592547, at *7 (S.D.N.Y. Dec. 7, 2006) (upholding redaction of portions of meeting minutes not relevant to issues in case).

Here, many of Mr. Mellin's documents addressed both the RSP at issue in the litigation and other M&T Benefit Plans. The redactions were different for those portions of the documents addressing the RSP and those portions of the documents addressing M&T Benefit Plans other than the RSP. GF redacted only the attorney-client privileged portions of the documents addressing the RSP. GF redacted in their entirety those portions of the documents addressing plans other than the RSP. Accordingly, GF did not make piecemeal redactions to documents arguably relevant to the litigation.

Plaintiffs alternatively argue that those portions of the documents relating to M&T Benefit Plans other than the RSP might be relevant because they might conceivably help demonstrate a breach of fiduciary duty by the RSP's fiduciaries. Letter at 6. The conduct of fiduciaries regarding another plan, however, would not be relevant as the management of other plans is not reflective on the fiduciaries' management of the RSP. In addition, in substantial part, the redacted documents are meeting notes and "to do" lists of the attorney. As those other plans are not involved in the litigation, the redactions are proper because they are not within the scope of discovery. Indeed, to the extent those documents contain attorney-client privileged material, Plaintiffs could not obtain them because there is no potentially applicable fiduciary exception with respect to the pension plan or the other M&T Benefit Plans. Plaintiffs should not be permitted to reach an attorney's material relating to other plans because the attorney happened to keep his advice and notes relating to more than the one plan involved in the litigation within the same document. Therefore, GF properly redacted information from the notes of Committee Meetings and Lists of Action Items (which were shared only with M&T Bank employees) that addressed other plans, such as the pension plan.

If and to the extent that this Court disagrees that GF may redact on the basis of irrelevance, lack of responsiveness, and/or burdensomeness and must instead produce the redacted material, GF requests the opportunity to review each document and redact any attorney-client privileged material. *See Sexual Minorities of Uganda v. Lively*, No. 3:12-30051-MAP, 2015 WL 4750931, at *2, 4 (D. Mass. Aug. 10, 2015) (holding that while Plaintiff could not redact information on the grounds of lack of relevance, it was entitled to redact material that was protected by attorney-client privilege); *Leber*, 2015 WL 6437475, at *6 (directing the defendants to re-review the redacted memorandum).

**CONCLUSION**

For the foregoing reasons, GF respectfully requests that its assertion of the attorney-client privilege and redaction of information relating to other plans be upheld.

Respectfully submitted,

*Jerrold A. Thrope / JEL*

Jerrold A. Thrope

JAT:cfh

cc: Jacob Schutz, Esq. (via e-mail)
Richard C. Pepperman, II, Esq. (via e-mail)
Matthew A. Schwartz, Esq. (via e-mail)
Tyler Dato, Esq. (via e-mail)
Maya Krugman, Esq. (via e-mail)
Mark K. Gyandoh, Esq. (via e-mail)
Lucinda Lapoff, Esq. (via e-mail)