## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

*In re M&T Bank Corporation ERISA Litigation*

Civil Action No.: 1:16-cv-375-FPG-JJM

**Consolidated Action**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................3

   I.    PROCEDURAL HISTORY ..................................................................................3

        A.    Pleadings and Motion Practice................................................................3

        B.    Discovery ................................................................................................4

        C.    Mediation ................................................................................................4

  II.    SETTLEMENT TERMS AND PRELIMINARY APPROVAL......................................5

 III.    WORK OF CLASS COUNSEL ............................................................................6

        A.    Work Conducted to Date ........................................................................6

        B.    Remaining Work to Be Performed ........................................................7

 IV.    WORK OF CLASS REPRESENTATIVES ................................................................8

  V.    WORK OF THE ADMINISTRATOR, ESCROW AGENT, AND INDEPENDENT FIDUCIARY ..............8

 VI.    ATTORNEYS' FEES EXPENSES, AND SERVICE AWARDS SOUGHT ...........................9

ARGUMENT ................................................................................................................10

   I.    STANDARD OF REVIEW ................................................................................10

  II.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES ...........11

        A.    The Requested Fee Is Reasonable in Relation to the Settlement........................12

        B.    The Magnitude and Complexity of the Litigation Support the Requested Fee ..13

        C.    Class Counsel Assumed Significant Risks ...........................................14

        D.    Class Counsel Provided High-Quality Representation .......................16

        E.    The Fee Is Reasonable in Light of the Time and Labor Expended ...................17

        F.    Public Policy Supports the Requested Fee.........................................18

III.  THE COURT SHOULD APPROVE THE REQUESTED EXPENSES ...............................................19

    A.    Litigation Expenses...........................................................................................19

    B.    Administrative Expenses ...................................................................................20

IV.  THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS .....................................21

 V.  THERE HAVE BEEN NO OBJECTIONS TO THE PROPOSED DISTRIBUTIONS ...........................22

CONCLUSION .................................................................................................................. 23

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ............................................................. *passim*

*Acevedo v. Workfit Med. LLC*,
    187 F. Supp. 3d 370 (W.D.N.Y. 2016) ............................................................................12

*Allapattah Services, Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..........................................................................10

*Andrus v. New York Life Ins. Co.*,
    No. 16-05698, ECF No. 74 (S.D.N.Y. April 14, 2017) ............................................ *passim*

*Andrus v. New York Life Ins. Co.*,
    No. 16-05698, ECF No. 83 (S.D.N.Y. June 15, 2017) ....................................................12

*Beesley v. Int'l Paper Co.*,
    2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ...........................................................2, 12, 22

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ......................................................................................................10

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ....................................................................................22, 23

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018) ............................................................................................15

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ..........................................................................................14

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..................................................................12

*Clark v. Oasis Outsourcing Holdings Inc.*,
    No. 18-81101, ECF No. 23 (S.D. Fla. Dec. 20, 2018) ............................................2, 12, 21

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) ........................................................................................11

*Dardaganis v. Grace Capital Inc.*,
    889 F.2d 1237 (2d Cir. 1989) ........................................................................................15

*Devlin v. Ferrandino & Son, Inc.*,
   2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) ........................................................13

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
   2014 WL 5455473 (S.D.N.Y. Oct. 28, 2014) ......................................................21

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................................13

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000) ...................................................................................11

*Henry v. Little Mint, Inc.*,
   2014 WL 2199427 (S.D.N.Y. May 23, 2014) ......................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..............................................................................................11

*Hicks v. Morgan Stanley Co.*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................................................18

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 226 (2d Cir. 1987) .................................................................................14

*In re American Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................14

*In re APAC Teleservice, Inc. Sec. Litig.*,
   1999 WL 1052004 (S.D.N.Y. Nov.19, 1999) ......................................................13

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
   286 F.R.D. 621 (W.D. Okla. 2012) ......................................................................16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2001) .........................................................................13

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y.2010) ................................................................ *passim*

*In re Medical X-Ray Film Antitrust Litig.*,
   1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .........................................................13

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996) ........................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F. 3d 294 (3d Cir. 2005)............................................................18

*In re Visa Check/Mastermoney Antitrust Litig.*,
   2008 WL 1787674 (E.D.N.Y. Apr. 14, 2008) ....................................19

*In re Vitamin C Antitrust Litig.*,
   2012 WL 5289514 (E.D.N.Y. (Oct. 23, 2012) ...........................19, 20

*Krueger v. Ameriprise Fin., Inc.*,
   2015 WL 4246879 (D. Minn. July 13, 2015) .............................. *passim*

*Kruger v. Novant Health, Inc.*,
   2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)............................ *passim*

*Larson v. Allina Health System, et al.*,
   No. 17-3835, ECF 21 (D. Minn. Oct. 26, 2017) ................................17

*Larson v. Allina Health System, et al.*,
   No. 17-3835, ECF 132 (D. Minn. May 22, 2020) ........................2, 12

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................13, 19

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)..........................................................................10

*Moreno v. Deutsche Bank Americas Holding Corp.*,
   2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)....................................16

*Putnam Invs., LLC v. Brotherston*,
   140 S. Ct. 911, 205 L. Ed. 2d 455 (2020) ........................................15

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ...................................................21

*Sacerdote v. New York Univ.*,
   2018 WL 3629598 (S.D.N.Y. July 31, 2018) ....................................15

*Savani v. URS Prof. Solutions LLC*,
   121 F. Supp. 3d 564 (D.S.C. 2015)....................................................14

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
   No. 02–2133 (D. Conn. Jan. 21, 2005) .............................................13

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)..................................................................18

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..............................................................18

*Sims v. BB&T Corp.*,
    2019 WL 1993519 (M.D.N.C. May 6, 2019)....................................................... *passim*

*Snead v. Interim HealthCare of Rochester, Inc.*,
    286 F. Supp. 3d 546 (W.D.N.Y. 2018)........................................................................12

