UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re M&T Bank Corporation ERISA Litigation* | Civil Action No.: 1:16-cv-375-FPG-JJM<br>Consolidated Action |

**DECLARATION OF KAI RICHTER IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**

I, Kai Richter, hereby submit this Declaration in support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Class Representative Service Awards.

**Professional Overview**

1. I am a partner at Nichols Kaster, PLLP ("Nichols Kaster"), and I am one of the attorneys appointed by the Court to represent the Settlement Class[1] in the above-captioned action. *See* ECF No. 168.

2. I am currently licensed in good standing to practice law in the State of Minnesota, and also have been admitted to practice in several federal district courts and appellate courts across the country. A list of jurisdictions and courts in which I am admitted is set forth below:

| |
|---|
| Supreme Court of the United States |
| 1st Circuit Court of Appeals |
| 2nd Circuit Court of Appeals |
| 3rd Circuit Court of Appeals |
| 6th Circuit Court of Appeals |
| 8th Circuit Court of Appeals |
| 9th Circuit Court of Appeals |
| U.S.D.C. for the District of Minnesota |
| U.S.D.C. for the Eastern District of Michigan |
| U.S.D.C. Western District of New York |
| Minnesota Supreme Court |

---

[1] Capitalized terms in this Declaration have the meaning assigned in the Settlement Agreement. *See* ECF No. 159-1.

I am in good standing in every jurisdiction in which I have been admitted to practice.

3. I have been actively engaged in the practice of law since 1999, and have substantial class action experience and other complex litigation experience, as outlined in my prior Declaration in support of preliminary approval of the Parties' Class Action Settlement (ECF No. 159).

4. Since joining Nichols Kaster in April 2010, my practice has focused exclusively on class action cases. I have been appointed class counsel for litigation or settlement purposes in over twenty class cases. In connection with those cases, I have personally negotiated class action settlements providing for more than $300 million in available relief to class members nationwide.

5. The principal types of cases that I have handled at the firm are consumer class actions and ERISA class actions.

6. As a former leader of our firm's Consumer Class Action Team, I spearheaded class action litigation against several major financial institutions, including JPMorgan Chase, Bank of America, U.S. Bank, Wells Fargo, Citibank, GMAC Mortgage, RBS Citizens, and MidFirst Bank. For example, I successfully argued contested class certification motions in *Hofstetter v. Chase Home Finance, LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) and *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953 (N.D. Cal. June 13, 2014), successfully argued before the First Circuit Court of Appeals in *Lass v. Bank of America, N.A.*, 695 F.3d 129 (1st Cir. 2012), and successfully argued and/or briefed dispositive motions in numerous other consumer class cases, including *Jackson v. Wells Fargo Bank, N.A.*, 2013 WL 5945732 (W.D. Pa. Nov. 7, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093 (N.D. Cal. 2013); *Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255 (N.D.N.Y. 2013); *Berger v. Bank of America, N.A.*, 2013 WL 1164497 (D. Mass. Mar. 21, 2013); *Morris v. Wells Fargo Bank, N.A.*, 2012 WL 3929805 (W.D. Pa. Sept. 7, 2012); *Ulbrich v.*

*GMAC Mortgage, LLC*, 2012 WL 3516499 (Aug. 15, 2012); *Walls v. JPMorgan Chase Bank, N.A.*, 2012 WL 3096660 (W.D. Ky. July 30, 2012); *Skansgaard v. Bank of America, N.A.*, 896 F. Supp. 2d 944 (W.D. Wash. 2011); and *Wulf v. Bank of America, N.A.*, 798 F. Supp. 2d 586 (E.D. Pa. June 27, 2011).

7. I am currently co-leading our firm's ERISA Class Action Team. In addition to the present case, the firm's lawyers (including myself) have been appointed class counsel for litigation and/or settlement purposes in fifteen other ERISA cases, as set forth below:

