**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

*In re M&T Bank Corporation ERISA Litigation*

Civil Action No.: 1:16-cv-375-FPG-JJM

**Consolidated Action**

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**</u>
<u>**APPROVAL OF CLASS ACTION SETTLEMENT**</u>

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 1

I.    PROCEDURAL HISTORY ............................................................................... 1

    A.    Pleadings and Motion Practice................................................................ 1

    B.    Discovery ................................................................................................ 2

    C.    Mediation ................................................................................................ 3

II.   SETTLEMENT TERMS .................................................................................... 3

    A.    The Settlement Class ............................................................................... 3

    B.    Monetary Relief....................................................................................... 4

    C.    Prospective Relief.................................................................................... 5

    D.    Release of Claims .................................................................................... 6

III.  PRELIMINARY APPROVAL OF SETTLEMENT ........................................... 6

IV.   CLASS NOTICE AND REACTION TO SETTLEMENT .................................. 7

V.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY ..................... 9

ARGUMENT ............................................................................................................ 10

I.    STANDARD OF REVIEW .............................................................................. 10

II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............. 12

    A.    The Recovery Provided by the Settlement Is Fair, Reasonable, and Equitable ...................................................................................................... 13

    B.    Continued Litigation Would Have Entailed Significant Risk...................... 15

    C.    ERISA Class Cases Are Complex, Expensive and Often Lengthy .............. 16

    D.    The Case Was Ripe for Settlement ............................................................ 18

E.    The Independent Fiduciary and Class Members Support the Settlement, and the Only "Objection" Received Has Been Resolved .................................... 19

F.    The Ability of M&T Bank to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors ......... 21

III.   THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE ...................... 21

IV.   THE CLASS NOTICE WAS REASONABLE ......................................................... 22

V.    THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL ................................ 23

CONCLUSION ............................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ......................................................... 17, 18

*Acevedo v. Workfit Med. LLC*,
    187 F. Supp. 3d 370 (W.D.N.Y. 2016) ...................................................................... 13

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................................ 19

*Andrus v. New York Life Ins. Co.*,
    No. 1:16-cv-05698, ECF No. 84 (S.D.N.Y June 15, 2017) ........................................ 20

*Berni v. Barilla G. e R. Fratelli, S.p.A.*,
    332 F.R.D. 14 (E.D.N.Y. 2019) ................................................................................ 11

*Brotherston v. Putnam Invs., LLC*,
    2017 WL 2634361 (D. Mass. June 19, 2017) ............................................................ 15

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018) ....................................................................................... 15

*Brotherston v. Putnam Invs., LLC*,
    No. 1:15-cv-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) ....................................... 15

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................................................................... 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................... 11

*Clark v. Ecolab Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................................ 11

*Cunningham v. Cornell Univ.*,
    2019 WL 4735876 (S.D.N.Y. Sept. 27, 2019) ........................................................... 16

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................................ 21

*Dardaganis v. Grace Capital Inc.*,
    889 F.2d 1237 (2d Cir. 1989) .................................................................................... 16

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985).................................................................................16

*Fleisher v. Phoenix Life Ins. Co.*,
2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)..........................................................22

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)....................................................................11, 19

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000).....................................................................17

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..........................................................................13

*In re Med. X-Ray Film Antitrust Litig.*,
1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)..............................................................18

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ..........................................................................20

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................23

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ..............................................................15, 19, 21

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)..................................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .....................................................................13

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................19

*In re WorldCom, Inc. ERISA Litig.*,
2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ..........................................................15

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..................................................................................10

*Johnson v. Fujitsu Tech. & Business of Am., Inc.*,
2018 WL 2183253 (N.D. Cal. May 11, 2018) ..........................................................13

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
    2016 WL 6542707 (D. Conn. Nov. 3, 2016) ........................................................ 12, 17

*Krueger v. Ameriprise Fin., Inc.*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ........................................................ 17, 18

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ........................................................... 18

*Langford v. Devitt*,
    127 F.R.D. 41 (S.D.N.Y. 1989) ................................................................................. 22

*Main v. American Airlines, Inc.*,
    No. 4:16-cv-00473, ECF No. 127-2 (N.D. Texas July 7, 2017) ................................ 14

*Main v. American Airlines, Inc.*,
    No. 4:16-cv-00473, ECF No. 137 (N.D. Texas Feb. 21, 2018) ................................ 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ...................................................................................... 10

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007) ................................................................................ 14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................... 15

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ....................................................... 14, 21

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    1:15-cv-09936, ECF No. 322-1 (S.D.N.Y. Aug. 14, 2018) ....................................... 14

*Moreno v. Deutsche Bank Americas Holding Corp.*,
    1:15-cv-09936, ECF No. 347 (S.D.N.Y. Mar. 1, 2019) ............................................ 13

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ....................................................................... 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
    2020 U.S. Dist. LEXIS 92724 (S.D.N.Y. May 27, 2020) ........................................... 12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................................... 22

*Reyes v. Buddha-Bar NYC,*
    2009 WL 5841177 (S.D.N.Y. May 28, 2009) ........................................................ 15