*Spano v. Boeing Co.*,
    2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)....................................................2, 12, 17

*Steiner v. Am. B'casting Co., Inc.*,
    248 Fed. Appx. 780 (9th Cir.2007)..............................................................................18

*Stevens v. SEI Invs. Co.*,
    2020 WL 996418 (E.D. Pa. Feb. 28, 2020)........................................................ *passim*

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................................................21

*Torres v. Gristede's Operating Corp.*,
    519 F. App'x 1 (2d Cir. 2013)......................................................................................13

*Tussey v. ABB, Inc.*,
    2017 WL 6343803 (W.D. Mo. Dec. 12, 2017)...........................................................15

*Tussey v. ABB, Inc.*,
    2019 WL 3859763 (W.D. Mo. Aug. 16, 2019)..................................................2, 12, 23

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. May 1, 2014)..........................................................13, 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................11

*Waldbuesser v. Northrop Grumman Corp.*,
    2017 WL 9614818 (C.D. Cal. Oct. 24, 2017)...................................................2, 12, 23

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019).........................................................................15

## Rules and Statutes

Prohibited Transaction Class Exemption 2003-39,
     68 Fed. Reg. 75,632, as amended (Dec. 31, 2003) ............................................................8

Fed. R. Civ. P. 23(h) .................................................................................................................10

## Other Authorities

Restatement (Third) of Trusts § 100 cmt. b(1) ..............................................................15

Manual for Complex Litigation (Fourth), § 14.121 (2004) ............................................11

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6 (4th ed. 2002) ............11

# INTRODUCTION

In light of the Settlement that has been achieved for the participants and beneficiaries of the M&T Bank Corporation Retirement Savings Plan ("Plan"), Plaintiffs and their counsel, Nichols Kaster PLLP, Kessler Topaz Meltzer Check LLP, and Trevett Cristo P.C. ("Class Counsel"), respectfully petition the Court to award: (1) attorneys' fees in the amount of $6,950,000 (one-third of the Settlement Fund); (2) reimbursement of 169,968.23 in litigation expenses; (3) settlement administration expenses in the amount of $91,322; and (4) service awards in the amount of $10,000 to each of the named Plaintiffs.

As discussed below, Class Counsel successfully pursued this complicated ERISA class action involving a multi-billion-dollar 401(k) plan and invested significant time and financial resources on behalf of the Settlement Class. Because of their efforts, Class Counsel have achieved a Settlement that provides $20.85 million in relief to the Class, representing between at least 50% to 80% (depending on the model) of the estimated damages associated with the proprietary funds in the Plan, and over 28% of total estimated damages.[1] Moreover, M&T Bank has agreed to significant and meaningful prospective relief: (1) proprietary funds in the Plan will be evaluated by an independent investment consultant, (2) the investment vehicle for all Plan funds also will be evaluated, (3) any proprietary funds that are retained will rebate the same percentage of investment management fees rebated to other retirement plans; and (4) Defendants will issue a request for information to multiple potential recordkeepers to obtain the best combination of recordkeeping pricing and services available to the Plan.

To date, Class Counsel have received no payment for any of their efforts in this litigation, nor have they received reimbursement for any of the out-of-pocket costs that they have advanced. All compensation to Class Counsel is contingent upon the Court's award of fees and

---

[1] *Pls' Memo in Support of Motion for Preliminary Approval of Settlement (ECF No. 158) at 13.*

expenses as provided in the Settlement. Likewise, the named Class Representatives have not received any compensation for the time they have invested in the litigation, the benefits they have provided the Settlement Class, or the risks they undertook in bringing this action.

In similar cases, "courts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this[.]" *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016); *see also, e.g., Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *14 (E.D. Pa. Feb. 28, 2020) (approving one-third fee to Nichols Kaster, PLLP in ERISA class action); *Sims v. BB&T Corp.*, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, ECF No. 23 ¶ 1 (S.D. Fla. Dec. 20, 2018) (same); *Andrus v. New York Life Ins. Co.*, No. 16-05698, ECF No. 83 at ¶ 1 (S.D.N.Y. June 15, 2017) (same); *Larson v. Allina Health System*, No. 0:17-cv-03835, ECF No. 132 at ¶¶ 4-5 (D. Minn. May 22, 2020) (approving one-third fee to Nichols Kaster, PLLP and Kessler Topaz Meltzer & Check LLP); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (approving one-third fee in ERISA case involving proprietary funds).[2] Likewise, the proposed $10,000 service awards are well within the bounds of what has been approved in other cases. *See e.g., Kruger*, 2016 WL 6769066, at *6 (approving $25,000 service awards to named plaintiffs); *Ameriprise*, 2015 WL 4246879, at *3 (same); *Stevens*, ECF No. 47 at ¶ 4 (approving $10,000 service award); *Andrus*, ECF No. 83 at ¶ 4 (same). Finally, the requested expenses are reasonable and typical for a case such as this. Accordingly, Plaintiffs and Class Counsel respectfully request that the Court approve the requested amounts.

---

[2] *See also Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("Class Counsel's requested one-third fee is common in these cases."); *Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *2 (C.D. Cal. Oct. 24, 2017); *Spano v. Boeing Co.*, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014).