- *Brotherston v. Putnam Investments, LLC*, 1:15-cv-13825 (D. Mass.);
- *Andrus v. NY Life Ins. Co.*, 1:16-cv-05698 (S.D.N.Y.);
- *Main v. American Airlines, Inc.*, 3:16-cv-01033 (N.D. Tex.);
- *Bowers v. BB&T Corp.*, 1:15-cv-00732 (M.D.N.C.);
- *Stevens v. SEI Invs. Co.*, No. 2:18-cv-04205 (E.D. Pa.);
- *Urakhchin v. Allianz Asset Management of America, L.P.*, 8:15-cv-01614 (C.D. Cal.);
- *Johnson v. Fujitsu Tech. & Bus. of America, Inc.*, No. 5:15-cv-03698 (N.D. Cal.);
- *Wildman v. American Century Servs., LLC*, No. 4:16-cv-00737 (W.D. Mo.);
- *Clark v. Oasis Outsourcing Holdings Inc.*, No. 9:18-cv-81101 (S.D. Fla.);
- *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936 (S.D.N.Y.);
- *Moitoso v. FMR LLC*, No. 1:18-cv-12122 (D. Mass.);
- *Velazquez v. Mass. Financial Services Co.*, 1:17-cv-11249 (D. Mass.);
- *Beach v. JPMorgan Chase Bank, N.A.*, No. 1:17-cv-00563 (S.D.N.Y);

- *Larson v. Allina Heath System*, No. 17-cv-03835 (D. Minn.); and

- *Mass v. The Regents of the University of California*, No. RG17-879223 (Alameda County Super. Ct.).

8. Our firm took the *Putnam* and *American Century* cases to trial in April 2017 and September 2018, respectively.[2] We received final court approval of settlements in *New York Life*, *American Airlines*, *Fujitsu*, *Allianz*, *BB&T*, *Oasis*, *Deutsche Bank*, *SEI*, *Massachusetts Financial Services*, and *Allina*, and also recently reached a settlement-in-principal with FMR LLC a/k/a Fidelity Investments (approval motion forthcoming). We won contested class certification motions in our cases against BB&T, Allianz, American Century, Putnam, Deutsche Bank, JPMorgan Chase, and the University of California. We also defeated motions to dismiss in several of these cases in whole or in part (*Putnam*, *American Airlines*, *BB&T*, *Allianz*, *Fujitsu*, *American Century*, *Massachusetts Financial Services*, *Deutsche Bank*, *JPMorgan Chase*, and *University of California*), as well as in *Morin v. Essentia Health*, 2017 WL 4083133 (Sept. 14, 2017), *report and recommendation affirmed,* 2017 WL 4876281 (D. Minn. Oct. 27, 2017), *Reetz v. Lowe's Companies, Inc.*, 2019 WL 4233616 (W.D.N.C. Sept. 6, 2019), *Nelsen v. Principal Global Investors Trust Company*, 362 F. Supp. 3d 627 (S.D. Iowa 2019), *Karpik v. Huntington Bancshares Inc.*, 2019 WL 7482134 (S.D. Ohio Sept. 26, 2019), and *Intravaia v. National Rural Electric Cooperative Association*, 2020 WL 58276 (E.D. Va. Jan. 2, 2020).

9. The firm is viewed as a leader in ERISA 401(k) cases. According to a recent Bloomberg BNA article, "Nichols Kaster has been the driving force" behind recent 401(k) self-dealing litigation. *See* Jacklyn Wille, *Deutsche Bank Can't Shake 401(k) Fee Lawsuit*, Bloomberg

---

[2] Although we did not prevail before the trial court in *Putnam*, we obtained a favorable ruling on appeal in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018).

BNA (Oct. 17, 2016). Attorneys from Nichols Kaster have been interviewed by National Public Radio (for the program "All Things Considered"), the Wall Street Journal, Bloomberg, Financial Times, Investment News, Bankrate.com, and several trade publications in connection with their ERISA work. I also have spoken by invitation at several national conferences and seminars on ERISA litigation, including (1) a webinar on "Fee Litigation" sponsored by the American Bar Association (November 12, 2019); (2) an employee benefits program sponsored by the American Law Institute (October 24, 2019); (3) a Professional Liability Directors & Officers conference on a panel regarding "Plan Fee Litigation" (February 6, 2019); (4) an American Bankers Association Insurance Risk Management Conference on a panel concerning excessive fee ERISA class actions (February 5, 2019); (5) an American Law Institute webcast on Excessive Fee Litigation (November 28, 2018); (6) the American Law Institute's tax-exempt and government plans education series (September 24, 2018), where I co-presented on "The Current State of Fee Litigation and Its Implications"; (7) the American Conference Institute's National Forum on ERISA Litigation (on both March 1, 2017 and November 2, 2017), where I was a member of the "Fiduciary Investment Litigation Update" panel; and (8) the Retirement Advisor Council's annual meeting (May 22, 2018), where I was a member of a panel on "The Moving Litigation Frontier".