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 17

*Sacerdote v. New York Univ.,*
    2018 WL 3629598 (S.D.N.Y. July 31, 2018) ..................................................... 15. 16

*Tibble v. Edison Int'l,*
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ........................................................ 18

*Tibble v. Edison,*
    135 S. Ct. 1823 (2015) ............................................................................................. 17

*Tussey v. ABB, Inc.,*
    746 F.3d 327 (8th Cir. 2014) .................................................................................... 17

*Tussey v. ABB, Inc.,*
    850 F.3d 951 (8th Cir. 2017) .................................................................................... 17

*Tussey v. ABB Inc.,*
    2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ....................................................... 18

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
    No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) ..................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................................ passim

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982) ........................................................................... 11, 12, 23

*Wildman v. Am. Century Servs., LLC,*
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ............................................................. 15, 16

## Rules and Statutes

Prohibited Transaction Exemption 2003-39,
68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830 ............................................... 9

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 22

Fed. R. Civ. P. 23(e)(2) .................................................................................... 10, 11

Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendments ..................... 12

**<u>Other Authorities</u>**

4 Newberg On Class Actions § 11:41 (4th ed. 2002)........................................................... 10

## INTRODUCTION

On April 14, 2020, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the M&T Bank Corporation Retirement Savings Plan ("Plan").[1] *ECF No. 168.* The Court found on a preliminary basis that the terms of the Settlement are "sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed settlement to the proposed settlement class," and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id. ¶¶ 1.D, 5.* Since that time, an Independent Fiduciary has confirmed that the Settlement terms are reasonable. *See Declaration of Kai Richter in Support of Motion for Final Approval ("Third Richter Decl.") Ex. A.* Moreover, the only "objection" to the Settlement solely concerned a participant's inadvertent misclassification as a Former Participant rather than a Current Participant, an issue that has been resolved. *See Third Richter Decl. ¶ 4 & Ex. B.* Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. Defendants do not oppose this motion as parties to the Settlement.

## BACKGROUND

### I.   PROCEDURAL HISTORY[2]

#### A.   Pleadings and Motion Practice

On May 11, 2016, Plaintiffs Sa'ud Habib, Beverly Williams, J. Marlene Smith, Kenneth Sliwinski, and Russ Dixon filed a Class Action Complaint (*ECF No. 1*) against M&T Bank Corporation ("M&T Bank") and related defendants, asserting claims under ERISA in relation to

---

[1] Unless otherwise specified, all capitalized terms have the meaning assigned to them in Article 2 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 159-1.

[2] The procedural history of the litigation was previously recounted in Plaintiffs' briefing in support of their motion for preliminary approval of the Settlement (*ECF No. 158*) and their pending motion for attorneys' fees, costs, and class representative service awards (*ECF No. 175*). For ease of reference, Plaintiffs have recounted that history here.

the management of the Plan. These Plaintiffs filed a First Amended Class Action Complaint on August 17, 2016. *ECF No. 25*. On September 1, 2016, Plaintiff Jacqueline Allen filed a related action asserting similar claims against M&T Bank and many of the same Defendants. A Consolidated Complaint was then filed on August 25, 2017. *ECF No. 35.*

On October 10, 2017, Defendants moved to dismiss certain claims in the Consolidated Complaint. *ECF No. 41*. On September 11, 2018, the Court granted in part and denied in part Defendants' partial motion to dismiss. *See ECF No. 68.*[3] Plaintiffs then moved to amend their Consolidated Complaint by naming an additional fiduciary defendant, and adding allegations related to Defendants' alleged failure to prudently monitor recordkeeping expenses. *See ECF No. 83*. Defendants opposed Plaintiffs' motion. *ECF Nos. 91, 114.* On August 12, 2019, the Court granted Plaintiffs' motion to amend. *ECF No. 132.* Plaintiffs then filed their First Amended Consolidated Complaint on August 15, 2019 (*ECF No. 135*), and Defendants filed an Answer on August 29, 2019. *ECF No. 141*. On March 25, 2019, Plaintiffs filed a motion for class certification, which Defendants opposed. *See ECF Nos. 94, 116, 121*. That motion was not decided by the Court by the time the parties agreed to settle this matter.

**B.    Discovery**

During the course of the litigation, the parties engaged in extensive discovery. Defendants produced over 250,000 pages of documents, and Plaintiffs produced over 7,500 pages. *Decl. of Kai Richter in Support of Pls' Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl."), ECF No. 159*, *¶ 16*. In addition, Class Counsel took the depositions of five witnesses, and Defendants deposed all six named Plaintiffs. *Id. ¶ 18*. Plaintiffs also engaged in third-party discovery, through which they obtained over 3,800 pages of documents from three

---

[3] Plaintiffs' claims regarding alleged breaches of fiduciary duties and prohibited transactions with parties-in-interest survived the motion to dismiss. *Id.*

different entities. *Id. ¶ 17.* Further, the Parties engaged in two pre-motion teleconferences with the Court regarding certain discovery disputes. *See ECF Nos. 90, 138.*[4] At the time the Parties reached a settlement-in-principle, the close of fact discovery was only one month away. *See First Richter Decl. ¶ 22* (noting the Parties reached their settlement-in-principle on September 26, 2019); *see also ECF No. 125 ¶ 1* (requiring fact discovery to be completed by October 31, 2019).