**BACKGROUND**

## I. PROCEDURAL HISTORY

### A. Pleadings and Motion Practice

On May 11, 2016, Plaintiffs Sa'ud Habib, Beverly Williams, J. Marlene Smith, Kenneth Sliwinski, and Russ Dixon filed a Class Action Complaint (*ECF No. 1*), asserting claims against M&T Bank and certain related parties under ERISA in relation to the management of the Plan.[3] On September 1, 2016, Plaintiff Jacqueline Allen filed a related action asserting similar claims against M&T Bank and many of the same defendants. Thereafter, Plaintiffs sought to consolidate the two actions and their counsel moved for appointment as interim class counsel. *See ECF No. 30.* The Court granted that motion on July 26, 2017. *See ECF No. 34.*[4]

A Consolidated Complaint was then filed on August 25, 2017. *ECF No. 35.* On October 10, 2017, Defendants moved to dismiss certain claims in the Consolidated Complaint. *ECF No. 41.* On September 11, 2018, the Court granted in part and denied in part Defendants' motion to dismiss. *See ECF No. 68.* Pursuant to that ruling, Plaintiffs' claims regarding alleged breaches of fiduciary duties and prohibited transactions with parties-in-interest were allowed to proceed. *Id.*

Following discovery, Plaintiffs moved to amend their Consolidated Complaint by naming an additional fiduciary defendant, and adding allegations related to Defendants' alleged failure to prudently monitor recordkeeping expenses. *See ECF No. 83.* Defendants opposed Plaintiffs' motion, *ECF Nos. 91, 114*, but the Court granted the motion to amend on August 12, 2019. *ECF No. 132.* Plaintiffs then filed their First Amended Consolidated Complaint on August 15,

---

[3] The same Plaintiffs filed a First Amended Complaint on August 17, 2016. *ECF No. 25.*

[4] In its Order, the Court found that appointment of Nichols Kaster, PLLP ("Nichols Kaster") and Kessler Topaz Meltzer & Check, LLP ("KTMC") as interim lead class counsel was "appropriate based on (1) the work that counsel have done identifying and investigating the claims asserted in the Consolidated Action; (2) counsel's experience handling other class actions and complex litigation, including other ERISA actions; (3) counsel's knowledge of the applicable law, and (4) the resources that counsel have invested and have committed to invest on behalf of the putative class." *ECF No. 34 at ¶ 5.* The Court also appointed Trevett Cristo P.C. as local counsel. *Id. ¶ 7.*

2019 (*ECF No. 135*), and Defendants filed an Answer on August 29, 2019 (*ECF No. 141*).

On March 25, 2019, Plaintiffs filed a motion for class certification, which Defendants also opposed. *See ECF Nos. 94, 116, 121*. That motion was not decided by the Court by the time the parties agreed to settle this matter. In September 2019, Plaintiffs also filed a motion regarding privilege designations made by the Plan's outside counsel, Gordon Feinblatt LLC. *See ECF No. 142*. That motion was also pending at the time of the settlement.

### B.    Discovery

During the course of the litigation, the parties engaged in extensive discovery. Defendants produced over 250,000 pages of documents, and Plaintiffs produced over 7,500 pages. *Declaration of Kai Richter in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl."), ECF No. 159, ¶ 16.* In addition, Class Counsel took the depositions of five witnesses, and Defendants deposed all six named Plaintiffs. *Id. ¶ 18.* Plaintiffs also engaged in third-party discovery, through which they obtained over 3,800 pages of documents from three different entities. *Id. ¶ 17.* In addition, Plaintiffs' counsel consulted with three separate experts, *id. ¶ 19*, and submitted a report from one of those experts (Dr. Steve Pomerantz) in support of their motion for class certification, *ECF No. 97-1*.

### C.    Mediation

In the meantime, the parties participated in a full-day mediation with the Honorable Layn Phillips, a retired United States district court judge, on February 18, 2019. *ECF No. 120.* Although the parties did not reach a settlement at that time, they agreed to continue their negotiations with the assistance of Judge Phillips. *See First Richter Decl., ¶ 21.* As a result of these negotiations, the parties reached a settlement-in-principle on September 26, 2019. *Id. ¶ 22.*

## II.    SETTLEMENT TERMS AND PRELIMINARY APPROVAL

Under the Settlement, M&T Bank or its insurers have contributed a Gross Settlement Amount of $20.85 million to a common settlement fund (the "Settlement Fund") for the benefit of the Settlement Class.[5] *Settlement Agreement* (*ECF No. 159-1*) *¶¶ 2.30, 5.4-5.5.* After accounting for any attorneys' fees, expenses, and class representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members, and allocated in proportion to their weighted quarterly account balances in the Plan's investment options. *Id. ¶¶ 2.38, 6.1, 6.4.* In addition, the Settlement provides that the following procedures shall apply to the management of the Plan on a prospective basis:

- The Committee shall retain an independent investment consultant (not related to M&T Bank or any of its affiliates) to provide a written opinion, within six months of the Settlement Effective Date, on the selection, retention, or evaluation of any proprietary mutual fund in the Plan listed in Group A of the Settlement Agreement, or the share class of any such proprietary mutual funds (if selected or retained), which the Committee shall consider in good faith;

- To the extent any proprietary mutual funds listed in Group A are retained in the Plan, those mutual funds shall rebate to the Plan (or its recordkeeper) the same percentage of investment management fees rebated to other retirement plans (or their recordkeepers) that hold the same share class of such proprietary mutual funds;

- The Committee shall retain an independent investment consultant (not related to M&T Bank or any of its affiliates) to provide a written opinion, within six (6) months of the Settlement Effective Date, regarding whether any of the existing proprietary or non-proprietary mutual funds in the plan should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts) for the same or equivalent mutual funds, which the Committee shall consider in good faith; and

- Within sixty (60) days of the Settlement Effective Date, Defendants shall issue a request for information to multiple potential vendors for recordkeeping services, and shall consider any information received in response in good faith to choose the best recordkeeping services available to the Plan, which consideration shall include the amount of recordkeeping expenses paid by the Plan, whether directly or indirectly through revenue sharing, and the quality of services provided to Plan participants.

---

[5]  The Settlement Class is defined as follows:

All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the M&T Bank Corporation Retirement Savings Plan, at any time during the Class Period from May 11, 2010 through September 30, 2019.