10. Prior to joining Nichols Kaster, I served as the Manager of the Complex Litigation Division of the Office of the Minnesota Attorney General. During my tenure there (from February 2008 to March 2010), I supervised and handled a large number of complex matters. For example, in June and September of 2009, I co-chaired a three-week trial involving claims for fraudulent sales of annuities and legal plans to over 1,200 Minnesota senior citizens, which ultimately resulted in a favorable judgment from the trial court. In addition, I handled a significant consumer

enforcement action against Sprint Nextel related to wrongfully-imposed contracts and termination fees, which resulted in a comprehensive settlement in October of 2009.

11. I also had significant prior class action experience in private practice, including two multi-week class action trials: a statewide wage and hour class action against Wal-Mart Stores in Minnesota (tried in 2007) and a landmark class action against the University of Michigan Law School. *See Grutter v. Bollinger*, 539 U.S. 306 (2003).

12. I received my law degree from the University of Minnesota Law School in 1999, and my B.A. from Dartmouth College in 1995.

## Law Firm Overview

13. Nichols Kaster has been engaged in the practice of law for over 30 years, and is devoted to representing the interests of both consumers and employees. The firm has offices in Minneapolis and San Francisco, and currently employs 36 attorneys and a sizeable staff of paralegals, legal assistants, class action clerks, and information technology professionals. A copy of Nichols Kaster's law firm resume (which includes attorney biographies) is attached hereto as **Exhibit 1**.

14. Nichols Kaster has extensive class action and collective action experience. The firm has been appointed lead counsel or co-counsel on hundreds of class and collective actions, and has recovered over $750 million for its clients.

15. Nichols Kaster was named one of the top 50 elite trial firms by National Law Journal in September 2014, and also has been ranked as a Best Law Firm by U.S. News and World Report. In addition, Nichols Kaster has received praise from numerous courts for its work.

16. The firm's lawyers have litigated dozens of cases through trial, and have managed discovery in cases involving millions of pages of documents. The firm is also well regarded for its

appellate work, and recently has been involved in two successful appeals before the United States Supreme Court, *Perez v. Mortgage Bankers Ass'n*, 135 S.Ct. 1199 (2015) and *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2010).

## Work Performed by Class Counsel

17. As a result of our firm's experience litigating ERISA cases and other class action cases, we were able to efficiently and effectively handle this action.

18. Notwithstanding the efficient manner in which the matter was handled, Nichols Kaster has dedicated a significant amount of time to this case. Among other things, we: (1) conducted a thorough investigation of the class-wide claims; (2) drafted a detailed Complaint (ECF No. 1) and subsequently drafted a First Amended Complaint (ECF No. 25), Consolidated Complaint (ECF No. 35), and First Amended Consolidated Complaint (ECF No. 135); (3) responded to Defendant's Motion to Dismiss the Consolidated Complaint (ECF No. 52); (4) appeared before the Court for an initial case management conference; (5) moved for class certification (*see* ECF No. 93); (6) drafted a comprehensive set of discovery requests; (7) repeatedly met and conferred with Defendants during the course of discovery; (8) engaged in letter briefing related to discovery; (9) reviewed over 250,000 pages of documents and extensive class data produced by Defendants; (10) produced over 7,500 pages of documents; (11) responded to Interrogatories; (12) served subpoenas on three non-parties (Gordon Feinblatt LLC, Hodgson Russ LLP and T. Rowe Price) and reviewed more than 3,800 pages of documents produced by those non-parties; (13) engaged in motion practice related to Gordon Feinblatt's privilege designations; (14) deposed five fact witnesses; (15) defended five plaintiff depositions;[3] (16) consulted with three experts; (17) successfully moved to amend the Consolidated Complaint based on information

---

[3] Our co-counsel defended Ms. Allen's deposition.

gathered during the course of discovery (*see* ECF No. 132); (18) prepared a lengthy mediation statement and reply brief in advance of mediation; (19) attended a full day mediation session before retired federal district court judge Layn Phillips in California; (20) continued further negotiations through Judge Phillips until reaching a settlement-in-principle; (21) drafted the Settlement Agreement and exhibits thereto, including the Settlement Notices, Former Participant Claim Form, and proposed preliminary and final approval orders; (22) prepared Plaintiffs' Preliminary Approval Motion papers; (23) consulted with the Class Representatives throughout the course of the case; (24) solicited bids from three potential settlement administrators and selected Analytics Consulting LLC (Analytics") after reviewing the various bids that were submitted; (25) reviewed the final drafts of the Settlement Notices prepared by Analytics, and ensured that they were timely mailed by Analytics; (26) worked with Analytics to create a settlement website and telephone line for Class Members who wished to obtain additional information about the Settlement; (27) communicated with Class Members who contacted our office; and (28) prepared the present motion and supporting papers. This work is further detailed in my Declaration in Support of Preliminary Approval of Class Action Settlement (ECF No. 159).