### C.   Mediation

On February 18, 2019, the parties participated in a full-day mediation with the Honorable Layn Phillips, a retired United States district court judge. *ECF No. 120.* Although the parties did not reach a settlement at that time, they agreed to continue their negotiations with the assistance of Judge Phillips. *First Richter Decl. ¶ 21.* As a result of these continued negotiations, the parties reached a settlement-in-principle on September 26, 2019. *Id. ¶ 22.* The terms of the parties' settlement are memorialized in the Settlement Agreement that is the subject of this motion. *Id.*

## II.   SETTLEMENT TERMS

### A.   The Settlement Class

In granting preliminary approval of the Settlement Agreement, the Court preliminarily certified the following Settlement Class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the M&T Bank Corporation Retirement Savings Plan, at any time during the Class Period from May 11, 2010 through September 30, 2019.

*ECF No. 168 ¶ 4.* This class definition is consistent with the definition that Plaintiffs proposed in their class certification motion (*ECF No.* 93), and now contains an end date for the Class Period.

---

[4] At the time of settlement, Plaintiffs were pursuing a motion regarding privilege designations made by the Plan's outside counsel, Gordon Feinblatt LLC. *See ECF No. 142.*

### B.   Monetary Relief

Under the Settlement, M&T Bank or its insurers have contributed a Gross Settlement Amount of $20.85 million to a common settlement fund (the "Settlement Fund"). *Settlement* (*ECF No. 159-1*) *¶¶ 2.30, 5.4-5.5.* All monies deposited in the Qualified Settlement Fund are held in an interest-bearing Escrow Account by an Escrow Agent (Alerus Financial). *Id. ¶¶ 2.24, 5.1, 5.6.* In the event that the Settlement receives final court approval and becomes effective, the Settlement Fund will be distributed to Class Members within 60 days after the Settlement Effective Date, pursuant to the Plan of Allocation in the Settlement Agreement (net of deductions for any approved payments of attorneys' fees and costs, administrative expenses, and Class Representative service awards).[5] *Settlement ¶¶ 2.36, 5.8, 6.1.*

Under the proposed Plan of Allocation, the Net Settlement Amount will be allocated among eligible Class Members in proportion to their weighted quarterly account balances in the Plan's investment options.  *Id. ¶ 6.4.* Consistent with the loss calculations of Plaintiffs' damages expert (Dr. Steve Pomerantz), Class Members' balances in (1) proprietary funds and (2) funds for which Plaintiffs alleged a less expensive investment vehicle was available, will be weighted more heavily than balances in the Plan's other investments.  *Id. ¶ 6.4.1*; *see also First Richter Decl. ¶ 9.*

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Settlement ¶ 6.5.* Former Participants will be required to submit a claim form (by August 24, 2020), which allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by

---

[5] Plaintiffs filed a separate Motion for Approval of Attorneys' Fees, Expenses and Service Awards on June 24, 2020. *ECF No. 174*.  Pursuant to the Settlement Agreement, any approved compensation for Class Counsel will be distributed at the same time as the distribution to the Settlement Class. *Settlement ¶ 5.8.*

check. *Id. ¶ 6.6.*[6]  Under no circumstances will any monies revert to M&T Bank or its insurers.

Any checks that are uncashed will revert to the Qualified Settlement Fund and will be paid to the

Plan for the purpose of defraying administrative fees and expenses of the Plan.  *Id. ¶¶ 6.11, 6.12.*

C.     **Prospective Relief**

The Settlement also provides that the following procedures shall apply to the management

of the Plan on a prospective basis:

- The Committee shall retain an independent investment consultant (not related to M&T Bank or any of its affiliates) to provide a written opinion, within (6) six months of the Settlement Effective Date, on the selection, retention, or evaluation of any proprietary mutual fund in the Plan listed in Group A of the Settlement Agreement, or the share class of any such proprietary mutual funds (if selected or retained), which the Committee shall consider in good faith;

- To the extent any proprietary mutual funds listed in Group A are retained in the Plan, those mutual funds shall rebate to the Plan (or its recordkeeper) the same percentage of investment management fees rebated to other retirement plans (or their recordkeepers) that hold the same share class of such proprietary mutual funds;

- The Committee shall retain an independent investment consultant (not related to M&T Bank or any of its affiliates) to provide a written opinion, within six (6) months of the Settlement Effective Date, regarding whether any of the existing proprietary or non-proprietary mutual funds in the plan should be replaced with alternative investment vehicles (e.g., separate accounts or collective trusts) for the same or equivalent mutual funds, which the Committee shall consider in good faith; and

- Within sixty (60) days of the Settlement Effective Date, Defendants shall issue a request for information to multiple potential vendors for recordkeeping services, and shall consider any information received in response in good faith to choose the best recordkeeping services available to the Plan, which consideration shall include the amount of recordkeeping expenses paid by the Plan, whether directly or indirectly through revenue sharing, and quality of services provided to Plan participants.

*Settlement, ¶ 7.1(a)-(d).* Subject to the foregoing, the Investment Committee shall retain the

responsibilities and authority vested to it by the Plan Document.  *Id. ¶ 7.1(e).*

---

[6] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks.