*ECF No. 168 ¶ 4.*

*Settlement Agreement ¶ 7.1(a)-(d).*

Plaintiffs filed a motion seeking preliminary approval of the Settlement on December 26, 2019. *ECF No. 157.* The Court granted that motion on April 14, 2020. *ECF No. 168.* Plaintiffs are filing the present motion 30 days in advance of the deadline for objections, pursuant to Paragraph 8.1 of the Settlement. To date, no objections to the Settlement have been received. *Declaration of Kai Richter in Support of Motion for Attorneys' Fees, Expenses, & Service Awards ("Second Richter Decl."), ¶ 39.*

## III.  WORK OF CLASS COUNSEL

Class Counsel have expended significant time and effort prosecuting this action and achieving the Settlement on behalf of the Class. To date, the total amount of time invested by Class Counsel is over 4,686 hours, and additional work will be required going forward to implement the Settlement. *Second Richter Decl. ¶¶ 19, 24.* This work is detailed in the accompanying declarations from Class Counsel, and is briefly summarized below.

### A.  Work Conducted to Date

Prior to filing this action, Class Counsel conducted an in-depth investigation of the Plan, the Plan's expenses compared to peers, and the merits of the Plan's proprietary investments compared to objective benchmarks and other available options. *First Richter Decl. ¶ 14.* Thereafter, Class Counsel vigorously prosecuted the action on behalf of the class. Among other things, Class Counsel (1) drafted the initial class action complaints, the Consolidated Complaint, and the First Amended Consolidated Complaint; (2) responded to Defendant's motion to dismiss; (3) appeared before the Court in-person for an initial case management conference; (4) moved for class certification; (5) drafted a comprehensive set of discovery requests; (6) repeatedly met and conferred with Defendants during the course of discovery; (7) engaged in letter briefing related to discovery; (8) reviewed over 250,000 pages of documents and extensive class data

produced by Defendants; (9) produced over 7,500 pages of documents; (10) responded to Interrogatories; (11) served subpoenas on three non-parties (Gordon Feinblatt LLC, Hodgson Russ LLP and T. Rowe Price) and reviewed more than 3,800 pages of documents produced by those non-paties; (12) engaged in motion practice related to Gordon Feinblatt's privilege designations; (13) deposed five fact witnesses; (14) defended all six plaintiff depositions; (15) consulted with three experts; (16) successfully moved to amend the Consolidated Complaint based on information gathered during the course of discovery; (17) prepared a lengthy mediation statement and reply brief in advance of mediation; (18) attended a full day mediation session before Judge Phillips; (19) continued their negotiations through Judge Phillips until reaching a settlement-in-principle; and (20) consulted with the Class Representatives throughout the course of the case. *Second Richter Decl. ¶ 18; see also Meltzer Decl. ¶ 11.*

In addition, Class Counsel have undertaken considerable work in connection with the Settlement and settlement administration. This has included (1) drafting the Settlement Agreement and exhibits thereto (including the Settlement Notices, Former Participant Claim Form, and the proposed preliminary and final approval orders); (2) preparing Plaintiffs' Preliminary Approval Motion papers; (3) soliciting bids from three potential settlement administrators and evaluating the bids; (4) reviewing the final drafts of the Settlement Notices prepared by the Settlement Administrator (Analytics Consulting LLC), and ensuring that they were timely mailed; (5) working with Analytics to create a settlement website and telephone line for Class Members who would like additional information about the Settlement; (6) communicating with Class Members; and (7) preparing the present motion. *Id.*

### B. Remaining Work to Be Performed

Class Counsel's work on this matter remains ongoing. Prior to the Fairness Hearing, Class Counsel will draft Plaintiffs' motion for final approval of the Settlement and respond to

any objections. *Id. ¶ 24.* Class Counsel also will communicate with the Independent Fiduciary (Fiduciary Counselors) and provide it with all necessary information in connection with its review of the proposed release on behalf of the Plan.[6] *Id.* Class Counsel will then attend the Fairness Hearing, and if final approval is granted, supervise the distribution of payments to eligible Class Members. *Id.* In addition, Class Counsel will continue to respond to questions from Class Members and take other actions necessary to support the Settlement until the conclusion of the Settlement Period. *Id.*

## IV. WORK OF CLASS REPRESENTATIVES

The Class Representatives also have worked to advance the interests of Class Members. Specifically, the Class Representatives (1) reviewed the operative complaints bearing their names; (2) produced documents and information to Class Counsel prior to suit and during discovery; (3) appeared for their depositions; (4) made themselves available by phone for the mediation; (5) communicated with Class Counsel throughout the course of the action; (6) met with counsel to prepare for trial; and (7) discussed the Settlement with Class Counsel and reviewed the Settlement Agreement. *Second Richter Decl., ¶ 37; see also ECF Nos. 160-165.*

## V. WORK OF THE ADMINISTRATOR, ESCROW AGENT, AND INDEPENDENT FIDUCIARY

Finally, in order to be administered and effectuated, the Settlement also requires time, resources, and expertise from several non-parties. *See Settlement Agreement ¶¶ 2.24, 2.33, 2.45.*

Analytics, as the approved Settlement Administrator, disseminated the Settlement Notices to Class Members and established the settlement website and telephone message line. *Id. ¶¶ 3.3, 12.1-.2; Second Richter Decl. ¶ 33.* Analytics also will review the Claim Forms

---

[6] A release on behalf of a plan is subject to independent fiduciary review under Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632, as amended (Dec. 31, 2003). Independent fiduciary review is also a condition of settlement under Paragraph 3.1 of the Settlement Agreement.

submitted by Former Participants,[7] and coordinate distribution of payments to Class Members in the event that the Settlement receives final approval. *Settlement Agreement ¶¶ 4.1.9, 6.4-6.5*

The Escrow Agent (Alerus) will hold the monies in the Qualified Settlement Fund while approval of the Settlement and distributions to Class Members are pending. *Id. ¶¶ 5.4-5.8.* Upon final approval of the Settlement, Alerus will release these funds and also execute the investment and tax qualification mandates in the Settlement Agreement. *Id. ¶¶ 5.9-5.10.*

Finally, Fiduciary Counselors will review the Settlement, and independently determine whether it is in the best interest of the Plan to release its claims against Defendants in exchange for the relief provided. *Id. ¶ 3.1.* This independent fiduciary review is called for by DOL regulations and is also required by Paragraph 3.1 of the Settlement Agreement. *See supra* at n.6.