19. The work summarized above required the efforts of numerous attorneys and professional staff at Nichols Kaster. Attached hereto as **Exhibit 2** is a true and correct copy of Nichols Kaster's timekeeper summary in this action. As reflected by this summary, Nichols Kaster attorneys have expended 3,393.50 hours pursuing this matter through the date of this Declaration, and Nichols Kaster professional staff (including paralegals, law clerks, legal assistants, class action clerks, and information technology professionals) have expended an additional 536.9 hours, for a total of 3,930.40 hours by Nichols Kaster personnel. Our co-counsel invested an additional 756.35 hours (as reported in their declarations), for a grand total of 4,686.75 hours invested by all Class

Counsel. We would be happy to provide detailed billing records if the Court deems them necessary or helpful.

20. Nichols Kaster's standard billing rates for ERISA actions such as this range from $625 to $875 per hour for attorneys with more than 10 years of experience, $425 to $575 per hour for attorneys with 10 years or less experience, and $250 per hour for paralegals and clerks.

21. In setting these rates, our firm is cognizant of the rates approved in other ERISA class action cases (as set forth in our accompanying Memorandum of Law), as well as the rates charged by the defense bar in this field. Attached hereto as **Exhibit 3** are excerpts of a report (the "Valeo Report") showing that among ERISA practice groups within the top 200 law firms, the 2017 hourly rate range for senior partners was $320-$1,363 (with an average of $835), for partners was $296-1,202 (with and average of $751), and for senior associates was $238-$938 (with an average of $580).

22. All of the work of Class Counsel has been undertaken on a contingent basis. To date, Class Counsel have not been compensated for any of this work. Based on the hourly rates and work performed, the total lodestar for our firm amounts to $2,208,942.50, and the total lodestar for all counsel amounts to $2,569,298 (see Declarations of Joseph Meltzer and Melanie Wolk).

23. In my professional opinion, and based on my personal knowledge of the work that was performed and the requirements of this case and similar cases, the time expended on this action by Class Counsel was reasonable and necessary.

24. After the date of this Declaration, we expect to perform additional work on behalf of the Settlement Class, including: (1) researching, drafting, and filing Plaintiffs' motion for final approval of the Settlement; (2) communicating with the Independent Fiduciary engaged by Defendants as part of the independent review of the proposed release on behalf of the Plan (as

called for by Prohibited Transaction Exemption 2003-39 and Article 3 of the Settlement Agreement); (3) preparing for and attending the Fairness Hearing; (4) if final approval is granted, supervising Analytics and the Escrow Agent (Alerus) to ensure proper and efficient distribution of payments to the Class Members; (5) responding to questions from Class Members; and (6) taking other actions necessary to support the Settlement until the conclusion of the Settlement Period. Based on my experience supporting and supervising similar settlements, I estimate that Class Counsel will expend at least an additional 50 to 150 hours of professional time after the date of this Declaration.

## Class Counsel's Costs and Expenses

25. In connection with the action, Nichols Kaster also has advanced a significant amount of expenses.

26. Because our firm handled this action on a contingent basis, we have not yet received reimbursement for any of these expenses.

27. As of the date of this Declaration, Nichols Kaster has incurred $160,839.28 in litigation-related expenses in connection with this matter. These expenses are broken down below:

| Category | Cost |
| --- | --- |
| Expert fees | $ 56,658.75 |
| Travel Expenses | $ 31,405.53 |
| Mediation | $ 31,892.00 |
| Depositions | $ 21,835.46 |
| Financial Data Charges | $ 12,064.88 |
| Postage, Shipping, Copies | $ 888.47 |
| Westlaw/PACER | $ 3,682.93 |
| Filing fees | $ 1,236.00 |
| Process/Courier Service | $ 1,080.25 |
| Public records | $ 95.01 |
| **TOTAL** | **$ 160,839.28** |

In addition, our co-counsel have incurred $9,128.95 in litigation expenses, for a total of $169,968.23 in litigation expenses.