### D.   Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release

Defendants and certain affiliated persons and entities (the "Released Parties") from all claims:

**2.42.1**   That were asserted in the Action, or that arise out of, relate to, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences that were alleged, asserted, or set forth in the Action, including but not limited to those that arise out of, relate in any way to, are based on, or have any connection with: (1) the overall structure, management, or monitoring of the Plan's investment menu, (2) the selection, monitoring, oversight, retention, fees, expenses, or performance of the Plan's investment options and service providers, (3) fees, costs, or expenses charged to, paid, or reimbursed by the Plan, (4) disclosures or failures to disclose information regarding the Plan's investment options or service providers, (5) the investment options offered to Plan participants, (6) the selection of vendors and providers for the Plan, (7) the services provided to the Plan or the costs of those services, (8) any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties, (9) any assertions regarding revenue sharing paid, received, or not recaptured in connection with the Plan; (10) engaging in self-dealing or prohibited transactions in relation to the investment options available under the Plan or services provided to or for the Plan, and/or (11) any assertions with respect to any fiduciaries of the Plan (or the selection or monitoring of those fiduciaries) in connection with the foregoing;

**2.42.2**   That would be barred by res judicata based on entry by the Court of the Final Approval Order;

**2.42.3**   That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund pursuant to the Plan of Allocation; or

**2.42.4**   That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*See Settlement ¶¶ 2.41, 2.42.*

## III.   PRELIMINARY APPROVAL OF SETTLEMENT

On April 14, 2020, the Court issued an Order granting preliminary approval of the proposed

Settlement. *See ECF No. 168.* In its Order, the Court preliminarily certified the Settlement Class

for Settlement purposes and found that the terms of the Settlement were "sufficiently fair,

reasonable, and adequate to warrant sending notice of the proposed settlement to the proposed settlement class ...." *Id. ¶¶ 1.D, 5.* The Court therefore approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *Id.* In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Settlement Notices, and carry out the other duties specified by the Settlement Agreement. *Id. ¶¶ 3, 5.B.*

## IV.   CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed Settlement Notices to each of the Class members identified by the Plan's recordkeepers. *See Declaration of Caroline Barazesh ("Barazesh Decl.") ¶¶ 8.* In total, 39,492 Settlement Notices were mailed. *Id.*[7]

Prior to sending these Notices, Analytics cross-referenced the addresses on the Class List with the United States Postal Service National Change of Address Database. *Id. ¶ 7.* In the event that any Settlement Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 14-15.* As a result, the notice program was very effective. Out of 39,492 Settlement Notices that were mailed, only 2.15% were

---

[7] As discussed more fully in the Parties' Joint Motion for Approval of Supplemental Class Member Communication, due to a miscommunication between the Plan's recordkeeper and the Settlement Administrator, certain members of the Settlement Class who had participated in the Plan during the Class Period and had an Active Account in the Plan as of September 30, 2019 (and who therefore qualify as "Current Participants" under the Settlement Agreement, *see Settlement ¶ 2.19*), but who had left employment at M&T Bank, received a Former Participant Claim Form in error. *See ECF No. 172; see also ECF No. 173* (granting motion). On June 26, 2020, affected Class Members were sent a Supplemental Communication informing them of the error, and reassuring them that their share of the Settlement proceeds will be deposited directly into their Plan account so long as they maintain an Active Account through the time that Settlement monies are distributed, and that if they no longer have an Active Account at the time that Settlement monies are distributed, they will receive their payment by check (as provided under the Settlement Agreement, *¶ 6.5.6). See ECF No. 172-1* (supplemental communication); *see also Barazesh Decl. ¶¶ 10-13.*

ultimately undeliverable despite these efforts. *Id. ¶ 16.*

If any Class Members desired further information, Analytics established a settlement website at www.mt401ksettlement.com. *Id. ¶ 17.* Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including the Settlement Notices, Former Participant Claim Form, Settlement Agreement, Preliminary Approval Order, First Amended Consolidated Complaint, and Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards and related documents); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-844-955-2820) as a resource for Class Members seeking information about the Settlement. *Id. ¶ 18.* This telephone number was referenced in the Notices, and also appears on the settlement website. *Id.*

The deadline to submit objections to the Settlement was July 24, 2020. *ECF No. 168 ¶ 7.* As of that date, only one communication styled as an objection was received. *See Third Richter Decl. ¶ 4 & Ex. B.*[8] The single "objection" solely concerned a participant's inadvertent misclassification as a Former Participant rather than a Current Participant, not the substance of the Settlement. *Id.* The "objection" stated, in its entirety:

> I received a Notice of Class Action Settlement and Fairness Hearing regarding the M&T Bank Corporation ERISA Litigation, Civil Action No.:1:16-cv-375-FPG-JJM Consolidated Action (see attached). This Notice states if I have any objections to this Settlement, I should file an objection with you.
>
> Please note my objection to this Settlement is that I have been misclassified as a Former Participant, please see attached Former Participant Claim Form. Per the Settlement Notice, a Class Member with one or more accounts with a positive balance in the M&T Bank Corporation Retirement Savings Plan as of September

---

[8] No further objections have been received since that time. *Third Richter Decl. ¶ 4.*

30, 2019, is a Current Participant. Please see my attached M&T Bank Corporation Retirement Savings Plan Account Summary as of December 31, 2019.