## VI. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS SOUGHT

In consideration of the work summarized above and associated expenses, Article 8 of the Settlement Agreement provides that Plaintiffs may seek (1) attorneys' fees equal to one-third of the Settlement Fund; (2) litigation costs; (3) payment of Administrative Expenses, including the expenses of the Settlement Administrator, Escrow Agent, and Independent Fiduciary; and, (4) a $10,000 service award for each Class Representative. *Id. ¶¶ 2.3, 2.5, 2.15, 8.1-.8.2.* Consistent with the above, Plaintiffs seek the following amounts in connection with this motion:

- Attorneys' fees: $6,950,000 (one-third of the Gross Settlement Amount)
- Litigation Expenses: $169,968.23
- Settlement Administrator expense: $73,822
- Escrow Agent expense: $2,500
- Independent Fiduciary expense: $15,000
- Class Representative service awards: $60,000 total ($10,000 each)

*See Second Richter Decl. ¶¶ 27, 32, 34, 35, 38.*

---

[7] Current participants are not required to submit a claim form because their share of the Settlement proceeds can be automatically deposited in their 401(k) account. *Settlement Agreement ¶ 6.5.*

# ARGUMENT

## I.    STANDARD OF REVIEW

When counsel obtain a settlement for a class, courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the requested distributions are authorized both under Article 8 of the Settlement Agreement (*see* above at § VI) and by applicable law.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) ("It is axiomatic that attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund[.]"). Likewise, "reasonable expenses of litigation" may be recovered from a common fund, *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970), as well as administrative expenses of settlement, *see Henry v. Little Mint, Inc.,* 2014 WL 2199427, at *17 (S.D.N.Y. May 23, 2014) (ordering settlement administration expenses to be paid "from the Settlement Fund"). Finally, class representative service awards "serv[e] the purposes of Rule 23" and may be awarded to compensate efforts undertaken on behalf of class members. *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y.2010) (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs); *see also Stevens*, 2020 WL 996418, at *14 (approving $10,000 service award); *Andrus*, ECF No. 83 at ¶ 4 (same). In summary, the requested distributions are customary in a class action such as this, and should be approved for the reasons set forth below.

## II.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

Courts typically employ either the "percentage of the fund" method or the "lodestar" method to compute fees. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). However, "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Use of the percentage method dispenses with the "cumbersome, enervating, and often surrealistic process of lodestar computation." *Goldberger*, 209 F.3d at 50 (quotation marks and citations omitted). However, the Second Circuit recommends considering the hours submitted by counsel as a "cross-check" on the reasonableness of the requested percentage. *Id.* The key consideration in awarding fees is what is reasonable under the circumstances. *Id.* at 47; *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees . . . ."); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1326 (2d Cir. 1990).

For purposes of evaluating the reasonableness of attorneys' fees, courts in the Second Circuit consider the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Of these, "[g]enerally, the factor given the greatest emphasis is the size of the fund created, because 'a common fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded.'" Manual for Complex Litigation (Fourth), § 14.121 (2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547, 550 (4th ed. 2002)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "critical factor is the degree of success obtained").

## A. The Requested Fee Is Reasonable in Relation to the Settlement

The requested fee award of one-third of the Settlement Fund is consistent with awards in similar ERISA class actions involving 401(k) plans. As the court stated in *Ameriprise*:

> [I]n comparing the requested fee with fee awards in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options and the reasonableness of defined contribution plan fees. **In such cases, courts have consistently awarded one-third contingent fees**.

2015 WL 4246879, at *2 (emphasis added) (citing numerous cases); *see also Kruger*, 2016 WL 6769066, at *2 ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter") (citing cases); *In re Marsh ERISA Litig.*, 265 F.R.D. at 149 ("Courts have [] awarded percentage fees of one-third or higher in ERISA company stock cases in appropriate circumstances ....").[8] Consistent with this established benchmark, Nichols Kaster, PLLP previously received a one-third fee award in another ERISA case in this Circuit involving similar allegations regarding a proprietary fund in a 401(k) plan. *See Andrus*, No. 1:16-cv-05698, ECF No. 83. In addition, Class Counsel have received one-third fee awards in several other ERISA cases. *See Stevens*, 2020 WL 996418, at *14 (approving one-third fee to Nichols Kaster, PLLP in ERISA case); *Sims*, 2019 WL 1993519, at *2 (same); *Clark*, No. 18-81101, ECF No. 23 ¶ 1 (same); *Larson*, No. 0:17-cv-03835, ECF No. 132 at ¶¶ 4-5 (approving one-third fee to Nichols Kaster, PLLP and KTMC in ERISA case).

Other class action cases in this Circuit also support a one-third fee. *See, e.g.*, *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 561 (W.D.N.Y. 2018) (approving 37.5% fee in Fair Labor Standards Act case); *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 386 (W.D.N.Y. 2016) (awarding one-third of settlement in Fair Labor Standards Act case); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) (awarding

---

[8] *See also* cases cited *supra* at 2 & n.2.

12

33% of $15 million settlement); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (awarding 38.26% of the fund); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 368 (S.D.N.Y. 2002) (awarding 33 1/3% of $11.5 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2001) (awarding 33% of $13 million settlement); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02–2133, slip op. at 8 (D. Conn. Jan. 21, 2005) (awarding 33.3% of $16.5 million settlement, plus expenses); *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004, at *1 (S.D.N.Y. Nov.19, 1999) (awarding 33.33% of $21 million settlement); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33.33% of $39 million fund).