28. These expenses do **not** include expenses of settlement administration (totaling $91,322), which are broken out separately below. *See infra* at ¶¶ 32, 34, 35. In the event that the Court would like further detail or documentation concerning these expenses, we would be happy to provide it.

29. In my professional opinion, and based on my experience prosecuting this action and overseeing the conduct of the litigation, these expenses were reasonable and necessarily incurred in connection with the action.

30. In addition to these expenses, it is anticipated Nichols Kaster will incur additional expenses in connection with this case going forward, including certain incidental expenses that will be incurred in connection with appearing for the final approval hearing (meals, ground transportation, etc.). We do not intend to seek reimbursement of those additional expenses.

### Settlement Administration Expenses

*Analytics*

31. Nichols Kaster solicited bids from several settlement administration firms in connection with this action. After reviewing the various bids, we selected Analytics Consulting, LLC ("Analytics") because Analytics has extensive experience handling class action settlements, including ERISA settlements, and submitted the least expensive bid. Analytics' firm resume is attached hereto as **Exhibit 4**.

32. Based on the bid submitted by Analytics, it will cost $73,822 to administer the settlement in this action. This is reasonable based on my experience handling similar cases and in light of the bids that our firm received.

33. Analytics has diligently carried out its duties as Settlement Administrator by, among other things, (1) preparing and mailing the Settlement Notices; (2) searching for valid addresses for any Settlement Class Members whose Notices were returned as undeliverable; (3) establishing a telephone support line for Class Members; (4) creating and maintaining the settlement website; and (5) communicating regularly with the Parties regarding the status of settlement administration. Analytics also is also in the process of reviewing the Claim Forms submitted by Former Participants, and upon final approval of the Settlement, Analytics will facilitate delivery of settlement payments to Class Members as provided by the Settlement.

*Alerus*

34. Class Counsel selected Alerus to perform the duties of the Escrow Agent under the Settlement Agreement. Alerus has agreed to perform those duties for a fee of $2,500. Alerus successfully performed a similar role with respect to the ERISA settlements overseen by our firm in the *New York Life, American Airlines, Fujitsu, Allianz, Oasis, Deutsche Bank, SEI, and Massachusetts Financial Services* cases referenced above (*see supra* at ¶¶ 7-8). Alerus has performed its role competently in these cases and the present case, and I believe its fee is reasonable in light of the services provided and the size of the Settlement Fund.

*Independent Fiduciary*

35. Additional administrative expenses will be incurred relating to the review of the proposed release on behalf of the Plan by the independent fiduciary appointed pursuant to PTE 2003-39 and Article III of the Settlement. Under the Settlement Agreement, Defendants are responsible for arranging this review by the Independent Fiduciary, and the expense is an Administrative Expense that may be paid from the Gross Settlement Amount. We understand that the Defendants engaged Fiduciary Counsellors Inc. to perform the role of the Independent Fiduciary, and the fee for Fiduciary Counsellors Inc.'s services in this matter will be $15,000.

### Assistance of the Class Representatives

36. It has been my honor to represent the Class Representatives in this matter.[4]

37. Throughout the course of this action, the named Plaintiffs have been mindful of their responsibilities as Class Representatives, and have actively participated in the action. Among other things, the Class Representatives (1) reviewed the operative complaints bearing their names; (2) provided documents and information prior to suit and during discovery; (3) reviewed their answers to interrogatories; (4) appeared for their depositions; (5) made themselves available by phone for the mediation; (6) communicated with our firm throughout the course of the action; and (7) discussed the Settlement with counsel and reviewed the Settlement Agreement.

38. Based on the time and assistance that the named Plaintiffs have provided as Class Representatives, and their initiative in pursing this action, I believe that the requested class representative service awards are reasonable and appropriate. As noted in our motion papers, the amount that the Class Representatives are seeking ($10,000) is consistent with other ERISA cases.

### No Objections

39. The Settlement Notices that were approved by the Court disclosed the terms of the Settlement and also contained a "Statement of Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation Sought in the Class Action." To my knowledge, none of the Settlement Class Members have objected to the Settlement terms or the proposed fees, expenses, or service awards as of the date of this motion.

---

[4] In connection with the representation, the Class Representatives agreed to a one-third contingency fee, and to reimbursement of expenses in the event that the action was successfully resolved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 24, 2020

<u>s/Kai Richter</u>
Kai Richter