Please correct my classification from Former to Current Participant. Please send me documentation that my classification has been corrected and there is nothing further I need to do to participate in this Settlement.

Thank you for your attention to this matter.

*Third Richter Decl. Ex. B.* The class member who sent this communication was among those Class Members who had participated in the Plan during the Class Period and had an Active Account in the Plan as of September 30, 2019 (and who therefore qualifies as a "Current Participant" under the Settlement Agreement, *see Settlement ¶ 2.19*), but who had left employment at M&T Bank, and received a Former Participant Claim Form in error. *See supra n.7.* This class member was sent the Court-approved Supplemental Communication, and an additional follow-up letter from Class Counsel asking the class member to contact Class Counsel if he still had any concerns. *Third Richter Decl. ¶ 4.* As of the date of the filing of this Motion, Class Counsel has not received any subsequent communication from this class member, and considers the issue resolved. *Id.*

## V.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement and applicable ERISA regulations,[9] the Settlement was submitted to an independent fiduciary (Fiduciary Counselors) for review following the Court's preliminary approval order. *See Third Richter Decl. Ex. A.* After reviewing the Settlement and other case documents, and interviewing counsel for each of the Parties, the Independent Fiduciary concluded that: (1) "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's

---

[9] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone"; (2) "The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances"; and, (3) "The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id. at 1*. Accordingly, the Independent Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plan in accordance with Prohibited Transaction Exemption 2003-39 ("PTE 2003-39")." *Id.*

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). After notice to class members and a hearing, a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not the product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).

The decision whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). However, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002). As a result, "Courts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential

risks and rewards of litigation . . . ." *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted).

A court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case" because "[s]uch procedure would emasculate the very the purpose for which settlements are made." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal quotation marks omitted). "Instead, there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.*

In determining whether a proposed class action settlement is fair, reasonable, and adequate, courts review both the "substantive terms" of the settlement and the "process" by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 73-74 (2d Cir. 1982). Federal Rule of Civil Procedure 23(e)(2), as amended (effective December 2018), identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"). *See Berni v. Barilla G. e R. Fratelli, S.p.A.*, 332 F.R.D. 14, 23 (E.D.N.Y. 2019) (noting the Rule 23(e)(2) factors "overlap almost entirely with existing Second Circuit precedent. . . ." ). Thus, courts in this circuit continue to use the *Grinnell* factors in assessing whether a settlement is "fair, reasonable, and adequate."

*See In re Namenda Direct Purchaser Antitrust Litig.,* 2020 U.S. Dist. LEXIS 92724, at \*4 (S.D.N.Y. May 27, 2020)("courts in the Second Circuit use [the *Grinnell* factors] in tandem with Rule 23 to determine a class settlement warrants final approval.").[10]

The *Grinnell* factors that guide the court's review include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of litigation. *Grinnell,* 495 F.2d at 463; *see also Wal-Mart Stores*, 396 F.3d at 117; *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at \*7 (D. Conn. Nov. 3, 2016) (applying *Grinnell* factors in determining that recent ERISA class settlement was "substantively fair" for plan participants). Additionally, regarding the settlement process, courts look for "arms-length negotiations", "experience[d]" counsel, and "effective representation of the interests" in the negotiations. *Weinberger,* 698 F.3d at 74.

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The relevant factors outlined above overwhelmingly favor approval of the Settlement in this case.

---

[10] *See also* Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendments ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. Courts have generated lists of factors to shed light on this concern. . . . The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.")

**A.    The Recovery Provided by the Settlement Is Fair, Reasonable, and Equitable**

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement "[is] reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. A at 1.*  On a gross basis, the $20.85 million settlement represents (depending on the model) between approximately 50% to 80% of the damages associated with the proprietary funds in the Plan, and over 28% of total estimated damages. *See First Richter Decl., ¶ 8.* These recovery percentages compare favorably to other class action settlements. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses of $47 million); *Johnson v. Fujitsu Tech. & Business of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages."); *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370, 381 (W.D.N.Y. 2016) (recovery of approximately 23% of  maximum recoverable damages was reasonable); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (approving recovery of approximately 13% of maximum provable damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Moreover, the Settlement compares favorably to other class action settlements when measured as a percentage of total plan assets.  *See First Richter Decl. ¶ 6.* An excellent case in point is the settlement that was recently approved in another 401(k) lawsuit involving Deutsche Bank in the Southern District of New York.  *See Moreno v. Deutsche Bank Americas Holding Corp.*, 1:15-cv-09936, ECF No. 347 (S.D.N.Y. Mar. 1, 2019). Like the present case, that case also involved a 401(k) plan lineup with some proprietary funds and some non-proprietary funds, and

allegations relating to the expenses of the plan's recordkeeper. *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *1 (S.D.N.Y. Sept. 5, 2017) (recounting allegations relating to proprietary funds and failure to control recordkeeping expenses). The recovery here is similar to *Deutsche Bank* on an absolute basis ($20.85 million vs. $21.9 million), and higher on a percentage-of-assets basis (0.82% here, versus 0.65% in *Deutsche Bank*). *First Richter Decl. ¶ 6.*