Moreover, "[b]eyond just the monetary recovery, this court must also consider the overall benefit to the class, including non-monetary benefits, when evaluating a fee request." *Kruger*, 2016 WL 6769066, at *3. The prospective relief that was negotiated will provide additional value to the class, and further supports the requested fee. *See Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (noting that injunctive and non-monetary relief were relevant factors in assessing success obtained for purposes of fee award).[9]

### B.     The Magnitude and Complexity of the Litigation Support the Requested Fee

"The size and difficulty of the issues in a case are [also] significant factors to be considered in making a fee award." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *11 (S.D.N.Y. May 1, 2014) (citing *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 912 F. Supp. 97

---

[9] A one-third fee is also consistent with the amount that Class Counsel and the Class Representatives agreed upon at the outset of the representation. *See Second Richter Decl. ¶ 36 n.4*. This further supports approval of the fee request. *See Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("Class Counsel … seeks approval of the contingent fee agreed to when this matter was initiated. This factor supports approval."); *accord SEI Investments Co.*, 2020 WL 996418, at *12 ("Were this case brought on behalf of an individual, the customary contingency fee would likely range between thirty and forty percent of the recovery. . . . Here, Class Counsel's requested percentage is commensurate with customary percentages in private contingency fee agreements.").

(S.D.N.Y. 1996)). Here, the size of class was substantial, and involved more than 39,000 current and former plan participants. Moreover, it is well-known that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Ameriprise*, 2015 WL 4246879, at *1; *see also In re Marsh ERISA Litig.*, 265 F.R.D. at 138 ("Many courts have recognized the complexity of ERISA breach of fiduciary duty" cases); *Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (noting that ERSIA 401(k) cases are "particularly complex").

Handling a large and complex case such as this requires counsel with specialized skills. *See Savani v. URS Prof. Solutions LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate ... class-wide, statutorily-based claims for pension benefits"). In addition to legal expertise, counsel must possess "expertise regarding industry practices." *See Novant Health*, 2016 WL 6769066, at *3. Based on their experience litigating similar ERISA cases (*see infra* at § III.D), Class Counsel were uniquely able to navigate the size and complexity of the case, and achieve a successful result for the class.

### C. Class Counsel Assumed Significant Risks

Class Counsel assumed significant risks by taking this case on a contingent fee basis. As the Second Circuit has stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted); *see also In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)).

In the absence of a Settlement, Class Counsel would have faced significant litigation risks. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 148 ("[T]he risk for Plaintiffs' Counsel in this ERISA company stock case was significant. Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation."). These risks are highlighted by two recent trial judgments in favor of the defendants in ERISA cases, including one in the Southern District of New York. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 2018 WL 3629598, at (S.D.N.Y. July 31, 2018).

Moreover, even if Plaintiffs proved a fiduciary breach, they still faced potential hurdles in proving losses. *See Pls' Memo in Support of Motion for Preliminary Approval of Class Action Settlement (ECF No. 158) at 15.* As the Second Circuit has recognized, there are inherent "uncertainties in fixing damages" in cases such as this. *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1244 (2d Cir. 1989). Because it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments, *see* Restatement (Third) of Trusts § 100 cmt. b(1), there are often extended proceedings and lengthy appeals regarding issues of loss. *See Tussey v. ABB, Inc.*, 2017 WL 6343803, at *1-3 (W.D. Mo. Dec. 12, 2017) (summarizing more than five years of post-trial briefing, including appeals, on the measure of damages in 401(k) case, and declaring the need for further submissions from the parties).[10] These risks further support the requested fee in light of the contingent nature of the representation.

---

[10] As a case in point, Class Counsel recently suffered an adverse judgment regarding a loss issue midtrial in an ERISA case against Putnam, later appealed to the First Circuit and prevailed on the same issue, and then settled the case before the trial was completed (following over four years of litigation). *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) (partly vacating judgment against Plaintiffs); *Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911, 205 L. Ed. 2d 455 (2020) (denying defendants' petition for certiorari); No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

### D. Class Counsel Provided High-Quality Representation

The quality of the representation also supports the requested fee. As Judge Schofield of the Southern District of New York recognized in a similar ERISA case involving Nichols Kaster, "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017). Indeed, a Bloomberg BNA article stated that "Nichols Kaster has been the driving force behind [the] flurry of litigation over proprietary mutual funds." Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg BNA (Oct. 17, 2016). Likewise, Kessler Topaz Meltzer & Check, LLP ("KTMC") "is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary duty class actions." *In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012).

The experience and qualifications of these firms and their attorneys is summarized in the accompanying declarations. *See Second Richter Decl., ¶¶ 3-16; Meltzer Decl. ¶¶ 3-9.* Nichols Kaster has won favorable pretrial rulings on dispositive motions and/or class certification in over a dozen ERISA cases. *See Second Richter Decl., ¶ 8.* Nichols Kaster also recently tried two ERISA class actions (*Putnam* in 2017 and the *American Century* in 2018), successfully litigated an appeal before the First Circuit in *Putnam*, and has negotiated numerous ERISA class action settlements in addition to the present settlement. *Id.* Based on their experience, the firm's attorneys have been interviewed by several media outlets in connection with their ERISA work, and Nichols Kaster's undersigned counsel (Kai Richter) has spoken at multiple national forums on ERISA litigation. *Id. ¶ 9.*

Similarly, KTMC has a nationwide reputation for excellence and has successfully managed all aspects of complex class action litigation, with specific expertise in ERISA suits.

*Meltzer Decl., ¶¶ 5-9; see also ECF No. 96 ¶ 3.* Acknowledging the firm's history and track record of impressive results, courts across the country have not hesitated to appoint KTMC as class counsel in ERISA breach of fiduciary class actions, including those alleging excessive fees in retirement plans. *See, e.g., Larson et al. v. Allina Health System, et al.*, No. 17-3835, ECF 21 (D. Minn. Oct. 26, 2017) (appointing KTMC interim class counsel along with Nichols Kaster and other counsel); *see also Meltzer Decl., ¶ 5.* By virtue of their experience and reputation, Class Counsel were able to litigate toe-to-toe with one of the largest defense firms in the country, and achieve a successful result for the class.