As noted above, the monies in the Settlement Fund will be distributed equitably pursuant to a common formula based on the estimated losses calculated by Plaintiffs' damages expert. *See supra* at 4. Similar methods of distribution have been approved in other ERISA cases. *See, e.g.*, *Moreno*, ECF No. 322-1 at ¶ 6.4.1 (allocating settlement fund based on participants' weighted quarterly account balances during the class period, with proprietary funds weighted more heavily than non-proprietary funds) & ECF No. 347 (approving settlement); *Main v. American Airlines, Inc.*, No. 4:16-cv-00473, ECF No. 127-2 at ¶ 6.4.1 (N.D. Texas July 7, 2017) (providing for similar weighted distribution) & ECF No. 137 (N.D. Texas Feb. 21, 2018) (approving settlement). Likewise, the procedure whereby current participant accounts are automatically credited, and former participants submit a claim to obtain their share of the Settlement and specify the manner in which their proceeds should be distributed, is also consistent with previously-approved settlements. *See Moreno*, ECF No. 322-1 at ¶¶ 6.5-6.6; *Main*, ECF No. 127-2 at ¶¶ 6.5-6.6; *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 478-79 (E.D. Pa. 2007). Notably, none the monies in the Settlement Fund will revert to Defendants. *See supra* at 5.

In addition to the foregoing monetary compensation, the Settlement also provides for meaningful prospective relief. *First Richter Decl. ¶ 10.* As noted above, M&T Bank has agreed that (1) the proprietary funds in the Plan will be evaluated by an independent investment

consultant, (2) the investment vehicle for all Plan mutual funds also will be evaluated, (3) the Plan will be treated no less favorably than other plans with respect to fee rebates on proprietary funds, and (4) a request for information will be issued with respect to recordkeeping. This prospective relief directly addresses the issues that Plaintiffs raised in the lawsuit (self-interested retention of proprietary funds, failure to consider alternative investment vehicles, and excessive recordkeeping fees), and further supports approval of the Settlement. *See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (noting settlement provided for "meaningful injunctive relief", and concluding that settlement was "fair, reasonable, and adequate"); *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009).

### B.    Continued Litigation Would Have Entailed Significant Risk

In the absence of a Settlement, Plaintiffs would have faced litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."). These risks are demonstrated by a judgment entered in favor of the defendants following the trial of another recent ERISA action in the Southern District of New York involving the NYU retirement plan.  *See Sacerdote v. New York Univ.*, 2018 WL 3629598 (S.D.N.Y. July 31, 2018). While the facts of that case differed from those here, two other recent ERISA 401(k) cases involving proprietary funds also resulted in trial judgments in favor of the defendants. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Brotherston v. Putnam Invs., LLC*, 2017 WL 2634361 (D. Mass. June 19, 2017).[11] Thus, although Plaintiffs

---

[11] The trial court's decision in *Brotherston* was later vacated in part by the First Circuit. *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018). Following the Supreme Court's denial of defendants' petition for certiorari, the parties settled the case before the trial was completed (after more than four years of litigation). *See Brotherston v. Putnam Invs., LLC*,  No.

believe there is strong support for their case, it is uncertain whether they would have prevailed at trial.

Moreover, even if Plaintiffs proved a fiduciary breach, Plaintiffs still faced potential hurdles in proving losses. As the Second Circuit has noted, there are inherent "uncertainties in fixing damages" in cases such as this. *Dardaganis v. Grace Capital Inc*., 889 F.2d 1237, 1244 (2d Cir. 1989); *see also Donovan v. Bierwirth*, 754 F.2d 1049, 1058 (2d Cir. 1985) (such determinations are "of necessity somewhat arbitrary"). Once again, the *Sacerdote* case illustrates the risks that plaintiffs face in attempting to prove losses caused by a fiduciary breach. The trial court in *Sacerdote* found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that . . . the Plans suffered losses as a result." 2018 WL 3629598, at \*2; *see also Cunningham v. Cornell Univ.*, 2019 WL 4735876, at \*7 (S.D.N.Y. Sept. 27, 2019) (concluding on summary judgment that plaintiffs had failed to prove losses related to allegedly excessive recordkeeping expenses); *Wildman*, 362 F. Supp. 3d at 710 (finding that "Plaintiffs failed to prove a loss to the Plan"). Although Plaintiffs believed that their damages expert developed appropriate loss models under governing law, it was uncertain how the Court would have ruled on this issue or what amount of damages (if any) would have been awarded.

### C.     ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Aside from these risks, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to Class Members (at

---

1:15-cv-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

best), and might have resulted in no relief at all.  These considerations also support approval of the Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom., D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  ERISA cases are no exception. *See Kemp-DeLisser,* 2016 WL 6542707, at *9 (finding complex damages analysis weighed in favor of ERISA class settlement); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"). It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015).