### E.    The Fee Is Reasonable in Light of the Time and Labor Expended

The requested fee is also reasonable considering the efforts expended by counsel.  As noted above, this case was not resolved until the parties had engaged in extensive discovery and litigated a number of motions, including a motion to dismiss (*ECF No. 41*), a contested motion for class certification (*ECF No. 93*), a contested motion to amend (*ECF No. 83*), and a motion to compel regarding privilege designations (*ECF No. 142*). As of the date of this motion, Class Counsel's lodestar is already $2,569,298. *See Second Richter Decl. ¶ 22.*[11]

---

[11] The hourly rates used to calculate Class Counsel's lodestar are "reasonable and are comparable to fees that have been recently approved in [other] ERISA class actions". *Sims*, 2019 WL 1993519, at *3 (addressing and approving Nichols Kaster's billing rates). Nichols Kaster's billing rates for ERISA actions range from $625 to $875 per hour for attorneys with more than 10 years of experience, $425 to $575 per hour for attorneys with 10 years or less experience, and $250 per hour for paralegals and clerks. *Second Richter Decl. ¶ 22.* KTMC's rates are similar. *See Meltzer Decl., ¶ 13.* These rates are consistent with (and slightly less than) the rates approved for other experienced ERISA litigators. *See, e.g., Novant Health*, 2016 WL 6769066, at *4 (adopting rates of $460 to $998 per hour based on years of experience); *Boeing*, 2016 WL 3791123, *3 (same); *Lockheed Martin*, 2015 WL 4398475, *3 (adopting rates of $447 to $974 per hour based on years of experience); *see also Second Richter Decl., Ex. 3* (Valeo Report excerpts showing that among ERISA practice groups within the top 200 law firms, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-1,202 (with an average of $751), and for senior associates was $238-$938 (with an average of $580)). Moreover, the hours expended were reasonable given the difficult and complex nature of the action. Other firms with less experience would not have been able to litigate the case nearly as efficiently.

While the requested fee exceeds the reported lodestar, Class Counsel are entitled to a reasonable multiplier because they took this case on a contingent fee basis and assumed a risk of loss. "Courts award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *14 (S.D.N.Y. May 1, 2014). The requested fee in this case represents a multiplier of approximately 2.70, and falls well within the reasonable range. *See id.*; *Stevens*, 2020 WL 996418, at *13 (noting that approved one-third fee represented a multiplier of approximately 6.16); *Andrus v. New York Life Ins. Co.*, No. 16-05698, ECF No. 74, at p.12 (S.D.N.Y. April 14, 2017) (noting that approved one-third fee represented a multiplier of 5); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts routinely award lodestar multipliers between two to six."); *Steiner v. Am. B'casting Co., Inc.,* 248 Fed. Appx. 780, 783 (9th Cir.2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed").[12]

### F.    Public Policy Supports the Requested Fee

Public policy considerations also support the requested fee. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 149-50. Awards of attorneys' fees encourage skilled counsel to represent those who seek redress for damages inflicted on an entire class of persons, and therefore discourage future misconduct of a similar nature. *See Hicks v. Morgan Stanley Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and

---

[12] "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F. 3d 294, 306-07 (3d Cir. 2005); *see also Goldberger*, 209 F.3d at 50 ("[T]he hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.").

experienced trial counsel, the remuneration should be both fair and rewarding."); *In re Visa Check/Mastermoney Antitrust Litig.*, 2008 WL 1787674, at *8 (E.D.N.Y. Apr. 14, 2008) (finding that there is "'commendable sentiment in favor of providing lawyers with sufficient incentive' to undertake the complex task of competently representing the financial interests of class members once settlement has resulted in the creation of a significant common fund."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis … on behalf of those who otherwise could not afford to prosecute."). This is especially important in the ERISA context because "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers." *In re Marsh ERISA Litig.*, 265 F.R.D. at 149-50.

## III.    THE COURT SHOULD APPROVE THE REQUESTED EXPENSES

In addition to awarding the requested fees, the Court also should approve the requested expenses.[13]

### A.    Litigation Expenses

"It is well-established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Thus, "[c]ourts in the Second Circuit normally grant expense requests in class action cases as a matter of course." *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 (E.D.N.Y. (Oct. 23, 2012).

"The expenses that may be reimbursed from the common fund encompass 'all reasonable' litigation-related expenses." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Here, the

---

[13] The requested expenses include $169,968.23 in litigation expenses and $91,322 in administrative expenses.

requested litigation expenses are of a type normally incurred in complex class actions such as this. *See, e.g., In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 ("The principal expenses for which Class Counsel seeks reimbursement are expert witness costs, deposition reporters and transcripts, copying, travel, research, and court-filings—all of which are appropriate for reimbursement."); *Sims*, 2019 WL 1993519, at *4 (approving expenses that "included the costs of hiring experts and consultants, taking depositions, travel, lodging, and parking, copies and communication costs, and mediation and settlement costs, and professional fees, among others"). Moreover, the total expense amount ($169,968.23) is reasonable in light of the stage of the case and the amounts awarded in similar cases. *See e.g., Sims*, 2019 WL 1993519, at *4 (approving $737,377.68 in expenses in similar ERISA class action involving proprietary funds); *Ameriprise,* 2015 WL 4246879, at *3 (approving $782,000 in litigation expenses in ERISA proprietary funds case).