Even if Plaintiffs prevailed on their motion for class certification, survived any motion for summary judgment from Defendants, and then prevailed at trial, there is a strong likelihood that Defendants would have appealed any adverse rulings to the Second Circuit.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that defendants "would undoubtedly have appealed certification if there were a final, adverse judgment"). Moreover, any appeal to the Second Circuit might not have ended there, and could have resulted in a remand for further trial court proceedings (as the First Circuit ordered in *Putnam* and as other circuit courts have ordered in ERISA cases – sometimes multiple times),[12] or further appellate proceedings before the Supreme Court (as happened in *Tibble*).[13]

---

[12] *See, e.g., Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey v. ABB, Inc.*, 850 F.3d 951, 958-61 (8th Cir. 2017), *cert. denied,* No. 17-265, 2017 WL 3594208 (U.S. Oct. 2, 2017) (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses").
[13] *See Tibble v. Edison*, 135 S. Ct. 1823 (2015).

At a minimum, continuing the litigation would have resulted in complex and costly proceedings before this Court, which would have significantly delayed any relief to Class Members, and might have resulted in no relief at all. It is well-recognized that ERISA 401(k) cases "often lead[] to lengthy litigation." *See Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, it is not unusual for ERISA cases to extend a decade or longer before final resolution. *See Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006"); *First Richter Decl. ¶ 12* (noting that "the *Boeing* litigation lasted nearly a decade before it was settled"). Given the risks, cost, and delay of further litigation, it was reasonable for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways"); *accord*, *In re Med. X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *3 (E.D.N.Y. Aug. 7, 1998) ("[C]ontinued litigation would require significant amounts of time on the part of the litigants, with accompanying expense . . . . Accordingly, the complexity of this case as well as the probable duration and expense of further litigation favor approval of the proposed settlement.").

### D.   The Case Was Ripe for Settlement

As noted above, the Parties did not reach an agreement-in-principle until nearly the close of fact discovery. *See supra* at 3.  By that time, the Parties had completed extensive fact discovery (including voluminous document productions, five defense witness depositions, six named Plaintiff depositions, third-party discovery, and discovery motion practice) and had also fully

briefed Plaintiffs' motion for class certification, which was pending when the Parties reached their Settlement. *See supra* at 2-3. The Parties were further informed in their negotiations by the Court's rulings on Defendants' motion to dismiss and Plaintiffs' contested motion to file the First Amended Consolidated Complaint. The advanced stage of proceedings objectively demonstrates that the settlement negotiations were fully informed, and strongly supports approval of the Settlement. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281-82 (S.D.N.Y. 1999) (stage of proceedings "strongly" favored approval of settlements reached after "[p]laintiffs had conducted extensive discovery, investigation and analyses, and the proceedings were in the advanced stage of pointing or preparing for trial"); *In re Painewebber,* 171 F.R.D. at 126 (stage of proceedings and discovery supported settlement where "extensive discovery took place prior to the commencement of settlement negotiations" and "a comprehensive evaluation of the facts and merits" had been performed prior to executing the settlement agreement); *see also Eastman Kodak Co.*, 228 F.R.D. at 185 (granting final approval where case was "still in the relatively early stages of discovery"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56–57 (E.D.N.Y. 2010) (granting final approval where settlement was reached before formal document disclosure).

### E.   The Independent Fiduciary and Class Members Support the Settlement, and the Only "Objection" Received Has Been Resolved

The positive response from the Independent Fiduciary and the Class support the Settlement. After completing the review required by the Paragraph 3.1 of the Settlement and applicable law (*see supra* at n.9), the Independent Fiduciary approved the "Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan, and the amount of any attorneys' fee award or any other sums to be paid from the recovery," finding them to be reasonable. *See Third Richter Decl. Ex. A at 1.* Moreover, the Settlement received practically unanimous approval from the Settlement Class, as all six class representatives have submitted declarations in Support

of the settlement, *see ECF Nos. 160-165*, and the only "objection" raised a discreet issue related to settlement administration that was quickly remedied by the Settlement Administrator. *See supra n.7.*  The Court may infer from this that the overwhelming majority of Class Members believe the Settlement is fair, reasonable, and adequate. *See Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012) ("The Court cannot help but conclude that the silence and acquiescence of 99% of the Class Members speaks more loudly in favor of approval than the strident objections of the 1% against it."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167–68 (S.D.N.Y. 2007) ("[T]he relatively small number of objections . . . militate in favor of approving the settlement as fair, adequate, and reasonable.").  As the Second Circuit has noted, "the absence of substantial opposition is indicative of class approval[.]" *Wal-Mart Stores,* 396 F.3d at 118.

As discussed above, a communication from one Class Member, noting his misclassification as a Former Participant, was styled as an "objection." That Class Member's classification was corrected, after which Class Counsel sent a follow-up letter asking to be notified if the Class Member had additional concerns, and Class Counsel is not aware of any further communications from this Class Member. *See supra at 8-9.* Moreover, the objection did not contest the overall adequacy of the Settlement, and is not a reason to deny final approval.[14]  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (overruling objection that "ha[d] no bearing on the settlement's fairness"); *Andrus v. New York Life Ins. Co.*, No. 1:16-cv-05698, ECF No. 84 at ¶ 9(i) (S.D.N.Y June 15, 2017) (overruling objection on ground that the "objection did not contest the adequacy of the settlement").