## B. Administrative Expenses

The requested administrative expenses are also reasonable. The Settlement Notice, claims review, and payment distribution services provided by Analytics are essential to carry out the Settlement. The cost of providing those services ($73,822) is reasonable in light of the bids that were received, and comes to less than $2.00 per class member.[14] The Escrow Agent expense of $2,500 is also reasonable in light of the responsibility of handling a $20.85 million settlement fund. Finally, review of the Settlement by the Independent Fiduciary is called for by DOL regulations, and is deemed to be a "critically important" benefit to plan participants. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 139. Accordingly, the requested settlement administration expenses in the amount of $91,322 should be approved. Both the total amount of these expenses

---

[14] The requested amount does not include any charges for the supplemental letters discussed at the telephone hearing on June 22, 2020 that were approved by the Court. *See ECF No. 172, ¶ 5; ECF No. 173* (approving supplemental communication).

and the underlying components are reasonable and customary in ERISA cases such as this. *See, e.g., Oasis Outsourcing Holdings Inc.*, No. 18-81101, ECF No. 23 ¶ 2 (approving $157,050 in administrative expenses for same services related to the settlement); *Andrus*, No. 16-05698, ECF No. 83 at ¶ 3 (approving administrative expenses for same types of services).

## IV. THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS

This Court also should approve the requested service awards in the amount of $10,000 per class representative. "Case law in this and other circuits fully supports compensating class representatives for their work on behalf of the class, which has benefited from their representation." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150.[15] Courts reason that such awards are compensatory in nature, reimbursing class representatives who "take on a variety of risks and tasks when they commence representative actions." *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003).

The requested awards in this case are fully consistent with these recognized rationales. First, the Class Representatives invested significant time reviewing case materials (pleadings, interrogatory responses, settlement agreement, etc.), producing documents, appearing for their depositions, and communicating with Class Counsel. Second, they assumed significant reputational risks by suing their former employer.[16] Finally, "the protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2014 WL 5455473, at *9

---

[15] *See also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) ("[T]he courts have with some frequency, held that a successful class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and in the discretion of the Court, receive an additional award, termed a service award.").

[16] Courts have noted that bringing a lawsuit against an employer relating to management of a 401(k) plan entails risk that the plaintiff will be viewed unfavorably by the employer or future employers. *See Lockheed Martin*, 2015 WL 4398475, at *4.

(S.D.N.Y. Oct. 28, 2014).[17] Indeed, suits like this are one of the reasons why fees in 401(k) plans have dropped in recent years. *See 401(k) Fees Continue To Drop*, FORBES (Aug. 20, 2015) ("In part in response to 401(k) fee litigation, employers have been aggressively negotiating fees and changing investment fund line-ups to include low-cost funds.").[18]

The amount of the requested service awards is also reasonable and in line with the amounts awarded in similar cases. *See, e.g., Andrus, ECF No. 83 at ¶ 4* (approving $10,000 service award). Indeed, courts have approved significantly greater awards in other ERISA cases. *See Kruger*, 2016 WL 6769066, at *6 (approving $25,000 service awards); *Ameriprise*, 2015 WL 4246879, at *3 (same); *Abbott*, 2015 WL 4398475, at *4 (same); *Beesley*, 2014 WL 375432, at *4 (same); *Sims*, 2019 WL 1993519, at *4 (approving $20,000 service awards); *In re Marsh ERISA Litig.*, 265 F.R.D. at 150 (approving $15,000 service awards).

## V.  THERE HAVE BEEN NO OBJECTIONS TO THE PROPOSED DISTRIBUTIONS

Finally, it is worth noting that there has been no objection to the Settlement or to the requested distributions allowed under the Settlement as of the date of this motion. The Settlement Notices that the Court approved explicitly disclosed that Class Counsel and the Class Representatives would seek these distributions:

> Class Counsel will apply to the Court for payment of Attorneys' Fees for their work in the case. The amount of fees that Class Counsel will request will not exceed one-third of the Qualified Settlement Fund ($20,850,000). In addition, Class Counsel will also seek to recover the costs and administrative expenses associated with the settlement. Any Attorneys' Fees and Costs and Administrative Expenses awarded by the Court will be paid from the Qualified Settlement Fund.

> Class Counsel also will ask the Court to approve payment, not to exceed $10,000, for each of the Class Representatives who took on the risk of litigation, participated in the class action suit, and committed to spend the time necessary to bring the case to conclusion.

---

[17] *See also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that Secretary of Labor "depends in part on private litigation to ensure compliance with the statute").

[18] Available at https://www.forbes.com/sites/ashleaebeling/2015/08/20/401k-fees-continue-to-drop/#6b8caf21164f (last visited June 21, 2020).

*ECF No. 159-1 at 60, 70.* In response, no class member out of more than 39,000 has lodged an objection. This further supports the fairness of the Settlement and the reasonableness of the requested distributions. *See Wal-Mart Stores*, 396 F.3d at 118 (finding that "the absence of substantial opposition is indicative of class approval"); *Tussey*, 2019 WL 3859763, at *5 (approving one-third fee, noting that "no class member filed an objection to any portion of the Settlement or Class Counsel's request for attorneys' fees, the reimbursement of expenses, and compensation awards to the Class Representatives."); *Northrop Grumman*, 2017 WL 9614818, at *5 ("the Court concludes that the lack of significant objections to the requested fees justifies an award of one-third of the settlement fund").

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the requested distributions from the Settlement Fund.

Dated: June 24, 2020                Respectfully submitted,

By: /s/ Kai Richter
**NICHOLS KASTER, PLLP**
Paul J. Lukas, MN Bar No. 022084X*
Kai Richter, MN Bar No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
Jacob Schutz, MN Bar No. 0395648*
Chloe A. Raimey, MN Bar No. 0398257*
   *admitted in W.D.N.Y.
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
Email: krichter@nka.com
     lukas@nka.com
     cengstrom@nka.com
     jschutz@nka.com
     craimey@nka.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Donna Siegel Moffa (admitted *pro hac vice*)
Joseph H. Meltzer (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: dmoffa@ktmc.com
        jmeltzer@ktmc.com

**TREVETT CRISTO P.C.**
Melanie Wolk.
2 State Street, Suite 1000
Rochester, NY 14614
Tel: (585) 454-2181
Fax: (585) 454-4026
Email: mwolk@trevettcristo.com