---

[14] Indeed, there were no objections to the Settlement terms, or the requested attorneys' fees, expenses, or class representative service awards, from any Class Member.

### F. The Ability of M&T Bank to Withstand a Greater Judgment Is Not a Reason to Withhold Approval of the Settlement in Light of the Other Factors

Finally, although M&T Bank has considerable assets, the "ability to withstand a higher judgment, standing alone, does not suggest that [a] settlement is unfair." *D'Amato,* 236 F.3d at 86; *see also In re Painewebber I,* 171 F.R.D. at 129. Because the other *Grinnell* factors "weigh heavily in favor of settlement[,]" the Settlement should be approved, notwithstanding the financial wherewithal of M&T Bank. *D'Amato*, 236 F.3d at 86.

## III. THE SETTLEMENT PROCESS WAS FAIR, REASONABLE, AND ADEQUATE

The process by which the Settlement was reached also was fair, reasonable, and adequate. As the Court noted in its Preliminary Order: (A) "The proposed settlement resulted from arm's-length negotiations by experienced and competent counsel overseen by a neutral mediator;" and (B) "The Settlement was negotiated only after counsel for the parties had conducted extensive motion practice and discovery, including receiving pertinent information and documents from defendants and non-parties and taking deposition of several plaintiffs and defendants[.]" *ECF No. 168 ¶ 1.* Plaintiffs' counsel are "are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans,"[15] *Moreno*, 2017 WL 3868803, at *11, and have vigorously represented the interests of the class in this case. Accordingly, the Settlement is entitled to a presumption of fairness. *See Wal-Mart*, 396 F.3d at 116 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted).

---

[15] Class Counsel's qualifications were set forth in the detail in connection with their prior motion for attorneys' fees and costs. *See Second Richter Decl. (ECF No. 176), ¶¶ 2-16.*

## IV.   THE CLASS NOTICE WAS REASONABLE

Finally, the class notice program in this case also was reasonable and satisfied the requirements of Due Process and Rule 23.  The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator mailed the Court-approved Settlement Notices to Class Members via U.S. Mail to their last known address.  *See supra* at 7.  This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement."); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *11 (S.D.N.Y. Sept. 9, 2015) ("Here, the robust Notice Program, which included mailing individual Notices to the last known address of all Class members, more than meets the requirements of due process, Rule 23, and the notice standards articulated by the Second Circuit."). The record reflects that approximately 98% of Settlement Notices were successfully delivered. *Barazesh Decl. ¶ 16*. This confirms the effectiveness of the notice program in this case.

The content of the Notices also was reasonable. As noted above, the Settlement Notices include, among other things: (1) a summary of the claims; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a claim (for Former Participants); (6) instructions as to how to object to the Settlement and the date by which Settlement Class members must object; (7) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (8) the amount of requested Class Representatives' compensation; (9) the date, time,

and location of the final approval hearing; and (10) contact information for the Settlement Administrator. *See Barazesh Decl. Exs. 1-2*. This was more than sufficient to "apprise the prospective members of the class of the terms of the proposed settlement and of the options . . . open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally").

## V.   THE COURT SHOULD CERTIFY THE CLASS FOR FINAL APPROVAL

In its Order for Preliminary Approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the M&T Bank Corporation Retirement Savings Plan at any time during the Class Period from May 11, 2010 through September 30, 2019.

*ECF No. 168*. This class definition is consistent with the definition that Plaintiffs proposed in their class certification motion (*ECF No.* 93), and now contains an end date for the Class Period.

In their memorandum of law in support of their motion for preliminary approval, Plaintiffs established that: (1) the class was sufficiently numerous; (2) Plaintiffs raised common issues in the First Amended Consolidated Complaint; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel is experienced and competent; (6) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual adjudication would be dispositive of the interests of other class members. *ECF No. 158 at 18-23*. Nothing has changed since the Court preliminarily certified the class for preliminary approval. Accordingly, the Court should reaffirm its approval of Settlement Class for purposes of final approval.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order granting final approval of the Settlement in the form submitted herewith.

Dated: August 20, 2020

Respectfully submitted,

By: *s/ Kai Richter*
**NICHOLS KASTER, PLLP**
Paul J. Lukas, MN Bar No. 022084X*
Kai Richter, MN Bar No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
Jacob Schutz, MN Bar No. 0395648*
Chloe A. Raimey, MN Bar No. 0398257*
      *admitted in W.D.N.Y.
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
Email: krichter@nka.com
       lukas@nka.com
       cengstrom@nka.com
       jschutz@nka.com
       craimey@nka.com

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Donna Siegel Moffa (admitted *pro hac vice*)
Joseph H. Meltzer (admitted *pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: dmoffa@ktmc.com
       jmeltzer@ktmc.com

**TREVETT CRISTO**
Lucinda Lapoff, Esq.
2 State Street, Suite 1000
Rochester, NY 14614
Tel: (585) 454-2181
Fax: (585) 454-4026
Email: clapoff@trevettcristo.com